FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
Mark L. Knutson, Esq. (SBN 131770)
mlk@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
William R. Restis, Esq. (SBN 246823)
wrr@classactionlaw.com
501 West Broadway, Suite 1250
San Diego, California 92101-3579
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

[Additional Counsel Listed On Signature Page]

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYLA CLAY, ERICA EHRLICHMAN, and LOGAN REICHERT, individually and on behalf of all others similarly situated, | Case No: **'15CV0165 L     DHB** |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR:** |
| v. | **1. VIOLATION OF CAL. BUS. & PROF. CODE §§ 17500, *et seq.*;** |
| CYTOSPORT, INC., a California Corporation, | **2. VIOLATION OF CAL. CIV. CODE §§ 1750, *et seq.*;** |
| Defendant. | **3. VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *et seq.*** |
| | **4. VIOLATION OF FLA. STAT. §§ 501.201, *et seq.*;** |
| | **5. VIOLATION OF M.C.L. §§ 445.901, *et seq.*;** |
| | **6. BREACH OF EXPRESS WARRANTY; and** |
| | **7. VIOLATION OF 15 U.S.C. §§ 2301, *et seq.*** |
| | **JURY TRIAL DEMANDED** |

1  Chayla Clay, Erica Ehrlichman, and Logan Reichert (collectively "Plaintiffs"),
2  individually and on behalf of all others similarly situated, based on the investigation of
3  counsel and their own individual knowledge as to Plaintiffs' own circumstances, hereby
4  complain against defendant Cytosport, Inc. ("Defendant" or "Cytosport") as follows:

## I.    INTRODUCTION

6      1.    Cytosport formulates, manufactures, advertises and sells the popular
7  "Muscle Milk" and Cytosport branded powdered and ready-to-drink ("RTD") protein
8  supplements throughout the United States, including in California, Michigan, and
9  Florida. Cytosport principally markets its Muscle Milk and Cytosport branded products
10 as reasonably-priced protein supplements for elite athletes and those with more
11 moderate athletic and weight management goals. Cytosport's marketing efforts target
12 all age groups and lifestyles, including people engaged in fitness, as part of a weight
13 loss program and protein supplementation for aging adults. However, Cytosport markets
14 its products in a systematically misleading manner, stating that its products have
15 ingredients, characteristics and benefits that they do not.

16     2.    Because Defendant's sales are driven by consumers seeking protein
17 supplementation, Cytosport prominently displays the total protein contents of its RTD
18 protein supplements (*Cytosport Whey Isolate Protein Drink, Monster Milk: Protein*
19 *Power Shake, Genuine Muscle Milk: Protein Nutrition Shake,* and *Muscle Milk Pro*
20 *Series 40: Mega Protein Shake* (collectively the "Muscle Milk RTD Products")) on the
21 front and back of each product's label.

22     3.    Cytosport's target market is not only interested in the amount of protein,
23 but also the type and quality of additional supplements included in each product.
24 Accordingly, Defendant markets and labels its *Muscle Milk: Lean Muscle Protein*
25 *Powder,* Muscle *Milk Light: Lean Muscle Protein Powder, Muscle Milk Naturals:*
26 *Nature's Ultimate Lean Muscle Protein, Muscle Milk Gainer: High Protein Gainer*
27 *Powder Drink Mix,* and *Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder*
28 (collectively the "Muscle Milk Powder Products") as containing a "Precision Protein

2

1  Blend" - highlighting that these products include proteins from multiple sources and
2  amino acids, such as L-Glutamine, to boost athletic performance.

3       4.     Furthermore, consumers are wary of the presence of perceived unhealthy
4  ingredients and often avoid protein powders that contain high levels of fats, oils and
5  unnecessary fillers. Accordingly, Defendant labels a subset of its Muscle Milk products
6  as "lean" to impress upon the public that is products contain less fat than its competitors:
7  Defendant's Muscle Milk: Lean Muscle Protein Powder, Muscle Milk Light: Lean
8  Muscle Protein Powder, Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein,
9  Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder, and Monster Milk:
10 Lean Muscle Protein Supplement (collectively the "Lean Muscle Milk Products").

11      5.     However, despite Cytosport's labeling of the Muscle Milk RTD Products,
12 Muscle Milk Powder Products and the Lean Muscle Milk Products to the contrary,
13 Defendant's products do not contain the ingredients and characteristics advertised.
14 Indeed, Cytosport's Muscle Milk RTD Products do not contain the quantity of protein
15 that is advertised, and thus warranted, on each of the Product's labels. But instead these
16 Products contain significantly less protein than what is claimed and displayed. Likewise,
17 Cytosport expressly advertises and labels, and therefore warranties, that the Muscle
18 Milk Powder Products' proprietary "Precision Protein Blend" contains L-Glutamine, an
19 amino acid that aids in muscle recovery and is essential for the proper operation of the
20 immune system. Nevertheless, Cytosport's Muscle Milk Powder Products do not
21 contain free-form L-Glutamine in *any* appreciable amount.

22      6.     Cytosport also labels each of its Lean Muscle Milk Products as "lean" and
23 containing "Lean Lipids" - suggesting to reasonable consumers that these powders
24 contain less fat than other similar supplements on the market. This is demonstrably false.
25 Defendant's Lean Muscle Milk Products contain no less fat than the majority of its
26 competitors. In fact, Defendant fortifies its Lean Muscle Milk Products with sunflower
27 and canola oils, considerable sources of fat. Therefore, Defendant has no basis to label
28 its Lean Muscle Milk Products as "lean."

3

1    7.    By marketing their Muscle Milk Powder Products as containing a "protein
2    blend" which includes L-Glutamine, but failing to actually include this amino acid
3    within the Products, and by misstating the actual protein content of the Muscle Milk
4    RTD Products, Defendant violates federal regulations designed to prevent deceptive
5    food labeling and breaches an express warranty created by its labeling. Additionally,
6    federal regulations also prevent Defendant's misleading use of the term "lean" to
7    describe its products that are not. Defendant's multiple and prominent
8    misrepresentations regarding its protein supplements form a pattern of unlawful and
9    unfair business practices that visits harms on the consuming public.

10    8.    These actions violate a number of state consumer protections laws,
11    including the California Unfair Competition Law ("UCL"), the California False
12    Advertising Law ("FAL"), the California Consumer Legal Remedies Act ("CLRA"),
13    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and Michigan's
14    Consumer Protection Act ("MCPA"). These actions have injured Plaintiffs and
15    members of the Class, therefore Plaintiffs seek actual damages, restitution and/or
16    disgorgement, punitive and statutory damages, and any injunctive or equitable relief
17    deemed proper by the Court.

## II.    JURISDICTION AND VENUE

19    9.    This Court has jurisdiction over the subject matter of this action pursuant
20    to the Class Action Fairness Act, 28 U.S.C. §§1332(d), 1446, and 1453(b). Plaintiffs
21    allege that they and the Class members are citizens of different states from Defendant,
22    and the cumulative amount in controversy for Plaintiffs and the Class exceeds $5
23    million, exclusive of interest and costs.

24    10.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because
25    many of the acts and transactions giving rise to the violations of law complained of
26    herein occurred in this District, and because Defendant:

27    (a)    conducts business itself or through agent(s) in this District, by advertising,
28    marketing, distributing and/or manufacturing its products in this District; and/or

4

1    (b)    is licensed or registered in this District; and/or

2    (c)    otherwise has sufficient contacts within this District to justify Defendant

3    being fairly brought into Court in this District.

4                        ### III.    PARTIES

5        11.    Plaintiff Chayla Clay ("Clay") is, and at all times relevant hereto was, a

6    resident of California and a citizen of California. Plaintiff Clay has purchased several of

7    Defendant's Muscle Milk products in the past four years, including Genuine Muscle

8    Milk: Protein Nutrition Shakes and Muscle Milk: Lean Muscle Protein Powder. Plaintiff

9    Clay most recently purchased Defendant's Muscle Milk: Lean Muscle Protein Powder

10   at a GNC store located in San Diego, California on or about November 2013.

11       12.    Plaintiff Logan Reichert ("Reichert") is, and at all times relevant hereto

12   was a resident of Florida and a citizen of Florida. Plaintiff Reichert has purchased

13   several of Defendant's Muscle Milk products, including Genuine Muscle Milk: Protein

14   Nutrition Shakes and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder.

15   Plaintiff Reichert most recently purchased Defendant's Muscle Milk Pro Series 50: Lean

16   Muscle Mega Protein Powder at a GNC store located in Pensacola, Florida on or about

17   January 2014.

18       13.    Plaintiff Erica Ehrlichman ("Ehrlichman") is, and at all times relevant

19   hereto was, a resident of Michigan and a citizen of Michigan. Plaintiff Ehrlichman has

20   purchased several of Defendant's Muscle Milk products, including Muscle Milk Natural

21   Lean Protein Powder and Muscle Milk Protein Nutrition Shakes. Plaintiff Ehrlichman

22   most recently purchased Muscle Milk Natural Lean Protein Powder at the Better Health

23   Store located in Grosse Pointe Woods, Michigan on or about May 26, 2014, but has also

24   purchased Muscle Milk products at Kroger and Costco.

25       14.    Defendant Cytosport, Inc. is a California Corporation with its headquarters

26   in Benicia, California. Cytosport manufactures sports-oriented nutritional products.

27   Cytosport manufactures, markets, advertises, distributes and sells a line of Muscle Milk

28   and Cytosport branded protein powders and RTD products throughout the United States.

1 | All of Cytosport's product labeling and advertising for its various Muscle Milk and
2 | Cytosport brand products, sold and distributed nationwide, are and were created,
3 | controlled and distributed by management located at Cytosport's Benicia, California
4 | headquarters.

### IV.  SUBSTANTIVE ALLEGATIONS

#### A.  Misrepresentations Regarding Defendant's RTD Products' Protein Content

15.  It is axiomatic that the amount of reported protein contained within Defendant's Muscle Milk RTD Products is material to any consumer seeking to purchase a protein supplement. Accordingly, Defendant fortifies each Muscle Milk RTD Product with Milk Protein Isolate as its primarily, and most important, ingredient. Milk Protein Isolate differs from raw milk because it is processed to include a higher concentration of protein and removes much of the fats and carbohydrates traditionally found in milk and other naturally occurring beverages. Thus, the type of concentrated protein within the Muscle Milk RTD Product is particularly prized.

16.  Defendant labels and advertises all of its protein supplements, especially its Muscle Milk RTD Products, in a manner that highlights the amount of added protein contained within. Each Muscle Milk RTD Product lists its respective protein content on each Product's front label, directly below the title of the Product, as well as on the back nutritional label. Such representations constitute an express warranty regarding the Muscle Milk RTD Products' protein content.

17.  For example, the *Cytosport Whey Isolate Protein* Drink's product label states plainly that it fortified with 32 grams of protein on the front of the packaging and also indicates that there are 32 grams of protein per bottle (15 grams per serving) in the Nutrition Facts section[1]:

---

[1] All product images contained within this complaint were taken from Defendant's website.





However, Defendant's labeling is false. According to independent scientific testing of the *Cytosport Whey Isolate* product, conducted by Labdoor and others, the actual total per bottle contents of protein is approximately 27.3 grams as opposed to 32 grams of protein claimed by Defendant – a substantial difference. Labdoor, a company that specializes in providing consumers the necessary information needed to make informed purchasing decisions, grades protein supplements based on, *inter alia*, the accuracy of its labeling. Defendant's labeling practices were so egregious, that Labdoor assigned Defendant's Whey Isolate drink a "D" grade.

18.     Similarly, the *Monster Milk: Protein Power Shake's* product label states that the product fortified with 45 grams of protein on the front of the packaging and indicates that there are 45 grams of protein per bottle (and 18 grams per serving) in the Nutrition Facts section:

///

///

///

///

///

7





Again, the above labeling proves false. Upon testing the *Monster Milk: Protein Power Shake's* protein content, the actual total per bottle contents of protein was shown to be between 36.9 and 41.55 grams as opposed to 45 grams of protein claimed by Defendant. Labdoor assigned this product a failing grade ("F") due to these misrepresentations.

19. The *Genuine Muscle Milk: Protein Nutrition Shake* (17 fl. oz.) label expressly states that it fortified with 32 of grams protein per bottle on the front of the packaging, and also indicates there are 32 grams of protein per bottle in the product's Nutrition Facts section:



8

However, this product also includes less protein than advertised and warranted. According to Labdoor testing of the *Genuine Muscle Milk: Protein Nutrition Shake* (17 fl. Oz.) product, the actual total per container protein contents is approximately 20.8 grams, far less than the 32 grams of protein claimed by Defendant. This Product also received a failing grade ("F") from Labdoor.

20. Likewise, the 14 fl. Oz. container of Defendant's *Genuine Muscle Milk: Protein Nutrition Shake* is also mislabeled. The Genuine Muscle Milk 14 fl. Oz. RTD product is reportedly fortified with 25 grams of protein per package, according to both its front label and Nutrition Facts. And like its larger cousin, the 14 fl. Oz. Genuine Muscle Milk RTD product contains less protein than reported. Based on independent testing, the actual protein content of Defendant's Genuine Muscle Milk 14 fl. Oz. RTD product is approximately 22.15 grams per bottle.

21. Defendant also misrepresents the protein contents of its *Muscle Milk Pro Series 40: Mega Protein Shakes*. For example, the *Muscle Milk Pro Series 40 Mega Protein Shake's* (14 fl. Oz.) label states that the product fortified with 40 of grams Protein on the front of the packaging and this representation is echoed on in the Product's Nutrition Facts section:



**MUSCLE MILK® PRO SERIES 40**
MEGA PROTEIN SHAKE – CRUSHING COOKIES 'N CRÈME 14 fl oz/414mL
NATURALLY AND ARTIFICIALLY FLAVORED

| NUTRITION HIGHLIGHTS | | | |
|---|---|---|---|
| PROTEIN | CARBS | FAT | CALORIES |
| 40g | 8g | 3g | 220 |

**Nutrition Facts**
Serving Size 14 fl. oz. (414 mL)
Servings Per Container 1

| Amount Per Serving | |
|---|---|
| Calories 220 Calories from Fat 25 | |
| | % Daily Value* |
| Total Fat 3g | 5% |
| Saturated Fat 1g | 5% |
| Trans Fat 0g | |
| Polyunsaturated Fat 0.5g | |
| Monounsaturated Fat 1.5g | |
| Cholesterol 25mg | 8% |
| Sodium 370mg | 15% |
| Potassium 660mg | 19% |
| Total Carbohydrate 8g | 3% |
| Dietary Fiber 2g | 8% |
| Sugars 2g | |
| Protein 40g | 80% |

| | | | |
|---|---|---|---|
| Vitamin A 25% | | Vitamin C 25% | |
| Calcium 50% | | Iron 30% | |
| Vitamin D 25% | | Vitamin E 25% | |
| Thiamin 25% | | Riboflavin 25% | |
| Niacin 25% | | Vitamin B6 25% | |
| Folate 25% | | Vitamin B12 25% | |
| Biotin 25% | | Pantothenic Acid 25% | |
| Phosphorus 70% | | Iodine 25% | |

INGREDIENTS: WATER, MILK PROTEIN ISOLATE, CALCIUM SODIUM CASEINATE, LESS THAN 1% OF: MALTODEXTRIN, INULIN, NATURAL AND ARTIFICIAL FLAVORS, CANOLA OIL, SUNFLOWER OIL, CELLULOSE GUM AND GEL, DIPOTASSIUM PHOSPHATE, WHEY PROTEIN CONCENTRATE, SOY LECITHIN, MAGNESIUM PHOSPHATE, POTASSIUM CHLORIDE, SODIUM HEXAMETAPHOSPHATE, DIMAGNESIUM PHOSPHATE, SODIUM PHOSPHATE, ACESULFAME POTASSIUM, POTASSIUM CITRATE, ASCORBIC ACID, CARRAGEENAN, FERRIC PYROPHOSPHATE, DICALCIUM PHOSPHATE, SUCRALOSE, TRICALCIUM PHOSPHATE, DL-ALPHA TOCOPHERYL ACETATE, D-CALCIUM PANTOTHENATE, NIACINAMIDE, ZINC OXIDE, COPPER GLUCONATE, VITAMIN A PALMITATE , PYRIDOXINE HYDROCHLORIDE, THIAMINE MONONITRATE, RIBOFLAVIN, CHROMIUM CHLORIDE, FOLIC ACID, BIOTIN, POTASSIUM IODIDE, CHOLECALCIFEROL, CYANOCOBALAMIN.

CONTAINS INGREDIENTS DERIVED FROM MILK AND SOY.

MUSCLE MILK PRO SERIES PROVIDES NUTRIENTS FOUND IN NATURAL MILK THAT ARE IMPORTANT FOR BUILDING MUSCLES AND BONES.

9

But testing of the *Muscle Milk Pro Series 40 Mega Protein Shakes* reveal that the actual total protein content per bottle was shown to be approximately 36.18 grams, short of the 40 grams of protein claimed on the Product's packaging.

22. Such misrepresentations regarding the contents and ingredients of Defendant's Muscle Milk RTD Products are unlawful under both state and federal law. The Federal Food, Drug, and Cosmetic Act ("FDCA"), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2). In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, *et seq.*

23. Defendant's deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the protein contents of its product. Defendant failed to ensure the accuracy of its Muscle Milk RTD Products' labels in accordance with these federal regulations.

24. California prohibits the misbranding of food in a way that parallels the FDCA through the "Sherman Law," HEALTH & SAF. CODE § 109875 *et seq.* The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the FDCA," as the food labeling regulations of CAL. HEALTH & SAF. CODE, § 110100, subd. (a). Accordingly, the Sherman Law also provides that food is misbranded "if its labeling is false or misleading in any particular." *Id.*

25. Defendant's deceptive statements also violate FLORIDA STATUTE § 500.11(1)(a) and MICHIGAN FOOD LAW ACT 92 of 2000 which also deem food (including nutritional supplements) misbranded when the labels contains a statement that is "false

10

1  or misleading in any particular."

2       26.    Defendant's representations regarding the protein contents of its Muscle
3  Milk RTD Products are material. Reasonable consumers of protein supplements base
4  their purchasing decisions on the advertised and warranted amount of protein contain
5  therein. Additionally, consumers reasonably rely of Defendant's label to accurately
6  determine the identity and amount of any dietary ingredients included within the
7  Defendant's products. Accordingly, Plaintiffs and Class Members, as reasonable
8  consumers, were materially misled by Defendant's representations regarding the true
9  nature of the Muscle Milk RTD Products' protein contents.

10      27.    Further, such misrepresentations also breach Defendant's express warranty
11  that each Muscle Milk RTD Product contains protein in the amount listed on its label.

12      28.    The difference between the Muscle Milk RTD Products promised and the
13  Products sold is significant and material.  The amount of actual protein provided, and
14  the measure of protein per serving/container, has real impacts on the benefits provided
15  to consumers by the Products and the actual value of the Products.  Persons requiring a
16  certain amount of protein supplementation, whether as part of fitness regimen or for
17  particular health needs, are left to ingest less protein than Defendant states will be
18  provided.

19      29.    Because Plaintiffs and Class Members purchased a product that contains
20  less protein than advertised and warranted, Plaintiffs and Class Members have suffered
21  injury-in-fact. Misbranded food products cannot legally be manufactured, held,
22  advertised, distributed or sold. Thus, misbranded food has no economic value and is
23  worthless as a matter of law, and purchasers of misbranded food are entitled to a
24  restitution refund of the purchase price of the misbranded food. Additionally, had
25  Plaintiffs and Class Members known the true nature of the protein content of the Muscle
26  Milk RTD Products, they would not have purchased such Products, or would have only
27  paid for the protein actually delivered with the Products.

28  ///

11

## B. Defendant Mislabels its Muscle Milk Powder Products

30. In addition to mislabeling its products' protein contents, Defendant also misrepresents the amount of L-Glutamine contained in the Muscle Milk Powder Products.

### 1. *L-Glutamine and its Function in the Human Body*

31. Amino acids are organic compounds chemically composed of amine (-NH2) and carboxylic acid (-COOH) groups, along with a side-chain specific to each amino acid. The key elements found within all amino acids are carbon, hydrogen, oxygen, and nitrogen, though other elements may be found in the side-chains of certain amino acids. Based how these elements are structured will determine the amino acid type.

32. Amino acids play an important role in the human body, where they are used to synthesize proteins, aid in the function of the bodily systems, and provide a source of energy. But not all amino acids are equally needed by the body or have the same physiological benefits. Thus, there are certain amino acids that are more important than others. For example, of the twenty-two standard amino acids, nine amino acids are called "*essential*" for humans because they cannot be created from other compounds by the body and must be taken in through an individual's diet. Six other amino acids are considered "*conditionally essential*" meaning that the body many not be able to create these amino acids in all circumstances.

33. When several amino acids are linked together by peptide bonds, they form long chains called proteins. Although proteins consists entirely of amino acids, bonded and unbonded amino acids are digested and absorbed differently by the human body. Generally, unbonded amino acids are absorbed faster by the body than proteins. Thus, a protein that contains particular amino acids is not utilized the same as ingesting unbonded amino acids of the same type and quantity. This is the reason that Defendant, and other supplement producers, fabricated both protein powders (such as the Muscle Milk Powder Products) and amino acid dietary supplements which contain only

12

1  unbonded amino acids.[2] Indeed, unbonded amino acids supplements are often more
2  expensive, and for some consumers more sought-after, because while proteins can be
3  readily obtained from different foods, many unbonded amino acids are more difficult,
4  if not impossible, to obtain through a traditional diet and thus can only be acquired
5  through expensive processing.

6      34.     L-glutamine (or glutamine) is one of the twenty-two amino acids found in
7  the human body and is considered a conditionally essential amino acid. L-glutamine is
8  found circulating in the blood, as well as stored in the skeletal muscles. Serving several
9  functions in the body, L-glutamine has been linked to protein and muscle synthesis. In
10  addition, L-glutamine, even in small amounts, has shown to increase the amount of
11  growth hormone levels by over 400%.[3] L-glutamine also serves an important role in the
12  immune system, and decreases in L-glutamine availability in the blood results in
13  immunosuppression.[4]

14      35.     L-glutamine supplementation is particularly important for athletes as
15  strenuous physical exercise, as well as exhaustive training programs, tends to deplete
16  the body's natural stores of L-glutamine due to lowered L-glutamine synthesis and
17  enhanced uptake by liver and immune cells.[5] Accordingly, without supplementation,
18  many athletes can experience decreased immune system function during recovery
19  periods, a time at which they are more vulnerable to disease. Increased L-glutamine
20  availability during exercise is also associated with decreased muscle loss due to muscle
21  catabolism and decreased inflammation - health benefits associated with optimal

---

23  [2] *See, e.g.,* Defendant's Muscle Milk Pro Series Amino: Amino Acid Dietary Supplements. http://www .musclemilk.com/products/bars1/pro-series-50-2/

24  [3] *See* Welbourne TC, *Increased plasma bicarbonate and growth hormone after an oral glutamine load,* 61(5) Am J Clin Nutr. 1058-61 (1995)
25  (http://www.ncbi.nlm.nih.gov/pubmed/7733028)

26  [4] *See* Calder PC, Yaqoob P., *Glutamine and the immune system,* 17(3) Amino Acids 227-41 (1999) (http://www.ncbi.nlm.nih.gov/pubmed/10582122)

27  [5] *See* Agostini F, Biolo G., *Effect of physical activity on glutamine metabolism,* 13(1) Curr Opin Clin Nutr Metab Care. 58-64 (2010) (http://www.ncbi.nlm.nih.gov/
28  pubmed/ 19841583)

13

physical training.[6] Accordingly, many consumers specifically seek out supplements fortified with L-glutamine when selecting a product to complement their workout regime.

### 2. Misrepresentations Regarding Defendant's "Protein Blend"

36. Defendant markets its Muscle Milk Powder Products as containing a "protein blend" for athletes. To support these claims, Defendant states in its marketing material that it has developed and fabricated "a unique mix of complete multi-source proteins" known as their "Precision Protein Blend" with "calcium sodium caseinate, milk protein isolate, whey protein isolate, whey protein hydrolysate, whey protein concentrate, lactoferrin, **L-glutamine** and taurine, which provide amino acids… to help you recover from exercise and build muscle." (Emphasis added). Defendant directs that its products should be used as a dietary supplement, *i.e.*, that they should be added to liquids (such as water, milk or smoothies) or other foods (such as pancakes, bars, and other snacks) to supplement normal dietary intake and state its products are excellent for "individuals looking to build size and gain muscle mass."

37. Similarly, each of the Muscle Milk Powder Products' labels states that they contain a "protein blend" that includes "CALCIUM SODIUM CASEINATE, MILK PROTEIN ISOLATE, WHEY PROTEIN ISOLATE, WHEY PROTEIN HYDROLYSATE, WHEY PROTEIN CONCENTRATE, LACTOFERRIN, **L-GLUTAMINE** AND TAURINE." (Emphasis added).

38. By listing L-glutamine in the products' nutritional panels, separate from the Muscle Milk Powder Products' primary protein sources (*e.g.*, calcium sodium caseinate, milk protein isolate, whey protein isolate, whey protein hydrolysate, whey protein concentrate, and lactoferrin), Defendant asserts that each Muscle Milk Powder Product is fortified with unbonded L-glutamine amino acids. However, despite advertising, labeling and warranting that its Muscle Milk Powder Products include free-

---

[6] *See id.*; http://etd.lsu.edu/docs/available/etd-06162005142747/unrestricted/ Piattoly_thesis.pdf

form L-glutamine, these Products do not contain *any* unbonded L-glutamine amino acids. Simply put, Defendant's consumers are not getting the ingredients listed on each Product's label, for which they have paid a premium.

39.     Undeniably listing an ingredient, such as L-glutamine, in a product's mandated nutritional labeling and then failing to include said ingredient is unlawful under federal and state law. Federal statutes and regulations require that all ingredients added to a food product for their functional effect to be listed in descending order of predominance. *See* 21 U.S.C. § 343(i); 21 C.F.R. §§ 101.2, 101.4, 101.100(a)(3)(ii)(c). Failure to list an ingredient, or listing ingredients which are not contained in a product, shall render a food misbranded and therefore its sale will be deemed unlawful. 21 U.S.C. §§ 343(a), 331(a). The above laws, and all regulations enacted pursuant thereto, are incorporated into California, Florida and Michigan law. CAL. HEALTH & SAF. CODE § 110100, FLORIDA STATUTE § 500.11(1)(a) and MICHIGAN FOOD LAW Act 92 of 2000. Thus, a violation of federal food labeling laws is an independent violation of California, Florida and Michigan law and actionable as such.

40.     In violation of 21 U.S.C. §§ 343(a), Defendant misleads consumers by including an ingredient in each Muscle Milk Powder Product's nutritional labels which is not actually included in the products themselves. L-glutamine fortification is important for athletes, particularly those who engage in intense physical exercise routines or exhaustive long-term fitness programs for the reasons stated above. Thus, Defendant's representations that its Muscle Milk Powder Products contain unbonded L-glutamine, when they in fact do not, are misleading and injurious to reasonable consumers.

41.     Furthermore, Cytosport's Muscle Milk Powder Products are a dietary supplement under 21 U.S.C. § 321(ff). Had Cytosport elected to classify its Muscle Milk Powder Products as a dietary supplement, as it arguably should have, Defendant would have had to separately list the identity of each unbonded amino acids and their amounts within the nutrition label, instead of being allowed to include them with the ingredient

15

list under "protein blend." 21 C.F.R. § 101.4. This would have put customers on better notice that free form L-glutamine is not present in the Muscle Milk Powder Products in any significantly appreciable amounts. However, Defendant instead labeled its Muscle Milk Powder Products as a food, and included L-glutamine as part of their "protein blend," to obfuscate its unfair and illegal labeling business practices.[7]

42. By specifically listing that L-glutamine as a separate ingredient contained in its Muscle Milk Powder Products, Cytosport warrants that unbonded L-glutamine would be present in Muscle Milk Powder Products in an appreciable amount (or at least in an amount that is greater than the ingredients listed below it on the Products' label). Defendant breached this express warranty by selling a product that did not, in fact, contain *any* measurable amount of unbonded L-glutamine.

43. Again, the difference between the Product promised and the Product sold is significant. The L-glutamine fortification has a real impact on the benefits provided to consumers by the Products and the actual value of the Products themselves - otherwise L-glutamine would not have been advertised as an integral part of Defendant's "Precision Protein Blend" on the Products' label.

44. Persons requiring a certain amount of L-glutamine supplementation, whether as part of a fitness regimen or for other health-related reasons, are left to ingest less L-glutamine than Defendant's Muscle Milk Powder Products state they will provide. By purchasing Defendant's product, consumers are getting no more L-glutamine then they would otherwise receive by consuming a similar protein supplement that is not represented as being fortified with free-form L-glutamine. Thus, Plaintiffs and members of the Class suffer actual injuries, as L-glutamine supplements independently sell for significant amounts. Had Plaintiffs and members of the Class known the true nature of the Muscle Milk Powder Products L-glutamine content, they

---

[7] For example, Defendant's Muscle Milk Pro Series Amino: Amino Acid Dietary Supplement's label specifically lists the amount of each amino acid with the product. http://www.musclemilk.com /products/bars1/pro-series-50-2/

1    would not have purchased Defendant's protein powders or alternatively paid
2    significantly less for them.

3        C.    **Misrepresentations Regarding Defendant's Lean Muscle Milk**
4               **Products' Fat Content**

5        45.    Recent trends in dieting and weight loss often emphasize increasing one's
6    protein intake in relation to fats and carbohydrates. Additionally, many health
7    conscience consumers actively seek out low-fat food products and dietary supplements
8    for other reasons (for example, individuals with a predisposition for heart disease and
9    those with high blood pressure often avoid foods high in fats). As a result, Defendant
10   markets a number of its Muscle Milk branded powders as "**lean**." Each of the Lean
11   Muscle Milk Products specifically includes a variation of the term "**lean** muscle protein"
12   in their names (or in the case of Defendant's Monster Milk, labeled as a "New Leaner
13   Formula") and are labeled as containing "Lean Lipids," a term purportedly trademarked
14   by Defendant.

15       46.    However, pursuant to Section 403 of the FDCA, a claim that characterizes
16   the level of a nutrient in a food is a "nutrient content claim" that must be made in
17   accordance with the regulations that authorize the use of such claims. 21 U.S.C. §
18   343(r)(1)(A). Food nutrient content claims include the labeling which implies or
19   suggests that a food contains less fat and cholesterol than other similar products of the
20   same type. California, Florida and Michigan have each expressly adopted the
21   requirements of 21 U.S.C. § 343(r) into their own state statutory regimes.

22       47.    Federal regulations specifically prohibit the use of the word "lean" unless
23   Defendant uses such term in accordance with its definition as set out in 21 C.F.R. §
24   101.62(e). *See* 21 C.F.R. § 101.62(a). Use of the term "lean" in a way that does not with
25   comply with 21 C.F.R. § 101.62(e) "shall be deemed to be misbrand[ing] under sections
26   201(n), 403(a), and 403(r) of the Federal Food, Drug, and Cosmetic Act." 21 C.F.R. §
27   101.62(a), (f). Defendant's use of the word "lean" in the names of each Lean Muscle
28   Milk Product does not meet the definitional requirements of 21 C.F.R. § 101.62(e) and

17

thus is a *per se* violation of the Food, Drug, and Cosmetic Act and independently actionable under parallel state consumer protection laws.

48. Defendant's use of the word "lean" to describe its Lean Muscle Milk Products is particularly misleading because these Products do not contain any less fat than similar "*non-lean*" protein powders on the market. Almost all of Defendant's competitors produce protein powders with the same, if not lower, fat and cholesterol levels. This is because most protein supplements use protein isolates and concentrates that specifically remove the vast majority of fats and carbohydrates from the Product's protein sources. Accordingly, the Lean Muscle Milk Products are not lean because they do not contain any less fat than other traditional protein powders.

49. Defendant's other marketing practices regarding the Lean Muscle Milk Products are equally misleading. Defendant's use of the term "Lean Lipids" is particularly troubling because lipid is the scientific name for a class of molecules that include fats, and thus is often used synonymously describe fat molecules. Therefore, the term "Lean Lipids" is oxymoronic, because a lipid (*i.e.*, a fat) by definition can never be "lean." Each of the Lean Muscle Milk Products' labeling states that these Products contain a "Lean Lipid" blend. However, the "Lean Lipid" blend is primarily comprised of three ingredients - sunflower oil, medium chain triglycerides, canola oil - which are significant sources of fat.[8]

50. Marketing and labeling Defendant's Lean Muscle Milk Products as containing the equivalent of "lean fats" is considerably misleading and does not comply with the relevant federal regulations. Indeed, by fortifying its protein powders with a "Lean Lipid" blend consisting of sunflower oil, medium chain triglycerides, canola oil, Defendant cannot possibly claim that its Lean Muscle Milk Products are lean.

51. There is no basis in law or fact for Defendant to label and brand its Lean

---

[8] Some of the Lean Muscle Milk Products labeling sold during the class period included L-carnitine, an amino acid, in their "Lean Lipid Blend." Again, fortifying the "Lean Lipid Blend" with L-carnitine does nothing to reduce the fat content in Defendant's "Lipid Blend" or the Lean Muscle Milk Products as a whole.

Muscle Milk Products as lean under the circumstances. As such, Defendant has and continues to misbrand its Lean Muscle Milk Products in a misleading and deceptive manner that has the capacity to confuse reasonable consumers regarding the fat content of its Products. Had Plaintiffs and members of the Class known the true nature of the Lean Muscle Milk Products' fat contents, they would not have purchased Defendant's protein powders or alternatively paid significantly less for them.

## V.  CLASS ACTION ALLEGATIONS

52.  Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 for the following Class of persons:

**Nationwide Class**:  All persons in the United States who, within four (4) years of the filing of this Complaint, purchased:

1.   the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

2.   the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.   the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

**California Sub-Class**:  All persons residing in California who, within four (4) years of the filing of this Complaint, purchased:

1.   the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

2.   the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.   the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle

19

Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

**Florida Sub-Class**:  All persons residing in Florida who, within four (4) years of the filing of this Complaint, purchased:

1.  the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

2.  the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.  the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

**Michigan Sub-Class**:    All individuals residing in Michigan who, within six (6) years of the filing of this Complaint, purchased:

1.  the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

2.  the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.  the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

Excluded from the Class are all legal entities, Defendant herein and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

53.    Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

20

54.     While the exact number of Class members is unknown to Plaintiffs at this time, and will be ascertained through appropriate discovery, Plaintiffs are informed and believe that there are tens of thousands of members in the proposed Class. The number of individuals who comprise the Class are is so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action, rather than in individual actions, will benefit both the parties and the courts.

55.     Plaintiffs' claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendant's wrongful conduct as complained of herein, in violation of federal and state law. Plaintiffs are unaware of any interests that conflict with or are antagonistic to the interests of the Class.

56.     Plaintiffs will fairly and adequately protect the Class members' interests and have retained counsel competent and experienced in consumer class action lawsuits and complex litigation. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs are aware of their duties and responsibilities to the Class.

57.     Defendant has acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions wholly affecting individual Class members. There is a well-defined community of interest in the questions of law and fact involved in the action, which affect all Class members. Among the questions of law and fact common to the Class are, *inter alia*:

(a)     Whether Defendant labels, markets and otherwise advertises its Muscle Milk RTD Products in a deceptive, false, or misleading manner by misstating the Products' protein content;

(b)     Whether Defendant's Muscle Milk Powder Products contain any amount of unbonded L-glutamine that would warrant its disclosure on the Products' label;

(c)     Whether Defendant's Lean Muscle Milk Products are misbranded for

21

including the term "lean" in each of the Products' names;

    (d)    Whether Defendant's sale of their Muscle Milk and Cytosport products constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of, *inter alia*, CAL. BUS. & PROF. CODE §§ 1770 *et seq.*, including:

        (i)    Whether Defendant misrepresents the source, sponsorship, approval, or certification of their Muscle Milk and Cytosport products;

        (ii)    Whether Defendant misrepresents that its Muscle Milk and Cytosport products have benefits which they do not have;

        (iii)    Whether Defendant represents that its Muscle Milk and Cytosport products are of a particular standard or quality if it is of another; and

        (iv)    Whether Defendant advertises its Muscle Milk and Cytosport products with intent not to sell them as advertised;

    (e)    Whether Defendant's sale of their Muscle Milk and Cytosport products constitutes misleading and deceptive advertising under, *inter alia*, CAL. BUS. & PROF. CODE § 17500.

    (f)    Whether Defendant's sale of its Muscle Milk and Cytosport products constitutes "unlawful," "unfair," or "fraudulent" business acts or practices under, *inter alia*, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, including:

        (i)    Whether Defendant's sale of its Muscle Milk and Cytosport products constitutes "unlawful" or "unfair" business practices by violating the public policies set out in CAL. BUS. & PROF. CODE §§ 1770 *et seq.*, CAL. BUS. & PROF. CODE §§ 17500 and other California and federal statutes and regulations;

        (ii)    Whether Defendant's sale of its Muscle Milk and Cytosport products is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers;

        (iii)    Whether Defendant's sale of its Muscle Milk and Cytosport products constitutes an "unfair" business practice because consumer injury outweighs any countervailing benefits to consumers or competition, and because such injury

22

1  could not be reasonably avoided by consumers; and

2       (iv)  Whether Defendant's mischaracterization of the protein, L-
3  glutamine, and fat contents in its Muscle Milk and Cytosport products constitutes
4  a "fraudulent" business practice because members of the public are likely to be
5  deceived;

6     (g)  Whether Defendant's mischaracterization of the protein, L-glutamine, and
7  fat contents in its Muscle Milk and Cytosport products constitutes unlawful, unfair and
8  fraudulent acts under FLA. STAT. § 501.203.

9       (h)  Whether Defendant's mischaracterization of the protein, L-glutamine, and
10  fat contents in its Muscle Milk and Cytosport products constitutes violations of M.C.L.
11  § 445.903(1)(a), (c), (e), (s), and (cc);

12       (i)  The nature and extent of damages, restitution. equitable remedies, and
13  declaratory and injunctive relief to which Plaintiffs and the Class are entitled; and

14       (j)  Whether Plaintiff and the Class should be awarded attorneys' fees and the
15  costs of suit.

16     58.  A class action is superior to all other available methods for the fair and
17  efficient adjudication of this controversy since joinder of all members is impracticable.
18  Furthermore, as the damages suffered by individual Class members may be relatively
19  small, the expense and burden of individual litigation make it virtually impossible for
20  Class members to individually redress the wrongs done to them.  There will be no
21  difficulty in managing this action as a class action.

22     59.  Defendant has acted on grounds generally applicable to the entire Class
23  with respect to the matters complained of herein, thereby making appropriate the relief
24  sought herein with respect to the Class as a whole.

25                        **FIRST COUNT**

26       **Violation of CAL. BUS. & PROF. CODE §§ 17500, *et seq.* -
        Untrue, Misleading and Deceptive Advertising**
27       **(On Behalf of the Nationwide Class and the California Sub-class)**

28     60.  Plaintiffs hereby incorporate by reference the allegations contained in the

                                  23

preceding paragraphs of this Complaint.

61.     At all material times, Defendant engaged in a scheme of offering its Muscle Milk and Cytosport products for sale to Plaintiffs, and other members of the Class and the California Sub-Class by way of, *inter alia*, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

62.     These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of Defendant's Muscle Milk and Cytosport products as alleged herein. Said materials, advertisements and other inducements were controlled and emanated from Defendant's headquarters, located the State of California. Such advertisements and inducements appear on the labels of Defendant's Muscle Milk and Cytosport products that are produced at Defendant's manufacturing facility in Benicia, California and appear on Muscle Milk's and Cytosport's website which is maintained and controlled from Defendant's Benicia, California headquarters.

63.     Defendant's advertisements and other inducements come within the definition of advertising as contained in CAL. BUS. PROF. CODE §§ 17500, *et seq.*, in that such promotional materials were intended as inducements to purchase Defendant's Muscle Milk and Cytosport products and are statements disseminated by Defendant, who is located in California, to Plaintiffs and other members of the Class and the California Sub-Class.

64.     Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Muscle Milk and Cytosport products' protein and L-glutamine content were false, misleading and/or deceptive. Defendant equally, knew, or in the exercise of reasonable care should have known, that branding its Lean Muscle Milk Products as lean was a violation of 21 C.F.R. § 101.62 and thus was false, misleading and/or deceptive.

65.     Consumers, including Plaintiffs and members of the Class and the California Sub-Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiffs and members of

24

the Class and the California Sub-Class, were among the intended targets of such representations.

66. The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California and nationwide to consumers, including Plaintiffs and members of the Class and the California Sub-Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Muscle Milk and Cytosport products, and thus were violations of CAL. BUS. PROF. CODE §§ 17500, *et seq*.

67. Plaintiffs and Class and the California Sub-Class members were harmed and suffered injury as a result of Defendant's violations of the CAL. BUS. PROF. CODE §§ 17500, *et seq*. Defendant has been unjustly enriched at the expense of Plaintiffs and the members of the Class and the California Sub-Class.

68. Accordingly, Plaintiff and members of the Class and the California Sub-Class seek injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded food products cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded food has no economic value and is worthless as a matter of law, and purchasers of misbranded food are entitled to a restitution refund of the purchase price of the misbranded food.

## SECOND COUNT

**Violation of CAL. CIV. CODE §§ 1750, *et seq*.-**
**Misrepresentation of a Product's standard, quality,**
**sponsorship, approval, and/or certification**
**(On Behalf of the California Subclass)**

69. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

70. Defendant's Muscle Milk and Cytosport products are a "good" as defined by California Civil Code §1761(a).

25

71.     Defendant is a "person" as defined by California Civil Code §1761(c).

72.     Plaintiff Clay and California Sub-Class members are "consumers" within the meaning of California Civil Code §1761(d) because they purchased their Muscle Milk and Cytosport products for personal, family or household use.

73.     The sale of Defendant's Muscle Milk and Cytosport products to Plaintiff Clay and California Sub-Class members is "transaction" as defined by California Civil Code §1761(e).

74.     By labeling their Muscle Milk RTD Products as containing a specific amount of protein when in fact these Products contained less than the advertised amount of protein, Defendant violated California Civil Code §§ 1770(a)(2), (5), (7) and (9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Muscle Milk and Cytosport products.

75.     By labeling their Muscle Milk Powder Products as containing a "protein blend" which included L-glutamine when in fact these Products did not, Defendant violated California Civil Code §§ 1770(a)(2), (5), (7) and (9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Muscle Milk and Cytosport products.

76.     Defendant violated California Civil Code §§ 1770(a)(2), (5), (7) and (9) by misbranding its Lean Muscle Milk Products as lean in violation of 21 C.F.R. § 101.62 and its California equivalent - regulations which are aimed at preventing false and misleading labelling practices.

77.     As a result of Defendant's conduct, Plaintiff Clay and California Sub-Class members were harmed and suffered actual damages as a result of Defendant's unfair competition and deceptive acts and practices. Had Defendant disclosed the true nature and/or not falsely represented its Muscle Milk and Cytosport products' protein, L-glutamine and fat content, Plaintiff Clay and the California Sub-Class would not have been misled into purchasing Defendant's Muscle Milk and Cytosport products, or, alternatively, pay significantly less for them.

26

1   78.    Additionally, misbranded food products cannot legally be manufactured,

2   held, advertised, distributed or sold. Thus, misbranded food has no economic value and

3   is worthless as a matter of law, and purchasers of misbranded food are entitled to a

4   refund of the purchase price of the misbrand food.

5   79.    Plaintiff Clay, on behalf of herself and all other similarly situated

6   California consumers, and as appropriate, on behalf of the general public of the state of

7   California, seeks injunctive relief prohibiting Defendant continuing these unlawful

8   practices pursuant to California Civil Code § 1782(a)(2).

9   80.    Plaintiff Clay provided Defendant with notice of its alleged violations of

10  the CLRA pursuant to California Civil Code § 1782(a) *via* certified mail, demanding

11  that Defendant correct such violations.

12  81.    If Defendant's fail to respond to Plaintiff's CLRA notice within 30 days,

13  Plaintiff Clay may amend this Complaint to seek all available damages under the CLRA

14  for all violations complained of herein, including, but not limited to, statutory damages,

15  punitive damages, attorney's fees and cost and any other relief that the Court deems

16  proper.

17  ## THIRD COUNT

18  **Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
    **Unlawful Business Acts and Practices**
19  **(On Behalf of the Nationwide Class and the California Sub-Class)**

20

21  82.    Plaintiffs hereby incorporate by reference the allegations contained in the

22  preceding paragraphs of this Complaint.

23  83.    The Sherman Law, HEALTH & SAF. CODE §§ 109875 *et seq.*, broadly

24  prohibits the misbranding of any food products. The Sherman Law provides that food is

25  misbranded "if its labeling is false or misleading in any particular." HEALTH & SAF.

26  CODE § 110660.

27  84.    Defendant is a person within the meaning of HEALTH & SAF. CODE §

28  109995.

27

85.    Additionally, California has adopted as its own, and as the Sherman Law expressly incorporates, "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as "the food labeling regulations of this state."  Federal statutes and regulations, including, but not limited to, 21 U.S.C. §§ 321, 343 and 21 C.F.R. §§ 101.4, 101.64, prohibit the mislabeling and misbranding of food products.

86.    Federal statutes and regulations prohibit misleading consumers by misrepresenting a product's nutritional ingredients and including an ingredient on each Muscle Milk and Cytosport product's nutritional labels that is not actually included in the products themselves.

87.    Additionally, the word "lean" to may not be used to describe a food product or dietary supplement unless it complies with definitional requirements of 21 C.F.R. § 101.62(e). If a food product is described as lean, and does not comply with 21 C.F.R. § 101.62(e), the food is considered misbranded. 21 C.F.R. § 101.62(f).

88.    The California Civil Code § 1770(a)(2), (5), (7) and (9) also prohibits mislabeling food misrepresenting the standard, quality, sponsorship, approval, and/or certification of food products, as noted in above.

89.    The business practices alleged above are unlawful under Business and Professional Code §§ 17500, *et seq.*, California Civil Code §§ 1770(a)(2), (5), (7) and (9) and the Sherman Law, each of which forbids the untrue, fraudulent, deceptive, and/or misleading marketing, advertisement, packaging and labelling of food products and dietary supplements.

90.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded food

28

1  products cannot legally be manufactured, held, advertised, distributed or sold. Thus,
2  misbranded food has no economic value and is worthless as a matter of law, and
3  purchasers of misbranded food are entitled to a restitution refund of the purchase price
4  of the misbranded food.

## FOURTH COUNT

**Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
**Unfair Business Acts and Practices**
**(On Behalf of the Nationwide Class and the California Sub-class)**

8   91.    Plaintiffs hereby incorporate by reference the allegations contained in the
9  preceding paragraphs of this Complaint.

10   92.    Plaintiffs and other members of the Class and the and the California Sub-
11  Class who purchased Defendant's Muscle Milk and Cytosport products suffered a
12  substantial injury by virtue of buying a product that misrepresented and/or omitted the
13  true contents and benefits of its protein, L-glutamine, and fat contents. Had Plaintiffs
14  and members of the Class and the and the California Sub-Class known that Defendant's
15  materials, advertisement and other inducements misrepresented and/or omitted the true
16  contents and benefits of its Muscle Milk and Cytosport products, they would not have
17  purchased said products.

18   93.    Defendant's actions alleged herein violate the laws and public policies of
19  California and the federal government, as set out preceding paragraphs of this
20  Complaint.

21   94.    There is no benefit to consumers or competition by allowing Defendant to
22  deceptively market, advertise, package and label its Muscle Milk and Cytosport
23  products.

24   95.    Plaintiffs and Class and the and the California Sub-Class members who
25  purchased Defendant's Muscle Milk and Cytosport products had no way of reasonably
26  knowing that these products were deceptively marketed, advertised, packaged and
27  labeled. Thus, Class and the California Sub-Class members could not have reasonably
28  avoided the injury they suffered.

29

1    96.    The gravity of the harm suffered by Plaintiffs and Class and the and the
2    California Sub-Class members who purchased Defendant's Muscle Milk and Cytosport
3    products outweighs any legitimate justification, motive or reason for marketing,
4    advertising, packaging and labeling the Muscle Milk and Cytosport products in a
5    deceptive and misleading manner. Accordingly, Defendant's actions are immoral,
6    unethical, unscrupulous and offend the established public policies as set out in federal
7    regulations and is substantially injurious to Plaintiff Clay and members of the Class and
8    the and the California Sub-Class.

9    97.    The above acts of Defendant, in disseminating said misleading and
10   deceptive statements throughout the State of California and nation-wide to consumers,
11   including Plaintiffs and members of the Class and the and the California Sub-Class,
12   were and are likely to deceive reasonable consumers by obfuscating the true nature and
13   amount of the ingredients in Defendant's Muscle Milk and Cytosport products, and thus
14   were violations of CAL. BUS. PROF. CODE §§ 17500, *et seq.*

15   98.    As a result of Defendant's above unlawful, unfair and fraudulent acts and
16   practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as
17   appropriate, on behalf of the general public, seek injunctive relief prohibiting Defendant
18   from continuing these wrongful practices, and such other equitable relief, including full
19   restitution of all improper revenues and ill-gotten profits derived from Defendant's
20   wrongful conduct to the fullest extent permitted by law. Misbranded food products
21   cannot legally be manufactured, held, advertised, distributed or sold. Thus misbranded
22   food has no economic value and is worthless as a matter of law, and purchasers of
23   misbranded food are entitled to a restitution refund of the purchase price of the misbrand
24   food.

25                                   **FIFTH COUNT**

26               **Violation of CAL. BUS. & PROF. CODE §§ 17200, *et seq.* -**
                           **Fraudulent Business Acts and Practices**
27            **(On Behalf of the Nationwide Class and the California Sub-class)**

28   99.    Plaintiffs hereby incorporate by reference the allegations contained in the

30

1  preceding paragraphs of this Complaint.

2      100.  Such acts of Defendant as described above constitute a fraudulent business

3  practice under Cal. Bus. & Prof. Code §§ 17200, *et seq.*

4      101.  As more fully described above, Defendant mislabels the protein content in

5  the Muscle Milk RTD Products. Defendant also misleadingly markets, advertises,

6  packages, and labels its Muscle Milk Powder Products as containing a "protein blend,"

7  which contains L-glutamine when in fact it does not. Defendant violated 21 C.F.R. §

8  101.62 by misbranding its Lean Muscle Milk Products as lean when it had no legal basis

9  for doing so. Defendant's misleading marketing, advertising, packaging, and labeling

10  are likely to, and do, deceive reasonable consumers. Indeed, Plaintiffs were deceived

11  about the nutritional benefits of Defendant's Muscle Milk and Cytosport products, as

12  Defendant's marketing, advertising, packaging, and labeling of its Muscle Milk and

13  Cytosport products misrepresents and/or omits the true nature of the Products'

14  nutritional contents and benefits. Said acts are fraudulent business practice and acts.

15      102.  Defendant's misleading and deceptive practices caused Plaintiffs to

16  purchase Defendant's Muscle Milk and Cytosport products and/or pay more than they

17  would have otherwise had they know the true nature of the contents of the Muscle Milk

18  and Cytosport products.

19      103.  As a result of Defendant's above unlawful, unfair and fraudulent acts and

20  practices, Plaintiffs, on behalf of themselves and all others similarly situated, and as

21  appropriate, on behalf of the general public, seeks injunctive relief prohibiting

22  Defendant from continuing these wrongful practices, and such other equitable relief,

23  including full restitution of all improper revenues and ill-gotten profits derived from

24  Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded food

25  products cannot legally be manufactured, held, advertised, distributed or sold. Thus,

26  misbranded food has no economic value and is worthless as a matter of law, and

27  purchasers of misbranded food are entitled to a restitution refund of the purchase price

28  of the misbrand food.

31

## SIXTH COUNT

### Violation of FLA. STAT. §§ 501.201, *et seq.* -
### Deceptive and Unfair Trade Practices
### (On Behalf of the Florida Sub-Class)

104.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

105.   Plaintiff Reichert is a consumer as defined by FLORIDA STATUTE § 501.203.

106.   Defendant's Muscle Milk and Cytosport products are goods within the meaning of FLORIDA STATUTE §§ 501.201, *et seq.*

107.   Defendant engaged in trade or commerce, as defined by FLA. STAT. § 501.203, by advertising, soliciting, providing, offering, or distributing its Muscle Milk and Cytosport products with the State of Florida.

108.   FLORIDA STATUTE § 500.11(1)(a) deem food (including nutritional supplements) misbranded when the labels contains a statement that is "false or misleading in any particular" and adopts the federal labeling requirements as Florida law.

109.   Federal/state statutes and regulations prohibit misleads consumers by including an ingredient in each Muscle Milk and Cytosport product's nutritional labels which is not actually included in the products themselves or overstating the amount of certain nutritional ingredients.

110.   Additionally, the word "lean" to may not be used to describe a food product or dietary supplement unless it complies with definitional requirements of 21 C.F.R. § 101.62(e). If a food product is described as lean, and does not comply with 21 C.F.R. § 101.62(e), the food is considered misbranded. 21 C.F.R. § 101.62(f).

111.   Plaintiff Reichert and other members of the Florida Sub-Class who purchased Defendant's Muscle Milk and Cytosport products suffered substantial injury by virtue of buying a product that misrepresented and/or omitted the true nature of its protein, L-glutamine, and fat content. Had Plaintiff Reichert and other reasonable consumers known that Defendant's materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of its Muscle Milk and

1 | Cytosport products, they would not have purchased said Products.

2 | 112. There is no benefit to consumers or competition by allowing Defendant to
3 | deceptively market, advertise, package and label its Muscle Milk and Cytosport
4 | products.

5 | 113. Plaintiff Reichert and Florida Sub-Class members who purchased
6 | Defendant's Muscle Milk and Cytosport products had no way of reasonably knowing
7 | that these Products were deceptively marketed, advertised, packaged and labeled. Thus,
8 | Florida Sub-Class members could not have reasonably avoided the injury they suffered.

9 | 114. The gravity of the harm suffered by Plaintiff Reichert and Florida Sub-
10 | Class members who purchased Defendant's Muscle Milk and Cytosport products
11 | outweighs any legitimate justification, motive or reason for marketing, advertising,
12 | packaging and labeling the Muscle Milk and Cytosport products in a deceptive and
13 | misleading manner. Accordingly, Defendant's actions are immoral, unethical,
14 | unscrupulous and offend the established public policy as set out in federal regulations
15 | and is substantially injurious to Plaintiff Reichert and members of the Florida Sub-Class.

16 | 115. The above acts of Defendant, in disseminating said misleading and
17 | deceptive statements throughout the State of Florida to consumers, including Plaintiff
18 | Reichert and members of the Florida Sub-Class, were and are likely to deceive
19 | reasonable consumers by obfuscating the true nature and amount of the ingredients in
20 | Defendant's Muscle Milk and Cytosport products, and thus were violations of FLA.
21 | STAT. §§ 501.201, *et seq.*

22 | 116. These misleading and deceptive practices caused Plaintiff Reichert to
23 | purchase Defendant's Muscle Milk and Cytosport products and/or pay more than they
24 | would have otherwise had they known the true nature of the contents of Defendant's
25 | Muscle Milk and Cytosport products. Additionally, had Reichert known the true nature
26 | of the contents of Defendant's Muscle Milk and Cytosport products, they would had not
27 | purchased these Products.

28 | 117. As a result of Defendant's above unlawful, unfair and fraudulent acts and

33

practices, Plaintiff Reichert, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public of the State of Florida, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution and disgorgement of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law.

## SEVENTH COUNT

### Violation of M.C.L. §§ 445.901, *et seq.* - Deceptive and Unfair Trade Practices (On Behalf of the Michigan Sub-Class)

118. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

119. Plaintiff Ehrlichman and Defendant are persons as defined by M.C.L. § 445.902(d).

120. Defendant engaged in trade or commerce, as defined by M.C.L. § 445.902(g), by advertising, soliciting, providing, offering, or distributing its Muscle Milk and Cytosport products with the State of Michigan.

121. MICHIGAN FOOD LAW ACT 92 of 2000 deem food (including nutritional supplements) misbranded when the labels contains a statement that is "false or misleading in any particular" and adopts the federal labeling requirements as Michigan law.

122. Federal/state statutes and regulations prohibit misleading consumers by including an ingredient in each Muscle Milk and Cytosport product's nutritional labels that is not actually included in the products themselves or overstating the amount of certain nutritional ingredients.

123. Additionally, the word "lean" may not be used to describe a food product or dietary supplement unless it complies with definitional requirements of 21 C.F.R. § 101.62(e). If a food product is described as lean, and does not comply with 21 C.F.R. § 101.62(e), the food is considered misbranded. 21 C.F.R. § 101.62(f).

34

124. By labeling their products as containing a "protein blend" which included L-glutamine in its Muscle Milk Powder Products, when in fact these Products did not, Defendant violated M.C.L. § 445.903(1)(a), (c), (e), (s), and (cc), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Muscle Milk Powder Products. Similarly, Defendant violated M.C.L. § 445.903(1)(a), (c), (e), (s), and (cc) by overstating the amount of protein in their Muscle Milk RTD Products.

125. Defendant violated M.C.L. § 445.903(1)(a), (c), (e), (s), and (cc) by misbranding its Lean Muscle Milk Products as lean in violation of 21 C.F.R. § 101.62.

126. As a result of Defendant's conduct, Plaintiff Ehrlichman and Michigan Sub-Class members were harmed and suffered actual damages as a result of Defendant's unfair, unconscionable, or deceptive methods, acts, or practices. Had Defendant disclosed the true nature of the contents of its "protein blend," and/or not falsely represented its Muscle Milk and Cytosport products' protein and fat content, Plaintiff Ehrlichman would not have been misled into purchasing Defendant's Muscle Milk and Cytosport products, or, alternatively, paid significantly less for them.

127. Plaintiff Ehrlichman, on behalf of herself and all other similarly situated Michigan consumers, and as appropriate, on behalf of the general public of the State of Michigan, seeks damages, as well as declarative and injunctive relief prohibiting Defendant from continuing these unlawful practices pursuant to M.C.L. § 445.911.

128. As a result of Defendant's above unfair, unconscionable, or deceptive methods, acts, or practices, Plaintiff Ehrlichman, on behalf of herself and all others similarly situated, and as appropriate, on behalf of the general public of the State of Michigan, seeks an award of the actual damages caused by Defendant's unfair, unconscionable, or deceptive methods, acts, or practices and any other relief the Court deems appropriate.

///

///

///

35

# EIGHTH COUNT

## Breach of Express Warranty
## (On Behalf of the Nationwide Class)

129. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

130. Plaintiffs and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of the Muscle Milk RTD Products and/or Muscle Milk Powder Products. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Muscle Milk Powder Products regarding the Products' "Protein Blend" and on the packaging of the Muscle Milk RTD Products regarding the Products' protein content.

131. The Muscle Milk and Cytosport products' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Nationwide Class on the one hand, and Defendant on the other.

132. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class.

133. Defendant breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing the products that could provide the benefits promised, *i.e.* that the Products contains a "Protein Blend" which included L-glutamine and providing Products that include the warranted amount of protein, as alleged above.

134. As a result of Defendant's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the different purchase price of any and all of the Muscle Milk RTD Products and Muscle Milk Powder Products they purchased and the price of a product which provides the benefits and contents as warranted.

///

36

**Violation of 15 U.S.C. §§ 2301 *et seq.* -**
**Breach of Written Warranty**
**(On Behalf of the Nationwide Class)**

135.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

136.  This claim is brought by Plaintiffs on behalf of themselves and the nationwide Class solely for breach of federal law. This claim is not based on any violation of state law.

137.  The Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, creates a private federal cause of action for breach of a "written warranty" as defined by the Act. 15 U.S.C. § 2301(6) and § 2310(d)(1).

138.  The Muscle Milk Powder Products and Muscle Milk RTD Products are "consumer products" as that term is defined by 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

139.  Plaintiffs and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3), since they are buyers of Muscle Milk Powder Products and Muscle Milk RTD Products for purposes other than resale.

140.  Defendant is an entity engaged in the business of making and selling dietary supplements available, either directly or indirectly, to consumers such as Plaintiffs and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

141.  Through its labeling, Defendant gave and offered a written warranty to consumers relating to the nature and quantity of L-glutamine contains within the Muscle Milk Powder Products and the protein contents of the Muscle Milk RTD Products. As a result, Defendant is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

142.  Defendant provided a "written warranty" within the meaning of 15 U.S.C. 2301(6) for the Muscle Milk Powder Products by labeling its products as containing L-

37

glutamine and labeling its Muscle Milk RTD Products as containing a specific amount of protein. These affirmations of fact regarding the nature and quantity of the ingredients in the Muscle Milk RTD Products and Muscle Milk Powder Products constituted, and were intended to convey to purchasers, a written promise that the ingredients in the products were free of a particular type of defect (*i.e.*, the Muscle Milk and Cytosport products would include a particular ingredient in a certain amount). As such, these written promises and affirmations were part of the basis of Plaintiffs' and the Class' bargain with Defendant in purchasing the Muscle Milk RTD Products and Muscle Milk Powder Products.

143. Defendant breached the written warranty by failing to provide and supply the Muscle Milk and Cytosport products as promised. Specifically, the Muscle Milk Powder Products did not contain any unbonded L-glutamine and the Muscle Milk Powder Products did not contain the amount of protein warranted, and thus were defective.

144. Plaintiffs and members of the Class were injured by Defendant's failure to comply with its obligations under the written warranty since Plaintiffs and members of the Class paid for products that did not have the promised ingredients of a particular quality and amount, did not receive the defect-free protein supplement that was promised to them and that they bargained for, and paid a premium for the Muscle Milk RTD Products and Muscle Milk Powder Products when they could have instead purchased other less expensive alternative protein supplements.

145. Plaintiffs and the Class therefore for this claim seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for relief and judgment as follows:

A.    For an order declaring that this action is properly maintained as a class

38

action and appointing Plaintiffs as representatives for the Class, and appointing Plaintiffs' counsel as Class counsel;

B.    That Defendant bear the costs of any notice sent to the Class;

C.    For an order awarding Plaintiffs and the members of the Class actual damages, restitution and/or disgorgement;

D.    For an order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

E.    For restitution of the funds that unjustly enriched Defendant at the expense of the Plaintiffs and Class Members.

F.    For an order awarding Plaintiffs and the members of the Class pre- and post-judgment interest;

G.    For an order awarding attorneys' fees and costs of suit, including expert's witnesses fees as permitted by law; and

H.    Such other and further relief as this Court may deem just and proper.

## VII.   JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all of the claims asserted in this Complaint so triable.

Respectfully submitted,

FINKELSTEIN & KRINSK LLP

Dated: January 23, 2015           By: _____
                                  Jeffrey R. Krinsk, Esq.
                                  jrk@classactionlaw.com
                                  Mark L. Knutson, Esq.
                                  mlk@classactionlaw.com
                                  Trenton R. Kashima, Esq.
                                  trk@classactionlaw.com
                                  William R. Restis, Esq.
                                  wrr@classactionlaw.com
                                  501 West Broadway, Suite 1250
                                  San Diego, California 92101-3579
                                  Telephone: (619) 238-1333
                                  Facsimile: (619) 238-5425

39

BARBAT, MANSOUR & SUCIU PLLC
Nick Suciu III, Esq. (*Pro Hac Vice* Application
Forthcoming)
nicksuciu@bmslawyers.com
434 West Alexandrine #101
Detroit, MI 48201
Telephone: (313) 303-3472

SOMMERS SCHWARTZ P.C.
Lance C. Young, Esq. (*Pro Hac Vice*
Application Forthcoming)
lyoung@sommerspc.com
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300

BRIGGS COLEGROVE P.C.
Sarah W. Colegrove, Esq. (*Pro Hac Vice*
Application Forthcoming)
sarahc@briggscolegrove.com
660 Woodward Ave., Suite 1523
Detroit, MI 48226
Telephone: (313) 964-2077

Attorneys for Plaintiffs and the Putative Classes

CLASS ACTION COMPLAINT
File # 7606.01