1  FINKELSTEIN & KRINSK LLP
   Jeffrey R. Krinsk, Esq. (SBN 109234)
2  jrk@classactionlaw.com
   Mark L. Knutson, Esq. (SBN 131770)
3  mlk@classactionlaw.com
   William R. Restis, Esq. (SBN 246823)
4  wrr@classactionlaw.com
   Trenton R. Kashima, Esq. (SBN 291405)
5  trk@classactionlaw.com
   550 West C St., Suite 1760
6  San Diego, California 92101
   Telephone: (619) 238-1333
7  Facsimile:  (619) 238-5425

8  Attorneys for Plaintiffs
   and the Putative Classes
9
   [Additional Counsel Listed On Signature Page]
10
                **UNITED STATES DISTRICT COURT**
11
         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13 CHAYLA CLAY, ERICA EHRLICHMAN, and LOGAN REICHERT, individually and on behalf of all others similarly situated, | Case No: 3:15-cv-00165-L-DHB |
| 15          Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT CYTOSPORT, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| 16 v. | |
| 17 CYTOSPORT, INC., a California corporation, | **DATE:**    **May 18, 2015** |
| 18          Defendant. | **TIME:**    **No Oral Argument** |
| | **CTRM:**    **5B** |
| 19 | |
| 20 | **JUDGE:**    **Hon. M. James Lorenz** |

21

22

23

24

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

2

3
<u>PAGE</u>

4
I.      INTRODUCTION ....................................................................................... 1

5
II.     RELEVANT ALLEGED FACTS ................................................................ 2

6
III.    ARGUMENT ............................................................................................... 4

7
        A.      Legal Standard on Motion to Dismiss ................................................. 4

8
        B.      Plaintiffs' Claims are not Preempted by the FDCA ............................ 4

9
                i.      Plaintiffs' Protein Claims are not Preempted ............................ 6

10
                ii.     Plaintiffs' L-Glutamine Claims are not Preempted ................. 12

11
                iii.    Plaintiffs' Lean Claims are not Preempted .............................. 13

12
        C.      Resolving Plaintiff's Consumer Claims Does Not Require the FDA's
                Expertise ........................................................................................... 16

13

14
        D.      Defendant's "Lean" Labeling is Likely to Deceive the Average
                Consumer ........................................................................................... 19

15
        E.      Defendant's Standing Challenge Is Both Premature and Wrong ....... 20

16
        F.      Plaintiffs have Sufficiently Alleged Claims for Breach of Warranty,
                including violations of the federal Magnuson Moss Warranty Act .... 22

17
IV.     CONCLUSION .......................................................................................... 26

18

19

20

21

22

23

24

25

26

27

28

1

## <u>**TABLE OF AUTHORITIES**</u>

2

<u>**PAGE(S)**</u>

3

**Cases**

4

*Ackerman v. Coca-Cola Co.*,
  2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................................................... 15

5

*Aguilar v. Boulder Brands, Inc.*,
  2013 WL 2481549 (S.D. Cal. Jun. 10, 2013) ........................................................... 21

6

7

*Allen v. Hyland's, Inc.*,
  2013 WL 1748408 (C.D. Cal. Apr. 11, 2013) ........................................................... 25

8

*Allen v. Similasan Corp.*,
  2013 WL 2120825 (S.D. Cal. May 14, 2013) ........................................................... 21

9

10

*Ang v. Bimbo Bakeries USA, Inc.*,
  2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ........................................................... 21

11

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009) ........................................................................................................ 4

12

13

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  2011 WL 2111796 (N.D. Cal. May 26, 2011) ................................................... 12, 13

14

*Astiana v. Hain Celestial Grp., Inc.*,
  905 F.Supp.2d 1013 (N.D. Cal. 2012) ........................................................................ 18

15

16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 4, 10, 11

17

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) .......................................................................................... 11

18

19

*Bly–Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001) ....................................................................................... 10

20

*Bohac v. Gen. Mills, Inc.* ("*Bohac I*"),
  2013 WL 5587924 (N.D. Cal. Oct. 10, 2013) .................................................... 16, 17

21

22

*Bohac v. Gen. Mills, Inc.* ("*Bohac II*"),
  2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) .......................................................... 23

23

*Brazil v. Dole Food Co.*,
  935 F. Supp. 2d 947 (N.D. Cal. 2013) .......................................................................... 5

24

25

*Brothers v. Hewlett-Packard Co.*,
  2007 WL 485979 (N.D. Cal. Feb. 12, 2007) ............................................................. 25

26

*Brown v. Hain Celestial Grp., Inc.*,
  913 F. Supp. 2d 881 (N.D. Cal. 2012) ........................................................................ 21

27

28

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011) .................................................................................. 22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Burke v. Weight Watchers Int'l, Inc.*,
  983 F. Supp. 2d 478 (D.N.J. 2013) ................................................................. 8

*Cardenas v. NBTY, Inc.*,
  870 F. Sup. 2d 984 (E.D. Cal. 2012) .............................................................. 21

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................ 5, 13, 14, 19

*Chavez v. Blue Sky Natural Beverage Co.*,
  268 F.R.D. 365 (N.D. Cal. 2010) .............................................................. 5, 19

*Chavis v. Fidelity Warranty Services, Inc.*,
  415 F.Supp.2d 620 (D.S.C. 2006) ............................................................... 25

*Cipollone v. Liggett Group, Inc.*,
  505 U.S. 504 (1992) ............................................................................. 12

*Clark v. Wynn's Extended Care*,
  2007 WL 922244 (N.D. Ill. Mar. 23, 2007) ..................................................... 25

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017, 1022 (9th Cir. 2008); ........................................................... 24

*Colucci v. ZonePerfect Nutrition Co.*,
  2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ................................................... 21

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ..................................................................... 9

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) .................................................................... 11

*Craig v. Twinings N. Am., Inc.*,
  2015 WL 505867 (W.D. Ark. Feb. 5, 2015) ..................................................... 15

*Creagri, Inc. v. USANA Health Sciences*,
  2005 WL 181886 (N.D. Cal. Jan. 26, 2005) ................................................. 6, 7, 9

*CreAgri, Inc. v. USANA Health Sciences, Inc.*,
  474 F.3d 626 (9th Cir. 2007) ..................................................................... 7

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) .................................................................... 24

*Davel Commc'ns, Inc. v. Quest Corp.*
  F.3d 1075 (9th Cir. 2006) ................................................................... 16, 17

*Delacruz v. Cytosport, Inc.*,
  2012 WL 2563857 (N.D. Cal. June 28, 2012) ................................................. 5, 14

*Deutsch v. Flannery*,
  823 F.2d 1361 (9th Cir. 1987) ................................................................... 10

*Dorsey v. Rockhard Labs, LLC*,
  2014 WL 4678969 (C.D. Cal. Sep. 19, 2014) .................................................... 24

iii

*Estes v. Jaguar Land Rover N. Am., LLC*,
 2011 U.S. Dist LEXIS 156590, *22-26 (C.D. Cal. Jul. 25, 2011)..........................25

*Fallick v. Nationwide Mut. Ins. Co.*,
 162 F.3d 410 (6th Cir. 1998)..........................22

*Farley Transp. Co. v. Santa Fe Trail Transp. Co.*,
 778 F.2d 1365 (9th Cir. 1985)..........................16

*Fecht v. Price Co.*,
 70 F.3d 1078 (9th Cir. 1995)..........................11

*Forcellati v. Hyland's Inc.*,
 876 F.Supp.2d 1155 (C.D. Cal 2012)..........................22

*Fujisawa Pharm. Co. v. Kapoor*,
 814 F. Supp. 720 (N.D. Ill. 1993)..........................9, 13

*Gitson v. Trader Joe's Co.*,
 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014)..........................22

*Ham v. Hain Celestial Group, Inc.*,
 2014 WL 4965959 (N.D. Cal. Oct. 3, 2014)..........................23

*Hendricks v. StarKist Co.*,
 30 F.Supp.3d 917 (N.D. Cal. 2014)..........................5, 19

*Hillsborough County v. Automated Med. Labs., Inc.*,
 471 U.S. 707 (1985)..........................5

*In re 5 Hr. Energy Sales & Marketing Practices Litig.*,
 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014)..........................19, 24

*In re Ferrero Litig.*,
 794 F. Supp. 2d 1107 (S.D. Cal. 2011)..........................20, 23

*In re Sony VAIO Computer Network Trackpad Litig.*,
 2010 WL 4262191 (S.D. Cal. Oct. 28, 2010)..........................25

*In re Stac Electronics Sec. Litig.*,
 89 F.3d 1399 (9th Cir. 1996)..........................11

*In the Matter of Ecm Biofilms, Inc., A Corp.*,
 2015 WL 575402 (FTC Jan. 28, 2015)..........................16

*JHP Pharm., LLC v. Hospira, Inc.*,
 2014 WL 4988016 (C.D. Cal. Oct. 7, 2014)..........................19

*Johnson v. Triple Leaf Tea, Inc.*,
 2014 WL 4744558 (N.D. Cal. Sept. 23, 2014)..........................23

*Jones v. ConAgra Foods, Inc.*,
 912 F.Supp.2d 889 (N.D. Cal. 2012)..........................17

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009)..........................10, 11

iv

*Langan v. Johnson & Johnson Consumer Cos.*,
    2015 WL 1476400 (D. Conn. Mar. 31, 2015)...................................18

*Linear Technology Corp. v. Applied Materials, Inc.*,
    152 Cal.App.4th 115 (2007)...................................................20

*Long v. Graco Children's Prods.*,
    2013 WL 4655763 (N.D. Cal. Aug. 26, 2013)..............................24

*Matrixx Initiatives, Inc. v. Siracusano*,
    131 S.Ct. 1309 (2011).............................................................4

*McGee v. Cont'l Tire N. Am., Inc.*,
    2007 WL 2462624 (D.N.J. Aug. 27, 2007)................................25

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)................................................................5

*Mintel Learning Tech., Inc. v. Ambow Educ. Holding Ltd.*,
    2012 WL 762126 (N.D. Cal. Mar. 8, 2012)..............................10

*Morgan v. Wallaby Yogurt Co., Inc.*,
    2014 WL 1017879 (N.D. Cal. Mar. 13, 2014)............................21

*Myers-Armstrong v. Actavis Totowa, LLC*,
    2009 WL 1082026 (N.D. Cal. Apr. 22, 2009)...........................22

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995)................................................................5

*Neubronner v. Milken*,
    6 F.3d 666, 671 (9th Cir. 1993)..............................................10

*New York State Rest. Ass'n v. New York City Bd. of Health*,
    556 F.3d 114 (2d Cir. 2009).....................................................5

*Pacific Gas and Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n*,
    461 U.S. 190 (1983)...............................................................11

*Parker v. J.M. Smucker Co.*,
    2013 WL 4516156 (N.D. Cal. July 20, 2012)............................21

*Payton v. Cnty of Kane*,
    308 F.3d 673 (7th Cir. 2002)..................................................22

*POM Wonderful LLC v. Coca-Cola Co. ("POM 1")*,
    679 F.3d 1170 (9th Cir. 2012)................................................18

*POM Wonderful LLC v. Coca-Cola Co. ("POM 2")*,
    134 S. Ct. 2228 (2014) .....................................................18, 25

*Quinn v. Walgreen Co.*,
    2013 WL 4007568 (S.D.N.Y. Aug 6, 2013)..............................21

*Rivera v. Wyeth-Ayerst Labs*,
    283 F.3d 315 (5th Cir. 2002)..................................................22

v

*Rodarte v. Philip Morris, Inc.*,
  2003 WL 23341208 (C.D. Cal, June 23, 2003) ...................................... 23

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ........................................................................ 4

*Swierkiewicz v. Sorema N. A.*,
  122 S. Ct. 992 (2002) ....................................................................................... 9

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
  370 F.3d 775 (9th Cir. 2002) ........................................................................ 17

*Thomas v. City Nat. Bank*,
  2012 WL 4355554 (D. Nev. Sept. 21, 2012) ................................................ 7

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
  245 F.3d 1048 (9th Cir. 2001) ...................................................................... 11

*United States v. General Dynamics Corp.*,
  828 F.2d 1359 (9th Cir. 1987) ................................................................ 16, 17

*United States v. Lane Labs-USA Inc.*,
  427 F.3d 219 (3d Cir. 2005) .......................................................................... 15

*United States v. Locke*,
  529 U.S. 89 (2000) ............................................................................................ 5

*Usher v. City of Los Angeles*,
  828 F.2d 556 (9th Cir. 1987) ........................................................................... 7

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) .................................................................... 24

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) ........................................................................ 20

**Statutes**
15 U.S.C. §§ 2301 *et seq.* ........................................................................... 2, 24
21 U.S.C. § 331 ............................................................................................. 8, 12
21 U.S.C. § 343 ........................................................................................ passim
28 U.S.C. 1332 ................................................................................................. 25
CAL. BUS. & PROF. CODE §§ 17200, *et seq.* ................................................ 1
CAL. CIV. CODE § 1791.2 ............................................................................ 23
CAL. CIV. CODE §§ 1750, *et seq.* .................................................................. 1
CAL. COM. CODE § 2313 .............................................................................. 23
CAL. HEALTH & SAFETY CODE § 110100 .................................................. 5
FL.ST. § 500.11 ................................................................................................. 5
FL.ST. §§ 501.201, *et seq.* ............................................................................. 1
M.C.L.A. 289.8101 ........................................................................................... 5
MCL §§ 445.901, *et seq.* ................................................................................ 1

**Other Authorities**
FDA, GUIDANCE FOR INDUSTRY: NUTRITION LABELING MANUAL - A GUIDE FOR
  DEVELOPING AND USING DATA BASES ..................................................... 8

1

**Rules**

FRCP 9(b) ................................................................................................. 9, 10, 11

2

FRCP 12(b)(6) ...................................................................................................... 8

FRCP 8 ................................................................................................................. 9

3

**Regulations**

21 C.F.R. § 101.2 .............................................................................................. 12

4

21 C.F.R. § 101.4 .............................................................................................. 12

21 C.F.R. § 101.9 ....................................................................................... passim

5

21 C.F.R. § 101.13 ....................................................................................... 14, 15

21 C.F.R. § 101.62 ....................................................................................... 13, 14

6

21 C.F.R. § 101.65 .............................................................................................. 15

79 Fed. Reg. 11879 ............................................................................................. 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Case No: 14-cv-02408-BEN-KSC

## I.    INTRODUCTION

Plaintiff Chayla Clay's, Erica Ehrlichman's and Logan Reichert's ("Plaintiffs") allegations against Defendant Cytosport, Inc. ("Cytosport" or "Defendant") are relatively simple: Defendant labels its protein supplements in a materially false and misleading manner. Namely, Plaintiffs allege that Defendant uniformly misrepresents the *amount* of protein, the *presence* of unbonded L-Glutamine, and the *nature* of the fat contents of several subsets of its popular "Muscle Milk" and "Cytosport" branded protein supplements.

To counter Plaintiffs' detailed Complaint, Defendant raises a number of specious legal arguments and tries to improperly inject several issues of fact and evidence into its Motion to Dismiss. Despite its attempts at misdirection, Defendant is unable to escape Plaintiffs' allegations that the Federal Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"), requires a supplement manufacturer to ensure that its products' labels are not "false or misleading in any particular." 21 U.S.C. § 343(a)(1). Defendant's labeling practices, which mislead consumers regarding the contents of their products, run afoul of the federal regulations, enacted under the FDCA to protect consumers from misbranded products. Particularly, the federal regulations expressly prohibit Defendant from including less protein than what is listed on the label, require Defendant to include those ingredients that are listed on its label, and may only label products as "lean" if they comport with the relevant regulations.[1]

Defendant, however, argues that Plaintiffs' claims are preempted because Plaintiffs attempt to hold Defendant's products to a higher standard than what is required under federal law. This is simply untrue. Plaintiffs' Complaint alleges clear

---

[1]  Defendant's labeling also violates the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*, the California False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE § 17500, the California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*, the Michigan Consumer Protection Act ("MCPA"), MCL §§ 445.901, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FL.ST. §§ 501.201, *et seq.* on similar grounds.

violations of the FDCA under a mechanical application of the relevant federal regulations. Further, because this issue does not involve any novel or specialized knowledge, it should also not be barred under the doctrine of primary jurisdiction.

Finally, because Defendant chose to make affirmative statements of fact regarding the *amount* of protein, the *presence* of unbonded L-Glutamine that upon testing proves to be deficient, Defendant has also breached an express warranty and violated the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*

## II.   RELEVANT ALLEGED FACTS

On January 23, 2015, Plaintiffs filed this case against Cytosport alleging that Defendant mislabels and misbrands its Muscle Milk and Cytosport branded protein supplements in violation of the FDCA and related federal regulations. Plaintiffs' Class Action Complaint ("Compl."), Dkt. 1.  Defendant manufactures, advertises and sells its popular "Muscle Milk" and Cytosport branded powdered and ready-to-drink ("RTD") protein supplements throughout the United States, including in California, Michigan, and Florida – the states where Plaintiffs purchased the protein supplements at issue. *Id.*, ¶ 1, 11-13. These products are "*fabricated*" by Defendant, "*fortified*" with sunflower and canola oils, proteins blends and L-Glutamine. *Id.*, ¶¶ 17-21, 33, 36, 50.

To promote the sales of its products, Defendant highlights the high protein content contained within their supplements. *Id.*, ¶ 2. This is particularly true of its "RTD Products,"[2] which prominently display the amount of protein contained on both the front and back of each product's label. *Id.*, ¶¶ 2, 17-21. However, Plaintiffs allege that Defendant misrepresents the protein contents of the RTD Products.

To plausibly support this allegation, Plaintiffs assert that third parties have tested each of the RTD Products, and the results show that Defendant's Products contain significantly less protein (between 65% and 90%) than what is listed on their labels. *Id.*, ¶¶ 17-21. Accordingly, Plaintiffs allege that Defendant fortifies its RTD Products

---

[2] Collectively, Defendant's Cytosport Whey Isolate Protein Drink, Monster Milk: Protein Power Shake, Genuine Muscle Milk: Protein Nutrition Shake, and Muscle Milk Pro Series 40: Mega Protein Shake.

with less protein than advertised and "Defendant failed to ensure the accuracy of its Muscle Milk RTD Products' labels in accordance with these federal regulations." *Id.*, ¶¶ 17-21, 23.[3]  Incredibly, Defendant claims that certain FDA manufacturing/testing procedures allow as much as a *20 percent deviation*.

Additionally, Defendant's labels state that each of its "Muscle Milk Powder Products"[4] contain a "Precision Protein Blend," which includes "multiple sources and amino acids, such as L-Glutamine, to boost athletic performance." *Id.*, ¶¶ 3, 36-37. L-Glutamine is an amino acid that can be found both in its bonded form - L-Glutamine that is found within a long chain of amino acids that comprise a protein - and its unbonded form – L-Glutamine that is not chemically bonded to other molecules. *Id.*, ¶ 33. Bonded and unbonded L-Glutamine are used by the body differently, thus the difference between the two is appreciable. *Id.*, ¶¶ 33-35.

By listing L-Glutamine as a separate ingredient in its Precision Protein Blend, Defendant represents to reasonable consumers that each of the Muscle Milk Powder Products contains unbonded L-glutamine amino acids. *Id.*, ¶¶ 5, 38. However, the Muscle Milk Powder Products do not contain unbonded L-glutamine amino acids in any amount. *Id.*, ¶ 38. Again, Plaintiffs allege that consumers are not getting the ingredients listed on each Product's label for which they have paid a premium, and this is also supported by independent test results.

Defendant also labels a subset of its proteins supplements - the "Lean Products"[5] - as "lean" and contain "lean lipids." *Id.*, ¶¶ 6, 45, 49. But, Plaintiffs allege that these representations are misleading and unlawful. The term "lean" is a federally regulated

---

[3] Plaintiff alleges that each product was tested by Labdoor – a company that specializes in providing consumers with information regarding supplements – and/or other independent sources. *Id.*, ¶¶ 17-21.

[4] Collectively, Defendant's Muscle Milk: Lean Muscle Protein Powder, Muscle Milk Light: Lean Muscle Protein Powder, Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein, Muscle Milk Gainer: High Protein Gainer Powder Drink Mix, and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder.

[5] Collectively, Defendant's Muscle Milk: Lean Muscle Protein Powder, Muscle Milk Light: Lean Muscle Protein Powder, Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein, Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder, and Monster Milk: Lean Muscle Protein Supplement.

1  nutrient claim that can only be used on a *food product's* label describing *food* with
2  certain characteristics. The products at issue are supplements, not food.   Plaintiffs
3  allege that Defendant's use of the word "lean" in the names of each Lean Muscle Milk
4  Product does not meet the definitional requirements of the applicable regulations, and
5  thus is a violation of federal law. *Id*., ¶ 47. Additionally, Plaintiffs allege that
6  Defendant's Lean Products contain no less fat than the majority of its competitors and
7  are fortified with sunflower and canola oils, considerable sources of fat. *Id*., ¶¶ 6, 48-
8  49. Therefore, it is highly misleading to a reasonable consumer for Defendant to label
9  its Lean Products as "lean."

## III.   ARGUMENT

### A.   Legal Standard on Motion to Dismiss

When deciding a motion to dismiss, courts are directed to accept all factual
allegations in the complaint as true and to draw any reasonable inferences in the light
most favorable to the plaintiff. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-556
(2007). Ultimately, the Court may not dismiss a complaint in which the plaintiff has
alleged "sufficient factual matter… to 'state a claim that is plausible on its face.'"
*Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

Such factual plausibility exists when the facts pled "raise[s] a reasonable
expectation that discovery will reveal evidence" of wrongdoing and "allows the court
to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1312 (2011).
Accordingly, the Ninth Circuit holds that the allegations only need to "give fair notice"
of a plaintiff's legal and factual claims "to enable the opposing party to defend itself
effectively" in a way "that it is not unfair to require the opposing party to be subjected
to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202,
1216 (9th Cir. 2011).

### B.   Plaintiffs' Claims are not Preempted by the FDCA

Defendant bears "the considerable burden of overcoming the starting

4

presumption that Congress does not intend to supplant state law." *Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 925 (N.D. Cal. 2014). This Court must "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 107 (2000). This presumption is heightened "in fields of traditional state regulation." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). In light of the historical "primacy of state regulation of matters of health and safety" (*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)) courts allows state law to "normally coexist with federal regulations." *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 718 (1985).

Accordingly, the FDCA does not preempt any state law that "effectively parallels or mirrors" the federal labeling laws and regulations.[6] *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) *citing New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009); *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 370 (N.D. Cal. 2010). Here, California, Florida and Michigan – the state laws under which Plaintiffs base their action – each have adopted laws which incorporate the FDCA <u>verbatim</u> into their own statutory frameworks, making these federal requirements independently actionable. CAL. HEALTH & SAFETY CODE § 110100; FL.ST. § 500.11; M.C.L.A. 289.8101. Thus, the "real question presented here is whether the FDCA preempts [Plaintiffs'] suit to enforce *state* food-labeling requirements… that are *identical* to requirements imposed by the FDCA." *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013) (emphasis added). The Northern District of California has already answered in the negative with regarding to statements made on Defendant's Muscle Milk products. *Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at *7 (N.D. Cal. June 28, 2012). However, because Defendant apparently wishes to relitigate these questions again in

---

[6] The NLEA expressly states that the FDCA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343–1(a) ] of the [FDCA]." Pub.L. No. 101–535, § 6(c)(1).

1    this case, Plaintiffs must address the arguments Defendant has raised.

2                    i.        *Plaintiffs' Protein Claims are not Preempted*

3            Plaintiffs allege that Defendant provides less protein than that advertised on its

4    Muscle Milk RTD Products' labels. Compl. ¶¶ 15-29. These allegations are supported

5    by evidence from multiple sources, as recognized in Defendant's Motion. *See* Motion

6    at p. 3 fn. 4, Kaplan Decl. Exs. D & E. Accordingly, because the FDCA states that

7    Defendant's labels must accurately reflect the contents therein, Plaintiffs specifically

8    alleged that "Defendant failed to ensure the accuracy of its Muscle Milk RTD Products'

9    labels in accordance with these *federal regulations*." 21 U.S.C. § 343(a)(1); 21 CFR

10   101.9(g); Compl. ¶ 23 (emphasis added).

11           Nevertheless, Defendant attempts to suggest that Plaintiffs are trying to enforce

12   some unidentified standards that exceed the requirements of the FDCA. Motion at

13   §III(B)(1). To do so, Defendant argues that its RTD Products are subject to a "safe

14   harbor" under 21 CFR 101.9(g)(4)(ii), which allows for a 20 percent tolerance when

15   reporting certain nutritional contents. Yet, Defendant has not established, in either law

16   or fact, that this "safe harbor" governs its conduct. *C.f. Creagri, Inc. v. USANA Health*

17   *Sciences*, 2005 WL 181886, at *4 (N.D. Cal. Jan. 26, 2005) (holding that a supplement

18   manufacturer has the burden to prove that Reg. 101.9(g)(3)(ii) applies). In fact,

19   Defendant misrepresents the applicability of 21 CFR 101.9(g)(4)(ii).

20           This is because the "safe harbor" cited by Defendant only applies to "Class II"

21   nutrients which include protein from "[n]aturally occurring (indigenous) nutrients." 21

22   CFR 101.9(g)(3)(ii).[7] Here, Defendant's argument that its RTD Products include

23   naturally indigenous and naturally occurring protein is untenable and contrary to

24   Plaintiffs' allegations that Defendant's RTD Products includes "milk protein isolates"

25   which "differs from raw milk because it is processed to include a higher concentration

26   of protein and removes much of the fats and carbohydrates traditionally found in

27

28       [7] This makes sense because natural foods, as opposed to manufactured foods, will
     undoubtedly have some variance in their nutritional composition.

PLAINTIFF'S OPPOSITION TO                              Case No: 14-cv-02408-BEN-KSC
DEFENDANT'S MOTION TO DISMISS

milk." Compl. ¶ 15. Many of Defendant's RTD Products contain other processed protein ingredients that are also not "Class II" nutrients. Compl. ¶¶ 17-21.[8]

Instead, Defendant's RTD Products contain what are known as "Class I" proteins, which are "[a]dded nutrients in *fortified* or *fabricated* foods." 21 CFR 101.9(g)(3)(i) (emphasis added). Plaintiffs repeatedly allege that Defendant's Products are "fortified" with a *specific* amount of protein and Defendant has "developed and fabricated 'a unique mix of complete multi-source proteins.'" Compl. ¶¶ 15, 17-21, 36. Plaintiffs' representations must be taken as true. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) (On a motion to dismiss, courts presume the truth of all factual allegations and draw reasonable inferences in favor of the nonmoving party).

Plaintiffs' position is also consistent with the interpretation given to section 101.9(g)(3)(i) by the Ninth Circuit:

> This is the standard for a Class I vitamin, which we agree with the district court is the correct categorization for hydroxytyrosol. Although hydroxytyrosol may naturally be found in olives, it is not naturally found in Olivenol, but rather is added to Olivenol, which is manufactured pursuant to a patented method.

*CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 631 (9th Cir. 2007). Similarly, while varying amounts of protein undoubtedly exist in milk, the same cannot be said for a manufactured protein supplement that in fact has no naturally occurring protein in it at all. *Creagri, Inc. v. USANA Health Sciences*, 2005 WL 181886, at *4 (N.D. Cal. Jan. 26, 2005) ("There is no evidence, nor could there be, that hydroxytyrosol is "naturally" found in Olivenol, a manufactured dietary supplement."). *See* Kaplan Decl. Ex. C, p. 8 (Ingredients are "derived" from milk and soy). To the extent Defendant challenges Plaintiffs' characterization of its Muscle Milk products' nutritional content, such factual questions are not suited for determination on a motion to dismiss. *Thomas v. City Nat. Bank*, 2012 WL 4355554, at *3 (D. Nev. Sept. 21, 2012) (Questions of fact regarding the application of a safe harbor provision may not

---

[8] This, of course, makes sense when you consider that the products at issue are "nutritional supplements" that are designed and labeled to provide specified ingredients in specified amounts. Clearly, the FDA never condoned a 20% deviation for these types of products.

PLAINTIFF'S OPPOSITION TO                    Case No: 14-cv-02408-BEN-KSC
DEFENDANT'S MOTION TO DISMISS

1    be resolved solely on the pleadings.)

2         Under the more strict "Class I" standards, Defendant has no "safe harbor" and

3    must produce a product that contains protein at a level "*at least equal* to the value for

4    that nutrient declared on the label." 21 CFR 101.9(g)(4)(i); *CreAgri, Inc.*, 474 F.3d at

5    630 (Failure to comply with exacting standards of 21 CFR 101.9(g)(4)(i) renders a

6    product misbranded under 21 U.S.C. §§ 331(a), 343(a)). Again, this makes sense

7    because Defendant and Defendant alone controls the formulation and labeling of a

8    manufactured Class I product.  Examined in this light it is clear that Plaintiffs do not

9    seek to impose a standard that *exceeds* the FDCA.  Rather, Plaintiffs seek to hold

10   Defendant accountable for the representations it made on the labels of its products,

11   which is what the FDCA permits.

12        Defendant also suggests that Plaintiffs must allege that they tested the Muscle

13   Milk Products using the same "sampling and analytical methodology" imposed by the

14   FDA on *manufacturers* of protein supplements. Motion at § III(B)(1). However, this

15   issue relates more to the sufficiency of Plaintiffs' Complaint than the issue of whether

16   Plaintiffs' claims are preempted. *C.f. Burke v. Weight Watchers Int'l, Inc*., 983 F. Supp.

17   2d 478, 483 (D.N.J. 2013).

18        Moreover, under 21 CFR 101.9(g), it is *Defendant* who is required to confirm

19   the accuracy of its products' labels to the applicable guidelines. FDA, GUIDANCE FOR

20   INDUSTRY: NUTRITION LABELING MANUAL - A GUIDE FOR DEVELOPING AND USING

21   DATA BASES, Chap. 1 ("FDA's continuing policy since the 1970s assigns the

22   manufacturer the responsibility for assuring the validity of a product label's stated

23   nutrient values.") When determining whether Defendant accurately represented the

24   nutritional contents of its products, 21 CFR 101.9(g) states that the *FDA* will take a

25   composite sample consisting of 12 subsamples (consumer units), taken 1 from each of

26   12 randomly chosen shipping units. *Id.* However, Plaintiffs – consumers – are not, and

27   should not be, required to jump through the same specialized hoops to plead facts

28   sufficient to survive under Rule 12(b)(6). *Fujisawa Pharm. Co. v. Kapoor*, 814 F.

Supp. 720, 726 (N.D. Ill. 1993) (Rules 8 & 9(b) "require that the time, place and contents of fraud be plead, but the complainant need not plead evidence.")

Even if such allegations were required, Plaintiffs have specifically alleged that Defendant's Products contain significantly less protein than is represented on their labels, and this deficiency is caused by *Defendant's failure to adhere to a testing regime that would ensure the accuracy of their RTD Products' labels in a manner that is consistent with the standards set forth in federal regulations*. Compl. ¶ 23. To support this, Plaintiffs have pled specific facts demonstrating that the RTD Products' protein contents are materially deficient. *Id.,* ¶¶ 17-23; Kaplan Decl. Ex. E (The allegations in the Complaint state that testing revealed each of the RTD Products contain less protein than what is stated on the Products' labels). Accordingly, Plaintiffs' claims are not dependent on whether their testing is accurate, but instead whether Defendant's testing regime was capable of ensuring the accuracy of its labels. *Swierkiewicz v. Sorema N. A.*, 122 S. Ct. 992, 994-95 (2002) ("It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits.")

Plaintiffs' position is also supported by the arguments advanced in Defendant's Motion to Dismiss. If discovery reveals that Defendant believes that it is only required to produce protein supplements which contain at least 80 percent of the protein listed on the label, and it actually adheres to this standard, Defendant has violated the law irrespective of any good faith belief that it was complying the appropriate standard. *Creagri, Inc.*, 2005 WL 181886, at * 5 (Where a defendant misbrands a product under 21 CFR 101.9(g) with respect to its primary active ingredient, the defendant's violation is total in nature and not *de minimis*).[9]

---

[9] Note that Defendant stresses that its products "consistently contain 100% or more of the labeled amount of protein." Motion, at p. 3, fn. 6. Plaintiffs should be allowed discovery to confirm Defendant's factual assertions. *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.,* 911 F.2d 242, 245 (9th Cir. 1990) ("It is well-established that questions of fact cannot be resolved or determined on a motion to dismiss.")

1     Second, if Plaintiffs were required to test Defendant's RTD Products' labels

2    accuracy based on the same methodology set out in 21 CFR 101.9(g), it would

3    improperly shift the pleading standard from providing a "defendants with adequate

4    notice to allow them to defend the charge" to a burden more akin to summary

5    judgment. *See Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009); *Mintel*

6    *Learning Tech., Inc. v. Ambow Educ. Holding Ltd.,* 2012 WL 762126, at *3 (N.D. Cal.

7    Mar. 8, 2012) ("At the judgment stage, a court must be satisfied of every element of a

8    cause of action by a preponderance of the evidence; on a motion to dismiss, a court

9    need only find that a plaintiff's claim, taken as a whole, is 'plausible.'")

10     Such an exacting standard would be impossible for Plaintiffs to meet, absent

11    discovery, because Defendant would simply not allow Plaintiffs to enter its production

12    facility and "randomly" select 12 subsamples from different shipping cases which are

13    representative of their same production batch or a "lot." 21 CFR 101.9(g)(2). Plaintiffs

14    should not be placed in the position that they must prove their case prior to filing it.

15    *Twombly*, 550 U.S. at 569–70 (It would be improper to dismiss a complaint "for failing

16    to allege certain additional facts that [plaintiff] would need at the trial stage to support

17    his claims.") Especially when such a task would end up being a fool's errand. *See*

18    *Deutsch v. Flannery,* 823 F.2d 1361, 1366 (9th Cir. 1987) (Plaintiffs are not expected

19    to plead "facts which, because no discovery has yet occurred, are in exclusive

20    possession of the defendants.")

21     To the extent that other courts cited by Defendant have required a higher

22    pleading standard, those cases are contrary to binding Ninth Circuit precedent. *Id.*;

23    Motion, p. 9:13-25. Even the heightened pleading standard of Rule 9(b) only requires

24    that the circumstances constituting an alleged fraud be pled "specific enough to give

25    defendants notice of the particular misconduct ... so that they can defend against the

26    charge and not just deny that they have done anything wrong." *Bly–Magee v.*

27    *California*, 236 F.3d 1014, 1019 (9th Cir. 2001) *quoting Neubronner v. Milken*, 6 F.3d

28    666 (9th Cir. 1993). Consequently, Rule 9(b) only requires that defendants receive

"adequate notice" to show that the complaint is not "a pretext for the discovery of unknown wrongs" and has "some… basis in fact." *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 990 (9th Cir. 2008). The Complaint identifies Defendant's misrepresentations, where they were made, and why they are false. Compl. ¶¶ 15-29. *See Kearns*, 567 F.3d at 1124 (Rule 9(b) requires the "who, what, where, when, and why."). Plaintiffs also alleged sufficient facts, including independent lab testing, to establish that the Complaint was not a fishing expedition and "Rule 9(b) requires no more." Compl. ¶¶ 17-22; *Berson*, 527 F.3d at 990.[10]

Finally, Defendant's argument that Plaintiffs have not alleged that their testing was done in accordance with section 101.9(g) does not result any *actual conflict* between federal and state law that would result in preemption. *Pacific Gas and Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n*, 461 U.S. 190, 204 (1983) ("[W]here Congress has not entirely displaced State regulation in a specific area, State law will still be preempted to the extent that it *actually conflicts* with federal law.") (Emphasis added). *Plaintiffs have not alleged that the Labdoor or any other testing they rely on in the Complaint conclusively proves that Defendant violated the FDCA*. *Twombly*, *supra*, 550 U.S. at 569–70. Plaintiffs allege its Labdoor tests to demonstrate that Defendant's RTD Products were materially deficient and raise a highly plausible inference that testing conducted in accordance with section 101.9(g) will show the requisite deficiency required by federal law. Compl. ¶ 16. Defendant assumes Plaintiffs will not be able to present the required evidence to prove their case, but such presumptions alone do not preempt Plaintiffs' claims. Motion, p. 3 fn. 6. *Cipollone v.*

---

[10] Rule 9(b) does not require a plaintiff to "allege, in detail, all facts [that] support each and every [wrong]." *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001). Nor does it require that a plaintiff allege defendant "transgressed… by customer, amount, and precise method" or plead direct evidence. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Instead, Rule 9(b) is satisfied with "*allegations of circumstantial evidence* if the circumstantial evidence alleged explains how and why the statement was misleading when made." *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (emphasis added).

PLAINTIFF'S OPPOSITION TO                    Case No: 14-cv-02408-BEN-KSC
DEFENDANT'S MOTION TO DISMISS

*Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) ("Speculative or hypothetical conflict is not sufficient: only State law that 'actually conflicts' with federal law is preempted.")

Accordingly, Plaintiffs' protein content claims are not preempted and and should be allowed to proceed.[11]

### ii.   *Plaintiffs' L-Glutamine Claims are not Preempted*

Defendant states that Plaintiffs have to allege that their testing complied with some "testing methodology mandated by the FDA" to render their L-Glutamine claims actionable. Motion, at p. 8:21-22. However, Plaintiffs are aware of no testing methodology required by the FDA for determining L-Glutamine levels in food products, and Defendant identifies no such standards. Thus, there can be no issue of preemption based on federal testing guidelines that do not exist.

Instead, the clear language of the FDCA, as amended by the NLEA, mandates that Defendant provide an accurate list of all ingredients included in its products. *See* 21 U.S.C. § 343(i); 21 C.F.R. §§ 101.2(a), 101.4(a)(1), (b)(2). Indeed, the FDCA was enacted to ensure that food "is labeled in a manner that does not mislead consumers." *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011). Accordingly, a food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). Here, Defendant implicitly concedes that listing L-Glutamine as a *separate* ingredient within the Muscle Milk Powder Products' mandated nutritional labeling but failing to include any free-form L-Glutamine violates the FDCA. Thus, Defendant's Muscle Milk Powder Products are misbranded and therefore the sale of the same was unlawful. 21 U.S.C. §§ 343(a), 331 (a). Again, Plaintiffs are not subjecting Defendant to any requirements that exceed the

---

[11] Other cases cited by Defendant are factually distinguishable. In *Burke v. Weight Watchers Int'l, Inc.*, the products at issue were both subject to the safe harbor provision of 21 CFR 101.9(g)(4)(ii) and, under the federal regulations, could be tested using one of five different methods. 983 F. Supp. 2d 478, 483 (D.N.J. 2013). Accordingly, to establish that Defendant had violated the applicable standards, Plaintiffs have to allege that the product calorie content exceeded the label by over 20 percent and under all of the different testing methodology. Here, Defendant is not subject to the section 101.9(g)'s safe harbor and there is only one testing methodology used to calculate protein content – 21 CFR 101.9(c)(7).

requirements of the FDCA. [12]

The remainder of Defendant's preemption argument regarding Plaintiffs' L-Glutamine claims challenge the Complaint's factual sufficiency. Motion at p. 11 fn. 11. Yet, Plaintiffs have pled that it has tested Defendant's Muscle Milk Powder Products and no free-form L-Glutamine was found to exist in these Products. *C.f.* Compl. ¶¶ 17-21, 36-44. Such allegations are adequate under Rule 9(b) pleading standards, as noted above. *Astiana,* 2011 WL 2111796, at *6 (a pleading for false advertisement is sufficient if it identifies the products at issue, the contents and location of advertisement, defendant's involvement, and rationale of why the advertisement is false); *Fujisawa Pharm. Co.,* 814 F. Supp. at 726  (Rule 9(b) does not require the complainant to plead evidence.)

### iii.    *Plaintiffs' Lean Claims are not Preempted*

The FDCA specifically regulates nutrition levels and health-related claims about a food product made anywhere on a product label. 21 U.S.C. § 343(r)(1). The scope of the FDCA is comprehensive, as it "governs *all voluntary statements* about nutrient content or health information a manufacturer chooses to include on a food label or packaging." *Chacanac*a, 752 F. Supp. 2d at 1117 (emphasis in original). Additionally, such nutrient content levels and health-related claims may *only* be made if such claims meet the requirements as set out in the relevant regulations. 21 U.S.C. § 343(r)(2)(A).

The requirements for any food nutrition levels and health-related claims regarding the level of fat, fatty acid, and cholesterol are set out in 21 C.F.R. § 101.62. The regulations are clear: the terms "lean" and "extra lean" are regulated phrases that *may only be used* on a product's label if the fat content in the product comports with the requirements set out in 21 C.F.R. § 101.62(e). "*Any label or labeling* containing

---

[12] Defendant argues that it could elect either to classify its products as dietary supplements or foods under the FDCA, subjecting their products to different regulatory regimes. Motion at p. 12:14-24. Plaintiffs agree. However, Plaintiffs never alleged that the Muscle Milk Powder Products were *misbranded* because they were labeled consistent with the requirements established for food products. Plaintiffs only note that Defendant selected the labeling regime that would allow it to more easily "obfuscate" its misrepresentations. Compl. ¶ 41.

13

*any statement concerning fat*, fatty acids, or cholesterol that is not in conformity with this section shall be deemed to be misbranded under sections 201(n), 403(a), and 403(r) of the [FDCA]." 21 C.F.R. § 101.62(f)  (emphasis added).

Plaintiffs allege Defendant's Lean Products fail to satisfy the regulatory definitions set out in 21 C.F.R. § 101.62(e). Compl. ¶ 47. And Defendant does not state that Lean Products actually do comply with this standard. Again, Plaintiffs simply assert that Defendant should be held to the express language of the FDCA.

However, Defendant attempts to argue that its Lean Products are not subject to the FDCA's labeling requirements because the use of the term "lean" describes the "type of muscle the [Lean] Products help develop in consumers" and "how the referenced [fats] relate to the process by which the body burns fat." Motion at §III(B)(4). Hence, according to Defendant, its use of the term "lean" is not a *nutritional claim* and should not be held to the same exacting standards provided for in the FDCA. *Id.*, at pp. 14:28-15:2.

But Defendant ignores that the FDCA covers any labeling that "implicitly characterizes the level of a nutrient." 21 C.F.R. §§ 101.13(b); 101.62(f). Accordingly, even regulated terms that indirectly describe nutrient levels are still actionable. *See Chacanaca*, 752 F. Supp. 2d at 1117 (A food purveyor may only "include implicit content claims so long as they are 'consistent with a definition for a claim,' as provided in a federal regulation"). Indeed, Defendant is well aware that implied nutritional claims are actionable under the FDCA because the Northern District of California previously ruled that Defendant's claims that its products contained "25g PROTEIN for Healthy, Sustained Energy" were actionable under the FDCA because the "statement conveys that the bars are a healthy source of energy and, thus, may imply that they do not contain an unhealthy amount of fat and saturated fat." *Delacruz*, 2012 WL 2563857, at *8. Here, the connection between Defendant's use of the term "lean" and reasonable implication that the Lean Products contain less fat are far stronger.

Here, Defendant describes both its Lean Products and the oils and fats contained

1    therein as "Lean." Complaint, ¶¶ 45, 48. Each of the Lean Products is named a

2    variation of the phrase "lean muscle protein powder" (or in the case of Defendant's

3    Monster Milk, labeled as a "New Leaner Formula"). *Id.*, ¶ 45. When combined with

4    Defendant's representation that the "sunflower oil, medium chain triglycerides (MCTs)

5    and Canola Oil" are "lean lipids," such claims become highly suggestive of the level of

6    fat within Lean Products . 21 C.F.R. § 101.13(b); *Ackerman v. Coca-Cola Co.*, 09-cv-

7    0395, 2010 WL 2925955, at *11 (E.D.N.Y. July 21, 2010) (The court must not just

8    look at the nutrient content claim itself, but also the content of other related

9    representations on the label.)[13]

10    Defendant's argument also fails on its own flawed logic. Defendant states that

11    the term "lean" in the title of its Lean Products  (*e.g.,* "Muscle Milk: Lean Muscle

12    Protein Powder") precedes the word "muscle" and not "protein" so grammatically *lean*

13    only modifies *muscle*. Motion, pp. 13:9-14:7. However, adjectives that appear before a

14    string of nouns (*e.g.*, Muscle Protein Powder), generally modify the entire string of

15    nouns (or "noun phrase") unless a hyphen is used.[14] Nevertheless, application of the

16    FDCA, which was enacted to protect consumers, is unlikely to depend on the

17    application of such esoteric rules. *See United States v. Lane Labs-USA Inc*., 427 F.3d

18    219, 227 (3d Cir. 2005) ("Congress stated that prevention of deceit upon the

19    purchasing public and protection of consumers from unscrupulous competition were

20    among [the FDCA's] purposes.")

---

21

22    [13] *Craig v. Twinings N. Am., Inc.*, cited by Defendant, is distinguishable on its facts and inapposite. 2015 WL 505867 (W.D. Ark. Feb. 5, 2015). In *Craig*, the court found

23    that defendant's labeling of its tea as a "natural source of antioxidants" did not "characterize the level of antioxidants." *Id.*, at *8. However, the *Craig* court

24    recognized that had the defendant stated that its product was the "*finest*" source of antioxidants, it would have an implied nutrient claim. *Id.*, at *7. Consequently,

25    Defendant would not have run afoul of the FDCA had it stated that its product was a "natural source of lipids." But these are not the facts of the case. Instead, Defendant

26    chose to use a regulated term to describe its products and the ingredients therein. For similar reasons, Defendant's citation to 21 C.F.R. § 101.65(b)(3) is unavailing.

27    [14] For example, *heavy metal detector* and *heavy-metal detector* refer to different things: in the first, *heavy* modifies *metal detector,* describing a heavy device that

28    detects metals, while in the second example, *heavy* modifies *metal*, to describe a device that detects heavy metals. Thus, grammatically, *lean* modifies *Muscle Protein Powder* in the title of the Lean Muscle Milk Products, not just *muscle*.

PLAINTIFF'S OPPOSITION TO                                    Case No: 14-cv-02408-BEN-KSC
DEFENDANT'S MOTION TO DISMISS

Similarly, the argument that that "lean" when used to modify "lipids" is *only* descriptive of the manner in which the sunflower oil, medium chain triglycerides (MCTs) and canola oil is metabolized by the body is absurd. Motion, p. 14:8-24. This interpretation contradicts the Merriam-Webster Dictionary definition of "lean," which is "containing little or no fat." A reasonable consumer is likely assign the ordinary meaning of a word when interpreting it and because dictionary definitions are derived from the ordinary usage of words, such definitions are an indication of a reasonable consumer understanding these words. *In the Matter of Ecm Biofilms, Inc., A Corp.,* 2015 WL 575402, at *135 (FTC Jan. 28, 2015).

Regardless, at this phase of the litigation, Plaintiffs have established that their interpretation of Defendant's labels and the relevant regulations are plausible, which is sufficient to avoid preemption. *Gustavson*, 961 F. Supp. 2d 1100, 1122.

**C.    Resolving Plaintiff's Consumer Claims Does Not Require the FDA's Expertise**

Relying on cases from the Tenth and Seventh Circuits, Defendant argues that Plaintiffs' Complaint should be dismissed or stayed under the doctrine of primary jurisdiction. Motion, p. 15. "The primary jurisdiction doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body." *Bohac v. Gen. Mills, Inc.* ("*Bohac I*"), 2013 WL 5587924, at *3 (N.D. Cal. Oct. 10, 2013) *citing Farley Transp. Co. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1370 (9th Cir. 1985). "The doctrine does not, however, require that all claims within an agency's purview be decided by the agency." *Id. citing Davel Commc'ns, Inc. v. Quest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006).

To determine whether the doctrine applies, the Ninth Circuit applies the four-part test identified in *United States v. General Dynamics Corp.*, 828 F.2d 1359 (9th Cir. 1987).

Under this test, the doctrine applies where there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an

16

administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.

*Bohac I* at \*3 (*citing Davel* at 1086 and *Gen. Dynamics* at 1362). *See also Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 370 F.3d 775, 780 (9th Cir. 2002).

As the court in *Bohac* explained, none of these factors are usually implicated in cases involving confusing or misleading product labels. *Bohac I* at \*7-9. Indeed, "[d]etermining whether a term is false or misleading is within the province of the courts." *Id.* "Allegations of deceptive labeling do not require the expertise of the FDA to be resolved in the courts, as every day courts decide whether conduct is misleading." *Bohac I* at \*10 (*citing Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 898-99 (N.D. Cal. 2012)). In fact, resolution of these types of claims "primarily requires asking whether a 'reasonable consumer' would be misled by the challenged statements – what a 'reasonable consumer' thinks does not involve answering technical questions or scientific expertise." *Bohac I* at \*10 (citations omitted).  These questions "are squarely within the conventional experience of judges."  *Bohac I* at \*11 (citations and internal quote marks omitted) .

Defendant's reliance on the FDA's recent proposed rulemaking notice does not change the analysis. While the FDA is considering changing some of its current labeling regulations, the requirements related to "protein" are <u>not</u> being changed:  "we are not proposing any changes to the requirement for declaration of the quantitative amount of protein and the voluntary declaration of this amount as a percent DV on the Nutrition Facts label." 79 Fed. Reg. 11879, Part II.E.1. (Mar. 3, 2014).[15] Accordingly, "this case does not involve a situation in which the Court should abstain from deciding the questions before it." *Bohac I* at \*7-9.

Finally, this case differs substantially from the case relied on by Defendant:

---

[15]   A hyperlinked version of the report can be found at https://www.federalregister.gov/articles/2014/03/03/2014-04387/food-labeling-revision-of-the-nutrition-and-supplement-facts-labels#h-53

PLAINTIFF'S OPPOSITION TO                         Case No: 14-cv-02408-BEN-KSC
DEFENDANT'S MOTION TO DISMISS

*Astiana v. Hain Celestial Grp., Inc.*, 905 F.Supp.2d 1013, 1016-17 (N.D. Cal. 2012). In *Astiana*, the court expressed concern that the FDA had never defined what the term "natural" meant in relation to the sale of cosmetics:

> "The only FDA statement regarding the use of the term 'natural' comes in the form of an 'informal policy statement,' and is limited to the food labeling context. . . . In the absence of any FDA rules or regulations (or even informal policy statements) regarding the use of the term 'natural' on cosmetics labels, the court declines to make any independent determination of whether defendants' use of 'natural' was false or misleading. Doing so would 'risk undercutting the FDA's expert judgments and authority.'"

*Id.*, at 1016 *citing POM Wonderful LLC v. Coca-Cola Co.* ("*POM 1*"), 679 F.3d 1170 (9th Cir. 2012). Here, in contrast, there already is an abundance of FDA protein-related regulations, many of which are cited in the parties' briefs.

Additionally, *Astiana's* legal underpinning – ruling in *POM 1* – was unanimously reversed by the U.S. Supreme Court. *See POM Wonderful LLC v. Coca-Cola Co.* ("*POM 2*"), 134 S. Ct. 2228 (2014). *See also Langan v. Johnson & Johnson Consumer Cos.*, 2015 WL 1476400, *6 fn. 3 (D. Conn. Mar. 31, 2015) ("I decline to follow the [*Astiana*] decision" in light of the Supreme Court's reversal of [*POM 1*]). As the *Astiana* court explained, *POM 1* was largely "based on the idea of deference to the FDA... and Congress' decision to entrust matters of juice beverage labeling [solely] to the FDA." *Astiana* at 1016. In *POM 2*, however, the U.S. Supreme Court rejected these propositions and instead highlighted the complementary role that private lawsuits play in protecting consumers.[16]

---

[16] While the Supreme Court did not explicitly address complementary *federal-state* enforcement schemes like those at issue here, the holdings in *POM 2* are fully consistent with this framework. *See*, *e.g.*, *POM 2* at 2236 ("this is not a pre-emption case"); *id* at 2239 ("the FDA does not pre-approve food and beverage labels under its regulations and instead relies on enforcement actions, warning letters and other measures"); *id.* at 2240 ("The Government assumes that the FDCA and its regulations are at least in some circumstances a ceiling on the regulation of food and beverage labeling. But, as discussed above, Congress intended the Lanham Act and the FDCA to complement each other with respect to food and beverage labeling."); *id.* at 2241 ("The Government asks the Court to preclude private parties from availing themselves of a well-established federal remedy because an agency enacted regulations that touch on similar subject matter but do not purport to displace that remedy or even implement the statute that is its source").

Applying these principles, district courts throughout California have allowed a wide-variety of product labeling claims to proceed. *See*, *e.g.*, *In re 5 Hr. Energy Sales & Marketing Practices Litig.*, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014); *Chavez*, 268 F.R.D. at 368; *Hendricks*, 30 F.Supp.3d 917; *Chacanaca*, 752 F.Supp.2d at 1124. The same result should follow here.

### D. Defendant's "Lean" Labeling is Likely to Deceive the Average Consumer

In a rehash of its preemption argument, Defendant claims that no reasonable consumer, as a matter of law, would likely interpret its use of the term "lean" on the Lean Products' labels to mean that such Products "contain little or no fat" or "less fat than other products." Plaintiffs addressed these issues above, and thus will not reargue the same matters here. *See* § III(b)(iii). But, Plaintiffs did allege that Defendant's "lean" representations are misleading to a reasonable consumer because the Lean Products contain no less fat than other similar products and are forfeited with "sunflower oil, medium chain triglycerides, canola oil" - which are significant sources of and exclusively fats. *Id.*, at ¶¶ 48-51. Such interpretations of the word "lean" are consistent with its dictionary definition. And while Plaintiffs "ha[ve] not yet produced actual evidence of these consumer beliefs, at the motion to dismiss stage, the Court can accept allegations of such facts as sufficient." *JHP Pharm., LLC v. Hospira, Inc.,* 2014 WL 4988016, at *8 (C.D. Cal. Oct. 7, 2014).[17]

However, even if questions remain regarding how a reasonable consumer would interpret the Lean Products' labels is a question of fact and requires both sides to present evidence as to the nature and understanding of the average consumer. *See*

---

[17] To the extent that Defendant argues that its nutritional labels accurately disclose the levels of fats within the Lean Muscle Milk Products, such arguments are not a valid defense to FDCA mislabeling claims. *Williams*, 552 F.3d at 939-40 (misrepresentations on the front label of food product are not cured by disclosures on the back label); *see also In re Ferrero Litig.*, 794 F. Supp. 2d at 1115 *citing Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985) (The UCL and  FAL "have been interpreted broadly to embrace not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.")

PLAINTIFF'S OPPOSITION TO                                    Case No: 14-cv-02408-BEN-KSC
DEFENDANT'S MOTION TO DISMISS

*Williams v. Gerber Products Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) *citing Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal.App.4th 115, 134–35 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer"). Thus, such matters are rarely decided as a matter of law. *In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1115 (S.D. Cal. 2011).

However, Defendant strangely argues that Plaintiffs allege that "they relied on the regulatory definition of 'lean' in their understanding of the term and were misled accordingly." Thus, because the federal food regulations are unknown by the majority of the population, Defendant concludes that Plaintiffs' reliance on the regulatory definition of the word lean is logically unreasonable and legally unsound. Motion, at p. p. 17:7-9, fn. 13. This is a gross misrepresentation of Plaintiffs' Compliant. Plaintiffs actually allege that Defendant's lean representations are unlawful under the FDCA and misleading because Defendant's Lean Products did not actually contain less fat. Compl. at ¶¶ 46-51.

Defendant further argues that its labels are true; thus not deceptive or actionable under the FDCA. Motion, at pp. 17:16-18:12. However, it is quite impossible for Defendant to argue that naming the oils and fats added to its product "Lean Lipids" is not materially misleading. Lipids are the scientific name for a class of molecules that include fats, and is often used synonymously describe fat molecules. "Therefore, the term 'Lean Lipids' is oxymoronic, because a lipid (*i.e.*, a fat) by definition can never be 'lean.'" *Id.*, at ¶ 49. It is likely that Defendant selected the name "Lean Lipids" for its blend of sunflower oil, medium chain triglycerides, canola oil because the term "Lipids" is a scientific term which is more likely to impress consumers than "lean fats." Accordingly, Plaintiffs have sufficiently alleged their state law claims.

### E.   Defendant's Standing Challenge Is Both Premature and Wrong

Despite all being variations of the same basic products, Defendant asserts that "Plaintiffs lack Article III standing to pursue claims concerning the eight Products they

did not purchase or use." (Def.'s Brief at 18). However, in cases such as this, where the products, labels and representations at issue are substantially similar, the majority of courts have found sufficient standing to proceed as long as the named plaintiff purchased at least one of the relevant products. *Quinn v. Walgreen Co.,* 2013 WL 4007568 (S.D.N.Y. Aug 6, 2013) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar") (*quoting Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012).[18]

In order to determine what constitutes a "product line," courts have considered factors such as "whether the products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." *Parker v. J.M. Smucker Co.*, 2013 WL 4516156 (N.D. Cal. July 20, 2012); *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012).  Like the previous cases, Plaintiffs allege that "Cytosport markets its products in a systematically misleading manner, stating that its products have ingredients, characteristics and benefits that they do not." *See* Compl. ¶¶ 1, 16, 36-37, 45). Each of the Muscle Milk RTD Products make the same representations regarding protein levels on their front and back labels. *Id.* ¶ 17-21. Similarly, each of the Muscle Milk Powder Product labels contain the same "protein blend" that includes L-Glutamine. *Id.* ¶¶ 36-37. Each of the Lean Products are also labeled "lean" on their front label and contain representation regarding "Lean Lipids." *Id.* ¶ 45. Defendant has not identified any appreciable differences between its products, in this regard.

Alternatively, courts often defer resolution of these questions to the class

---

[18] *See also Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, *4-8 (N.D. Cal. Mar. 13, 2014) (analyzing the issue extensively); *Morgan v. Wallaby Yogurt Co., Inc.*, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014); *Aguilar v. Boulder Brands, Inc.*, 2013 WL 2481549, *3 (S.D. Cal. Jun. 10, 2013); *Allen v. Similasan Corp.*, 2013 WL 2120825, at *4 (S.D. Cal May 14, 2013); *Cardenas v. NBTY, Inc.*, 870 F. Sup. 2d 984, 992 (E.D. Cal. 2012).

certification stage of the case. *See*, *e.g.*, *Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155, 1161 (C.D. Cal 2012) (rejecting defendant's standing challenge because the "argument" is better taken under the lens of the typicality or adequacy prong of Rule 23); *Gitson v. Trader Joe's Co.*, 2014 WL 1048640 at *9 (N.D. Cal. Mar. 14, 2014). As long as the named Plaintiffs have standing to sue – which they do[19] – the requirements of Article III are satisfied. *See*, *e.g.*, *Payton v. Cnty of Kane*, 308 F.3d 673 (7th Cir. 2002) (involving the sale of bail bonds by 19 different counties); *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 421 (6th Cir. 1998) (involving breaches of duty by a common fiduciary to multiple ERISA plans). *See also Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("The Court agrees with Plaintiff that treatises and the vast majority of persuasive authority indicate that Defendants' legal argument is flawed. District courts in California routinely hold that the issue of whether a class representative 'may be allowed to present claims on behalf of others who have similar, but not identical, interest depends not on standing, but on an assessment of typicality and adequacy of representation.'").

In light of these authorities and the substantially similar ingredients, labels and misrepresentations at issue in this case, the Court should deny Defendant's standing challenge with leave to renew some of these arguments again at class certification, after the parties have developed the evidentiary record.

**F.  Plaintiffs have Sufficiently Alleged Claims for Breach of Warranty, including violations of the federal Magnuson Moss Warranty Act**

"Under California law, '[a]ny affirmation of fact or promise made by the seller

---

[19] The proposed class definition sensibly divides the products at issue into three basic categories: (1) Muscle Milk Ready to Drink ("RTD") Products; (2) Muscle Milk Powder Products; and (3) Lean Muscle Milk Products.  Complaint at ¶ 56.  Each Plaintiff purchased Products from each category and all of these products were produced by the same Defendant – Cytosport. Complaint at ¶¶ 11-13. This case, therefore, is quite different than the "complete lack of standing" cases cited by Defendant.  *See*, *e.g.*, *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) (action concerned 107 pharmaceutical products that were sold by over 50 separate companies); *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315 (5th Cir. 2002) (plaintiff purchased a recalled drug but did not experience any type of personal / physical injury from her use of the drug and thus had no standing to sue).

to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.'" *Johnson v. Triple Leaf Tea, Inc.*, 2014 WL 4744558, *5 (N.D. Cal. Sept. 23, 2014) (*quoting* CAL. COM. CODE § 2313(1)(a)). Accordingly, "[a] food label can create an express warranty." *Ham v. Hain Celestial Group, Inc.*, 2014 WL 4965959, *4 (N.D. Cal. Oct. 3, 2014) (collecting cases). *See also In re Ferrero Litig.*, 794 F.Supp.2d at 1118 (holding that representations on Nutella's packaging constituted an express warranty). [20]

To state a claim for breach of express warranty, Plaintiffs need only allege that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Bohac v. Gen. Mills, Inc.* ("*Bohac II*"), 2014 WL 1266848, *9 (N.D. Cal. Mar. 26, 2014) *quoting Rodarte v. Philip Morris, Inc.*, 2003 WL 23341208, *7 (C.D. Cal, June 23, 2003).

These elements have all been pled in this case. *E.g.*, (1) Compl. ¶ 5 (Defendant conspicuously represented that its products contain specific amounts of protein and protein derived from L-Glutamine); (2) Compl. ¶¶ 4-5 (the consumers targeted by Defendant are athletes conscious of the amount of protein and L-Glutamine supplements contain); (3) Compl. ¶ 17-18 (independent lab testing has confirmed that the relevant products do not contain the amount of protein or L-Glutamine that Defendant warranted); and (4) Compl. ¶ 11-13 (Plaintiffs paid over ten dollars per pound for supplements that were short in protein and L-Glutamine and defective).

Defendant does not dispute these promises were made, but it argues in a single

---

[20] "California Commercial Code section 2313, which defines express warranty, applies to 'transactions in goods.' *See also* CAL. CIV. CODE § 1791.2(a)(1) (defining an 'express warranty' as '[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance')." *Bohac II*, 2014 WL 1266848, *9.

sentence without analysis that "the 'warranty' for protein and L-glutamine amounts was not breached," and therefore, Plaintiffs' warranty claims fail as a matter of law. Motion, at p. 20:2-3. Obviously, deciding whether a breach has occurred requires examination of the evidence, which is inappropriate for a motion to dismiss. Moreover, courts routinely allow labeling claims like Plaintiffs' to proceed. For example, in *Dorsey v. Rockhard Labs, LLC*, 2014 WL 4678969, *9 (C.D. Cal. Sep. 19, 2014), the court found the label phrases "Sexual Performance Enhancer for Men" and "Fast & Effective" sufficient to state a claim because there was no evidence that the product had these attributes. Similarly, in *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) the court found the defendant's representations that 5-Hour ENERGY provided a boost of energy without the effects of caffeine were actionable because lab testing cited in the complaint showed that the product contained more caffeine than seven cups of coffee. Because even Defendant concedes that its products sometimes contain less protein and L-Glutamine than is stated on the package labels, there is no way to conclude that a breach has not occurred as a matter of law.

Plaintiffs' MMWA claim also is proper. "The Magnuson-Moss Act allows for suits to enforce the terms of express or implied warranties, but generally 'calls for the application of state written and implied warranty law.'" *In re 5-Hour Energy Mktg.*, *supra.*, *55 citing* 15 U.S.C. § 2301, *et seq.*; *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986). As the Ninth Circuit explained, "claims under the Magnuson-Moss Act stand or fall with [the plaintiff's] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *Long v. Graco Children's Prods.*, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013).

Here, Defendant argues that Plaintiffs' MMWA claim should be dismissed because "to bring a MMWA claim in a class action, there must be more than one hundred named plaintiffs." Motion, p. 20:4-5. The majority of courts that have

considered this issue have held that the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d) ("CAFA"), effectively supersedes the 100 plaintiff requirement of the MMWA.[21] Plaintiffs' pled CAFA jurisdiction in this case in ¶ 9 of their Complaint.

Finally, Defendant argues that the MMWA's main purpose is to ensure that consumer goods are "defect free." A misleading label, Defendant claims, is not the same thing as a defect. Here, however, the defect is that even the stated amounts of protein and other ingredients are inaccurate, as confirmed by the independent lab testing cited in the Complaint. *See* Compl. ¶ 17-18. In briefing this issue, Defendant attempts to downplay this defect by arguing that its product shortages are still within the FDA's approved testing guidelines. However, as the Supreme Court explained in *POM 2*, *supra*, the FDA's regulations are no protection for a manufacturer who deceives consumers while violating some other aspect of the law. *Id.*, 134 S. Ct. at 2241-42. As the Court in *Dorsey* also aptly remarked, "[w]hile a product that is 'synthetic' and 'artificial' may not be defective, a product that is ineffective is." *Id.*, 2014 WL 4678969, at *9 (*quoting Allen v. Hyland's, Inc.*, 2013 WL 1748408 (C.D. Cal. Apr. 11, 2013)).

Because Plaintiffs adequately pled all of the elements of a claim for breach of warranty under state and federal law, the Court should allow these claims to proceed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[21] *See, e.g., McGee v. Cont'l Tire N. Am., Inc.*, 2007 WL 2462624, *2 (D.N.J. Aug. 27, 2007) *citing Chavis v. Fidelity Warranty Services, Inc.*, 415 F.Supp.2d 620 (D.S.C. 2006) ("*Chavis* is the seminal case addressing this issue"); *Brothers v. Hewlett-Packard Co.*, 2007 WL 485979, *8 (N.D. Cal. Feb. 12, 2007); *Clark v. Wynn's Extended Care*, 2007 WL 922244, *4 (N.D. Ill. Mar. 23, 2007); *Estes v. Jaguar Land Rover N. Am., LLC*, 2011 U.S. Dist LEXIS 156590, *22-26 (C.D. Cal. Jul. 25, 2011); *In re Sony VAIO Computer Network Trackpad Litig.*, 2010 WL 4262191, *4 (S.D. Cal. Oct. 28, 2010).

PLAINTIFF'S OPPOSITION TO                    Case No: 14-cv-02408-BEN-KSC
DEFENDANT'S MOTION TO DISMISS

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety. If the Court finds the Complaint deficient in anyway, Plaintiffs respectfully request leave to amend.

DATED: May 1, 2015                                    Respectfully submitted,

FINKELSTEIN & KRINSK LLP

By:  /s/ Trenton R. Kashima
          Trenton R. Kashima

Jeffrey R. Krinsk
Mark L. Knutson
Trenton R. Kashima
William R. Restis, Esq.
550 West C St., Suite 1760
San Diego, CA 92101-3593
Telephone:  (619) 238-1333
Facsimile:   (619) 238-5425

BARBAT, MANSOUR & SUCIU PLLC
Nick Suciu III, Esq. (*Pro Hac Vice Pending*)
nicksuciu@bmslawyers.com
434 West Alexandrine #101
Detroit, MI 48201
Telephone: (313) 303-3472

SOMMERS SCHWARTZ P.C.
Lance C. Young, Esq. (*Pro Hac Vice Pending*)
lyoung@sommerspc.com
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300

BRIGGS COLEGROVE P.C.
Sarah W. Colegrove, Esq. (*Pro Hac Vice Pending*)
sarahc@briggscolegrove.com
660 Woodward Ave., Suite 1523
Detroit, MI 48226
Telephone: (313) 964-2077

Attorneys for Plaintiffs
and the Putative Classes