# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYLA CLAY, ERICA EHRLICHMAN, and LOGAN REICHERT, on behalf of themselves and those similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>CYTOSPORT, INC.,<br><br>      Defendant. | Case No. 15-cv-165 L (DHB)<br><br>**ORDER DENYING MOTION TO DISMISS [ECF NO. 24]** |

   Pending before the Court is Defendant's fully briefed motion to dismiss under FED. R. CIV. P. 12(b)(6). The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** the motion.

*//*
*//*
*//*
*//*
*//*
*//*

# I. BACKGROUND

According to the Complaint, Defendant Cytosport, Inc. ("Defendant") "formulates, manufactures, advertises and sells the popular 'Muscle Milk' and Cytosport branded powdered and ready-to-drink ("RTD") protein supplements throughout the United States." (Compl. ¶ 1, ECF No. 1.) Defendant markets these products "as reasonably-priced protein supplements for elite athletes and those with more moderate athletic and weight management goals," but does so in "a systematically misleading manner, stating that its products have ingredients, characteristics and benefits that they do not." (*Id.*) Namely, Defendant misrepresents (1) the amount of protein, (2) the presence of unbonded L-Glutamine, and (3) the nature of the fat contents of several subsets of its popular "Muscle Milk" and "Cytosport" branded protein supplements. (*Id.* ¶¶ 2-8.)

Plaintiffs Chayla Clay, Erica Ehrlichman, and Logan Reichert ("Plaintiffs") have purchased several of Defendant's Muscle Milk products. (*Id.* ¶¶ 11-13.) On January 23, 2015, Plaintiffs filed the instant class action complaint, seeking class wide relief for violations of (1) Cal. Bus. & Prof. Code §§ 17500, *et seq.*, (2) Cal. Civ. Code §§ 1750, *et seq.*, (3) Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (4) Fla. Stat. §§ 501.201, *et seq.*, and (5) M.C.L. §§ 445.901, *et seq.*, as well as (6) breach of express warranty and (7) breach of written warranty. On March 30, 2015, Defendant filed the instant motion to dismiss, arguing that Plaintiffs' claims are preempted, should be dismissed or stayed under the primary jurisdiction doctrine, and otherwise improper. The motion is fully briefed.

//
//
//
//
//
//

## II. LEGAL STANDARD

**Motion to Dismiss for Failure to State a Claim**

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a

cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superseded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

## III. DISCUSSION

### A. Preemption

Defendant argues that the "fundamental flaw with all of [Plaintiffs'] criticisms is that Plaintiffs seek to use state law to impose labeling requirements on CytoSport that are inconsistent with federal laws and regulations." (MTD 6, ECF No. 24-1.) According to Defendant, "Plaintiffs' claims regarding the labeling of protein and glutamine content and use of the term 'lean' are preempted because they are not consistent with the actual protocols and definitions that the FDA has established for calculating and listing nutrients in the Nutrition Facts panel, and making nutrient content claims." (*Id.*) Defendant advances four specific preemption arguments, which the Court addresses below.

#### 1. Plaintiffs' Claims Regarding Testing Methodology Are Sufficient

Defendant challenges Plaintiffs' protein and L-glutamine claims because "Plaintiffs did not employ the testing methodology mandated by FDA." (MTD 8.) Specifically, Plaintiffs' allegations rely exclusively on testing through LabDoor.com

and an "independent" source of testing which is insufficient. (*Id.*) Defendant claims that the testing allegations are deficient because (1) they do not identify either the sampling methodology used or the analytical methodology used to conduct the protein calculation tests and (2) fail to allege that any of the sampling or testing complies with 21 CFR 101.9(g) or 101.9(c)(7). (*Id.* 8-9.) For the L-glutamine claims specifically, Defendant claims that there are no allegations of evidence or testing in support of Plaintiffs' claims that Defendants products "do not contain any unbonded L-glutamine amino acids." (*Id.* 9.)

The Federal Food, Drug, and Cosmetic Act ("FDCA") gives power to the FDA to oversee the regulation of food. One of the functions of the FDCA is to regulate the branding of food. Under 21 U.S.C. § 343 (the "Food Labeling Rule"), a food is considered misbranded if it does not contain a label bearing certain nutritional information. § 343(q). The FDA has promulgated many regulations setting forth detailed requirements that must be met in order to be in compliance with the Food Labeling Rule. The FDCA also contains an express preemption provision, which provides that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title." 21 U.S.C. § 343-1(a)(4).

Specific requirements for compliance with the Food Labeling Rule are set out in 21 C.F.R. § 101.9(g). It states that "compliance [with the Food Labeling Rule] shall be determined" using a "sample for nutrient analysis [consisting] of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot." § 101.9(g)(2). This composite is then "analyzed by appropriate methods as given in the 'Official Methods of Analysis of the AOAC International,' 15th Ed. (1990) . . . or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures." *Id.* For foods with naturally occurring nutrients, the nutrient content of the composite

must equal at least 80 percent of the value for the nutrient as declared on the label. § 101.9(g)(4)(ii). For foods where a nutrient is not naturally occurring, but instead added to the food, "the nutrient content of the composite [must be] at least equal to the value for that nutrient declared on the label." § 101.9(g)(4)(i).

According to Defendant, Plaintiffs allegations are insufficient because they fail to allege that Defendant's protein claims were tested in accordance with the methodology mandated by the FDA under § 101.9(g). Specifically, there are no allegations that the sample forming the basis of the testing results consisted of a composite of twelve subsamples taken from each of twelve different randomly chosen shipping cases, or that the sample analyzed under the AOAC method or another appropriate substitute. While the Court agrees with Defendant that this is the standard that the FDA holds Defendant to, the Court finds that Plaintiffs allegations are sufficient at this point in the proceedings.

Plaintiffs allege that Defendant provides less protein than that advertised on its Muscle Milk RTD Products' labels. (Compl. ¶¶ 15-29.) These allegations are supported by factual allegations based on multiple sources. (*Id.* ¶¶17-21.) Plaintiffs are not required to recite the exact statutory provisions that they claim are violated. It is clear from the Complaint that Plaintiffs' position is that the protein labeling and content combinations Defendant uses violate the FDCA, and that this position is supported by Labdoor and "independent" testing results. In fact, Defendant does not dispute that these allegations give notice to Plaintiffs' position. Thus, the Court finds that the allegations are sufficient to state a plausible claim.

Defendant challenges the allegations because they do not identify the type of testing Labdoor and the "independent testing" employed. This argument is not appropriate for a motion to dismiss. Of course, in order to ultimately prevail on these claims, Plaintiffs will have to prove that Defendant did not comply with the FDCA provisions listed above. However, to state a claim, Plaintiffs only need to allege a plausible violation of the FDCA. Therefore, the motion to dismiss based on failure

to allege compliance with the procedures in § 101.9(g) is **DENIED**[1].

### 2. Plaintiffs' Protein Claims and "Safe Harbor" Tolerances

Defendant next argues that even if Plaintiffs sufficiently allege a violation of the FDCA with respect to testing procedures, their claims fail because "their own testing demonstrates that four of the five ready-to-drink Products are within FDA-allowed tolerances." (MTD 10.) Specifically, Defendant argues that because the protein in their products qualify as Class II nutrients, Defendant's four products that contain 80% or more of the protein value declared on the label comply with the FDCA. (*Id.*) Plaintiffs argue that the protein in Defendant's products is properly classified as a Class I nutrient, which means that all of Defendant's products fail to comply with the FDCA requirement that labels contain 100% of the protein value claimed for Class I nutrients. (Opp'n 6-8). The success of Defendant's argument turns on whether or not the protein in its products qualifies as a Class I or Class II nutrient.

A Class II nutrient is a "[n]aturally occurring (indigenous) nutrient[]." § 101.9(g)(3)(ii). A Class I nutrient is an "[a]dded nutrient[]in fortified or fabricated foods." § 101.9(g)(3)(i). Defendant's motion includes no argument as to why the protein in question here qualifies as a Class II nutrient. Instead, Defendant simply concludes that the protein here belongs in Class II, and launches into analysis of the Class II nutrient safe harbor. However, as Plaintiff points out, the Complaint provides factual allegations that the protein in question here is a Class I nutrient added for fortification. (Compl. ¶¶ 15, 17-21, 36.) Because Defendant fails to show that it is entitled to the safe harbor[2], the motion is **DENIED**.

---

[1] Defendant also challenges the sufficiently of Plaintiffs allegations regarding L-glutamine content. However, at this stage of the proceedings, the Court finds that Plaintiffs' allegations that they tested the products and found no unbonded L-glutamine in the products sufficient to put Defendant on notice of their claim.

[2] The Court notes that it is unclear, from both the parties' briefs and a reading of 101.9(g), how a nutrient's Class I or Class II membership is to be determined. The

### 3. Plaintiffs' L-Glutamine Claims and Conflicting FDA Labeling Requirements

Defendant also moves to dismiss Plaintiffs' claims regarding the alleged failure to properly label L-glutamine as an ingredient in Defendant's products. (MTD 11-12.) Specifically, Defendant suggests that it is entitled to include L-glutamine within the ingredients of its proprietary "Protein Blend" and need not list it as a separate ingredient. (*Id.*) Plaintiff claims that labeling L-glutamine as an ingredient in the "Protein Blend" misleads consumers because it implies that free-form or unbonded L-glutamine will be included in the products, which it is not. (Opp'n 12.)

The parties appear to argue past each other on this issue. Defendant claims that it is entitled to list L-glutamine as an ingredient in its "Protein Blend," citing 21 CFR 101.4(b)(2)(i). Plaintiffs do not contest this point. Instead, their Complaint alleges that by including L-glutamine as an ingredient in its "Protein Blend," Defendant is misleading consumers into thinking that the product includes unbonded or free-form L-glutamine. This is a problem, according to the Complaint, because unbonded L-glutamine provides more benefit to consumers than L-glutamine that is part of a protein blend. (Compl. ¶¶ 31-35.) So, according to the Complaint, bonded and unbonded L-glutamine are distinct ingredients, and if L-glutamine is listed as an ingredient in the Protein Blend, consumers will assume it is unbonded, even though there is allegedly no unbonded L-glutamine in the products. These allegations, taken as true, state a claim for violation of 21 U.S.C. § 343(a)(1). Therefore, the motion is **DENIED** on this ground[3].

//

//

---

Ninth Circuit has addressed this issue, at least in passing, on one previous occasion. *See CreAgri, Inc. v. USANA Health Sciences, Inc.*, 474 F.3d 626, 631 (9th Cir. 2007). At this point in the proceedings, the Court need not reach this issue.

[3] Of course, in order to prevail, Plaintiffs will need to substantiate their claims that such a labeling practice is misleading to consumers, among other things.

### 4. "Lean Muscle" and "Lean Lipids™" Claims

Defendant next argues that Plaintiffs' "lean" claims fail because Defendant does not use the word "lean" to make a nutrient content claim, but instead uses it as a "descriptor modifying the type of muscle the Products help develop in consumers, in combination with exercise: *lean* muscle." (MTD 12-13.) According to Defendant, "lean" is "not used to *characterize* the level or amount of fat, fatty acid or cholesterol in the Products." (*Id.* at 13.) Plaintiff argues that Defendant's use of "lean" is still governed by the FDCA labeling requirements for statements that "implicitly characterize the level of a nutrient." (Opp'n 14.)

Section 343(r) discusses "nutrition levels and health-related claims" about a food product made anywhere on a product label. This provision governs all *voluntary* statements about nutrient content or health information a manufacturer chooses to include on a food label or packaging. Specifically, the section covers claims that "expressly or by implication," "characterize [ ] the level of any nutrient," or "characterize[ ] the relationship of any nutrient ... to a disease or health related condition...." 21 U.S.C. § 342(r)(1). The FDA has promulgated regulations regarding three specific kinds of claims: express nutrient content claims; implied nutrient content claims; and health claims. *See* 21 C.F.R. §§ 101.13, 101.14. An express nutrient content claim is a direct statement about the level or range of a nutrient in a food, like "100 calories." A purveyor may include such a claim so long as it "does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required." 21 C.F.R. § 101.13(i)(3).

An implied nutrient content claim describes food or an ingredient in a manner that suggests that a nutrient is absent or present in a certain amount, such as "high in oat bran." An implied content claim might also make a comparative statement, like "contains as much fiber as an apple," or might suggest that the product is consistent with a nutritional or healthy diet. *See* 21 C.F.R. § 101.13(b)(2)(i)-(ii). Notably, the

### 4. "Lean Muscle" and "Lean Lipids™" Claims

Defendant next argues that Plaintiffs' "lean" claims fail because Defendant does not use the word "lean" to make a nutrient content claim, but instead uses it as a "descriptor modifying the type of muscle the Products help develop in consumers, in combination with exercise: *lean* muscle." (MTD 12-13.) According to Defendant, "lean" is "not used to *characterize* the level or amount of fat, fatty acid or cholesterol in the Products." (*Id.* at 13.) Plaintiff argues that Defendant's use of "lean" is still governed by the FDCA labeling requirements for statements that "implicitly characterize the level of a nutrient." (Opp'n 14.)

Section 343(r) discusses "nutrition levels and health-related claims" about a food product made anywhere on a product label. This provision governs all *voluntary* statements about nutrient content or health information a manufacturer chooses to include on a food label or packaging. Specifically, the section covers claims that "expressly or by implication," "characterize [ ] the level of any nutrient," or "characterize[ ] the relationship of any nutrient ... to a disease or health related condition...." 21 U.S.C. § 342(r)(1). The FDA has promulgated regulations regarding three specific kinds of claims: express nutrient content claims; implied nutrient content claims; and health claims. *See* 21 C.F.R. §§ 101.13, 101.14. An express nutrient content claim is a direct statement about the level or range of a nutrient in a food, like "100 calories." A purveyor may include such a claim so long as it "does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required." 21 C.F.R. § 101.13(i)(3).

An implied nutrient content claim describes food or an ingredient in a manner that suggests that a nutrient is absent or present in a certain amount, such as "high in oat bran." An implied content claim might also make a comparative statement, like "contains as much fiber as an apple," or might suggest that the product is consistent with a nutritional or healthy diet. *See* 21 C.F.R. § 101.13(b)(2)(i)-(ii). Notably, the

section prohibits the use of certain terms—such as "free," "low," or "good source"—that characterize the level or range of any nutrient in a food unless these terms conform to definitions established by the Secretary. 21 C.F.R. § 101.13(b)(1). Finally, a health claim is one that specifically "characterizes the relationship of any substance to a disease or health-related condition." 21 C.F.R. § 101.14. A food purveyor *may* include implicit content claims so long as they are "consistent with a definition for a claim," as provided in a federal regulation.

Here, Plaintiffs claim that Defendant's use of "lean" is not consistent with 21 C.F.R. 101.62(e), which establishes nutrient content requirements for "lean" and "extra lean" claims in terms of the acceptable "level of fat, fatty acid, and cholesterol in a food." Defendant does not argue that their products comply with this regulation, but that Plaintiffs fail to allege a violation of this regulation because using the term "lean" is not a nutrient content claim. The Court disagrees, as the statement "Lean Muscle Protein Powder" could plausibly convey that the Products contain a low amount of fat. The Court's conclusion is only bolstered by Defendant's use of the unregistered trademark "Lean Lipids." Lipids are fatty acids, and the use of the word "lean" in conjunction with the term "lipids" plausibly conveys that the Products contain a low amount of fatty acid. Defendant's reliance on *Craig v. Twinings North America, Inc.*, 14-cv-5214, 2015 WL 505867 (W.D. Ark. Feb. 5, 2015), is unavailing. That case did not involve a nutrient level claim, as the litigation centered on the claim that the Defendant's tea was a "source" of "antioxidants." Unlike the term "source," the term "lean" describes the Products in a manner that suggests they contain a certain amount, namely low levels, of fat and fatty acids. (*Id.* at * 7.) Therefore, the motion is **DENIED**.

B.  **Primary Jurisdiction Doctrine**

Defendant argues that this Court should dismiss this case under the primary jurisdiction doctrine. However, application of this doctrine is inappropriate here.

In applying the doctrine of primary jurisdiction, courts "traditionally look for

four factors identified in *General Dynamics*. Under this test, the doctrine applies where there is '(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.'" *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006) (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).

Although Congress has likely placed the issue of product labeling and warning requirements within the broadly defined jurisdiction of the FDA to generally oversee, the issues facing the Court do not appear to "require [FDA] expertise or uniformity in administration." *Id.* "Without question, the FDA has extensively regulated food labeling... Nonetheless, plaintiffs advance a relatively straightforward claim: they assert that defendant has violated [state] regulations and marketed a product that could mislead a reasonable consumer. As courts faced with state-law challenges in the food labeling arena have reasoned, this is a question 'courts are well-equipped to handle.'" *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010) (quoting *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009)). Defendant "has given no reason why determining whether a label is misleading is outside the ability of the court." *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-CV-00296-WHO, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013). Therefore, the motion is **DENIED** on this ground.

C.     **"Lean" Allegations and the Reasonable Consumer**

As explained above, the Court finds the allegations surrounding the terms "lean" and "Lean Lipids" plausible. Therefore, Defendant's motion to dismiss based on Plaintiffs' purported failure to state a claim regarding "lean" claims is **DENIED**.

//

//

//

### D. Lack of Standing for Products Plaintiffs Did Not Purchase

Defendant next argues that Plaintiffs lack standing to sue with regard to products that they did not purchase. The Court disagrees at this stage of the proceedings.

There are court decisions going both ways on this issue, with some finding that a plaintiff has no standing to pursue claims based on products he or she did not purchase. *See, e.g., Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July, 11 2012). However, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Further, some courts have held that "the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation" at the class certification stage. *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011). The Court will revisit this issue at the class certification stage in determining whether a class can be certified and, if so, the "contours of that class." *See Dorsey v. Rockhard Laboratories, LLC*, No. CV 13-07557 DDP RZX, 2014 WL 4678969, at * 4 (C.D. Cal. Sept. 19, 2014).

In light of the alleged similarity of ingredients, labels, and misrepresentations at issue in this case, (Compl. ¶¶ 1, 16, 17-21, 36-37, 45), the Court refuses to dismiss the class claims for lack of standing. Therefore, the motion is **DENIED** on this ground.

### E. Warranty Claims

Defendant moves to dismiss Plaintiffs' express warranty claim because the "warranty" for "the protein and L-glutamine amounts was not breached." (MTD 19-20) However, as noted above, Plaintiffs have sufficiently plead that the products do

not contain the amount of protein or L-Glutamine that Defendant warranted.

Finally, Defendant moves to dismiss Plaintiffs' MMWA claims because (1) there must be 100 named plaintiffs in an MMWA class action, (2) the MMWA does not apply because the label statements are allowed or required by federal law and do not consist of promises that the product is defect free or guarantees a level of performance over time, and (3) because Plaintiffs' express warranty claim fails. (MTD 20.)

First, CAFA jurisdiction, which is invoked here, includes class actions filed pursuant to the MMWA that fail to meet the one hundred plaintiff requirement. *In re Sony Vaio Computer Notebook Trackpad Litigation*, 9cv2109 BEN (RBB), 2010 WL 4262191 * 4 (Oct. 28, 2010)(collecting cases). Second, as explained above, the Court finds that Plaintiffs have adequately alleged that the stated amounts of protein and L-glutamine are inaccurate. Third, the Court has found that Plaintiffs' express warranty is still viable. Therefore, the motion on these grounds is **DENIED**.

## IV. CONCLUSION & ORDER

The Court **DENIES** the motion.

**IT IS SO ORDERED.**

DATED: August 19, 2015

M. James Lorenz
United States District Judge