1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11  CHAYLA CLAY, et al.,                    Case No.:  15-cv-00165-L (DHB)

12                              Plaintiffs,  **ORDER:**

13  v.
                                             **(1) RE: JOINT MOTIONS FOR**
14  CYTOSPORT, INC.,                         **DETERMINATION OF DISCOVERY**
                                             **DISPUTES (ECF NOS. 95, 96);**
15                              Defendant.

16                                           **(2) GRANTING MOTION TO FILE**
                                             **DOCUMENTS UNDER SEAL (ECF**
17                                           **NO. 97); AND**

18

19                                           **(3) GRANTING JOINT MOTION ON**
                                             **PARTIES' STIPULATION**
20                                           **REGARDING CERTAIN**
                                             **DISCOVERY AND CLASS**
21                                           **CERTIFICATION (ECF NO. 104)**

22

23

24      On July 14, 2016, Plaintiffs Chayla Clay, Erica Ehrlichman, and Logan Reichert

25  (collectively, "Plaintiffs") and Defendant Cytosport, Inc. ("Defendant") filed a Joint

26  Motion for Determination of Discovery Dispute regarding Plaintiffs' Amended Requests

27  for Production and Amended Special Interrogatories.  (ECF No. 95.)  Plaintiffs seek an

28  order of the Court compelling complete responses to Requests Nos. 14 and 15 and

                                            1

Interrogatories Nos. 25 and 26.  (*Id.* at p. 2.)  Plaintiffs further seek an order of the Court compelling Defendant to produce documents and information responsive to Plaintiffs' discovery requests relating to all package sizes of the Class Products enumerated in paragraph 52 of the Complaint.  (*Id.*)

On July 19, 2016, the parties filed another Joint Motion for Determination of Discovery Dispute.  (ECF No. 96.)  Plaintiffs seek an order of the Court compelling further responses to Requests Nos. 29 and 30 in Plaintiffs' Amended Notice of Deposition Pursuant to Federal Rules of Civil Procedure 30(b)(6), 30(b)(2), and 34, and Requests Nos. 38 and 40-45 in their Fourth Set of Requests to Produce Documents.  (*Id.* at p. 1.)  Plaintiffs also filed a related motion to seal documents.  (ECF No. 97.)

The Court held a telephonic Discovery Conference to address these motions on September 13, 2016.  (ECF No. 118.)

Having considered the parties' written submissions and representations during the Discovery Conference, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motions to compel (ECF Nos. 95, 96), **GRANTS** Plaintiffs' motion to file documents under seal (ECF No. 97), and **GRANTS** the parties' Joint Motion on Parties' Stipulation Regarding Certain Discovery and Class Certification (ECF No. 104).

# I.    BACKGROUND

In this action, Plaintiffs, individually and on behalf of all others similarly situated, allege that Defendant mislabels its ready-to-drink ("RTD") protein supplements in violation of the California Unfair Competition Law, California False Advertising Law, the California Consumer Legal Remedies Act, the Michigan Consumer Protection Act, and the Florida Deceptive and Unfair Trade Practices Act, and in breach of an express and written warranty.  (ECF No. 1.)

Specifically, Plaintiffs allege: (1) Defendant's muscle milk RTD products do not contain the quantity of protein that is advertised on each of the product's labels; (2) Defendant advertises and labels that the Muscle Milk powder products' proprietary "Precision Protein Blend" contains L-Glutamine, an amino acid that aids in muscle

2

recovery and is essentially for the proper operation of the immune system, although they do not contain free form L-Glutamine in any appreciable amount; and (3) Defendant falsely advertises that its lean muscle milk products are lean and contain lean lipids, when, in fact, they contain products with sunflower and canola oils, which are considerable sources of fat, and contain no less fat than the majority of its competitors. (*Id.*)

On March 30, 2015, Defendant moved to dismiss Plaintiffs' Class Action Complaint. (ECF No. 24.) On August 19, 2015, the Honorable M. James Lorenz denied Defendant's Motion to Dismiss. (ECF No. 53.) On September 2, 2015, Defendant filed an Answer. (ECF No. 56.)

On October 26, 2015, the parties appeared for an Early Neutral Evaluation Conference before this Court. (*See* ECF No. 65.) The case did not settle. (*Id.*) On December 4, 2015, the Court held a telephonic Case Management Conference ("CMC") and issued a Scheduling Order. (ECF Nos. 74, 75.) The Scheduling Order provided that "[a]ll discovery that relates to class certification must be completed by all parties on or before **May 20, 2016**" and any class certification motion shall be filed on or before June 21, 2016. (*Id.* at ¶ 2.) The Court deferred the remainder of the pretrial schedule until after Judge Lorenz has ruled on any motion for class certification. (*Id.* at ¶ 5.)

On April 21, 2016, the parties filed a Joint Motion to continue the deadlines in the Scheduling Order. (ECF No. 82.) The motion was granted in part and denied in part. (ECF No. 83.) The Court extended the deadline for all discovery that relates to class certification to August 1, 2016, and the deadline to file any class certification motion to September 9, 2016. (*Id.*)[1] On September 9, 2016, Plaintiffs filed a Motion for Class Certification. (ECF No. 109.) On September 22, 2016, Judge Lorenz denied without prejudice the pending Motion for Class Certification, giving Plaintiffs leave to re-file their motion after the

---

[1]    The Court notes there is a Motion for Judgment on the Pleadings filed by Plaintiffs pending before Judge Lorenz. (ECF No. 68.)

resolution of a newly filed pending discovery dispute regarding expert depositions.  (ECF No. 124.)

## II.   LEGAL STANDARD

### A.   Discovery

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

However broadly defined, relevancy is not without "ultimate and necessary boundaries."  *Hickman*, 329 U.S. at 507.  Accordingly, district courts have broad discretion to determine relevancy for discovery purposes.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *Vonole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("District courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court.'") (citing *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)). District courts also have broad discretion to limit discovery.  For example, a court may limit discovery if it determines that "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(iii).

### B.   Class Actions

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.

338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  "In order to justify a departure from that rule, 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'"  *Id.* at 348-49 (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his [or her] compliance' with Rule 23*." Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart*, 564 U.S. at 350); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

In analyzing whether a plaintiff has met his or her burden to satisfy the Rule 23 requirements, it "may be necessary for the court to probe behind the pleadings." *Wal-Mart*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  Class certification "is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites'" of Rule 23(a) and (b) have been satisfied. *Id.* (quoting *Falcon*, 457 U.S. at 161); *see also Comcast Corp.*, 133 S. Ct. at 1432 (applying same analytical principles to Rule 23(a) and (b)); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), amended by, 273 F.3d 1266 (9th Cir. 2001).  "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Comcast Corp.*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2551).  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  Accordingly, any merits consideration must be limited to those issues necessary to deciding class certification. *See id.* at 1195 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

In determining relevancy in a class action, it is appropriate for the Court to consider the class definition.  "The court is bound by the class definition provided in the complaint." *Berlowitz v. Nob Hill Masonic Mgmt, Inc.*, 1996 U.S. Dist. LEXIS 22599, *6 (N.D. Cal. Dec. 6, 1996).  Generally, a plaintiff may not expand the class definition without amending

the complaint.  *Id.*  However, it is permissible to narrow the definition.  *Sandoval v. Cty. Of Sonoma*, 2015 WL 1926269, *2 (N.D. Cal. Apr. 27, 2015) ("While a party moving for class certification cannot expand the class definition, the party can narrow the definition used in the complaint.").

## III.   DISCUSSION

### A.   Discovery Dispute (ECF No. 95)

Defendant served Plaintiffs with its responses to Plaintiffs' Amended Requests for Production and Plaintiffs' Amended Special Interrogatories (Set One) on May 27, 2016. (*See* ECF No. 95-1 ("Marano Decl.") at ¶¶ 4, 5, Exhs. A, B; ECF No. 95-2 ("Kain Decl.") at ¶ 5, Exh. D.)  Counsel for the parties thereafter met and conferred telephonically and by letter.  (*See* Marano Decl. at ¶¶ 6-14, Exhs. C, D; Kain Decl. at ¶¶ 2-4, 8.)  The parties last conferred on July 7, 2016.  (*See* Marano Decl. at ¶¶ 13, 14, Exh. D; Kain Decl. at ¶¶ 4, 8.) Counsel for Plaintiffs sent their draft portion of this Joint Motion to defense counsel before the start of business on July 8, 2016.  (Marano Decl. at ¶ 15; ECF No. 95 at p. 2.)  Both parties agree the Joint Motion was due July 14, 2016.  (ECF No. 95 at pp. 3, 17.)

As an initial matter, Defendant argues the Joint Motion should be denied as untimely because it should have received Plaintiffs' complete draft by July 7, 2016, and it did not receive Plaintiffs' draft until the early morning of July 8, 2016.  (ECF No. 95 at pp. 16-17.) Defendant further argues that it did not receive a "complete" draft until July 13, 2016, when Plaintiffs served their supporting declaration and exhibits.  (*Id*. at p. 17.)  Defendant argues the delay in providing the supporting materials caused it to be materially prejudiced because the draft alone did not describe, and it could not identify, the evidence on which Plaintiffs intended to rely.  (*Id*.)

Although Plaintiffs were required to serve a "complete draft," as defined by the Court's Civil Chambers Rules, in a timely fashion, and Plaintiffs failed to do so, the Court finds that Defendant was not materially prejudiced, and it is in the interests of justice for the Court to address the merits of the dispute.  Accordingly, the Court addresses the parties' arguments on the merits below.

1

### 1.    Requests for Production Nos. 14 and 15

Request for Production No. 14 seeks all documents and data that refer or relate to protein and L-Glutamine ingredients added, removed, or substituted in the class products. (Marino Decl. at Exh. A, p. 11.)  Request for Production No. 15 seeks all documents and data that refer or relate to any modifications to the recipe, formula, or method of manufacture used to create the class products that could affect protein or L-Glutamine content.  (*Id.* at pp. 11-12.)

Defendant objected to these requests as overbroad and unduly burdensome.  (Marino Decl. at Exh. A, p. 11-12.)  Defendant further objected on the basis that the addition, subtraction, or substitution of ingredients, as well as the modifications to the recipe, formula, or method of manufacture, are "not relevant to the protein content of RTD Class Products or the L-Glutamine content of the Powder Class Products."  (*Id.*)  Subject to these objections, Defendant referred Plaintiffs to production from its "Genesis database."[2]  (*Id.*)  Defendant further objected on the basis that it had not searched for, and is therefore not producing, ESI and email pursuant to Federal Rule of Civil Procedure 34(b)(2)(C), and was withholding documents on the basis of its objections because the requests seek merits discovery.  (*Id.*)  Defendant contends that "the protein claims can be more efficiently resolved through the proposed protein testing protocol."  (*Id.*)

Plaintiffs argue in the Joint Motion that the documents from the Genesis database, which are recipes that list the ingredients used to create the class products, are incomplete because the recipes do not cover the entire class period or all variations of the class products.  (ECF No. 95 at p. 4.)  They further argue that the documents sought in the requests are relevant to class certification because they seek to establish the uniformity of

---

[2]    According to Defendant, the Genesis database "is a database maintained by [Defendant] that records the ingredients in various formulations of its products and their amounts."  (Kain Decl. at ¶ 12.)

the class products over time, and therefore implicate the Rule 23 requirements of commonality, typicality, and predominance.  (*Id*. at p. 7.)

Defendant contends that it produced a "full and complete" set of documents from its Genesis database.  (*Id*. at p. 18.)  Defendant further states that it created for purposes of this litigation, and subsequently produced, two "change log" spreadsheets summarizing the changes shown in the Genesis records relating to protein and fat content in the class products during the class period.  (*Id*.)  Thus, Defendant argues it has fully and efficiently addressed Plaintiffs' requests.  (*Id*.)

For the reasons set forth in the Court's August 16, 2016 Order, the Court overrules any objection based on Defendant's contention that the Court has precluded ESI discovery at this stage of discovery.  (*See* ECF No. 102 at pp. 5-6.)  The Court further overrules any objection contending that Requests Nos. 14 and 15 relate only to the merits.  For the reasons argued by Plaintiffs, the Court finds the requests to be relevant to class certification.[3]

As to proportionality, Plaintiffs do not appear to be seeking additional *types* of documents beyond what Defendant has provided.  Rather, they are arguing the production of documents is incomplete because the documents do not cover all of the class products during the relevant period.  (*See* Marino Decl. at ¶ 7.)  Plaintiffs assert that "Defendant's productions have not covered all Class Products across the entire Class Period, many going

---

[3]     On September 7, 2016, the parties filed a Joint Motion on Parties' Stipulation Regarding Certain Discovery and Class Certification.  (ECF No. 104.)  The Court hereby **GRANTS** the Joint Motion.  In the Joint Motion, the parties stipulate to the following: "CytoSport will not oppose class certification on the basis that the amount of fat, protein, or L-glutamine in any Class Product materially varied between different batches of that product during the Class Period because of the manufacturing processes of CytoSport or its third-party co-packers."  (ECF No. 104 at p. 1.)  In a footnote, the parties assert this stipulation only "addresses the products that the parties agree fall within the definition of Class Products."  (*Id*. at p. 1, n. 1.)  Therefore, although this stipulation would appear to resolve the issue of relevance at this stage of discovery, as the parties admit the stipulation does not cover all "class products," the Court finds it appropriate to make findings as to the relevance to class certification.

back to only January 2011 instead of January 2009 and/or omitting some Class Products, such as the 8.25- and 11-ounce version of the Genuine Muscle Milk: Protein Nutrition Shakes." (*Id.*)   In this regard, the parties dispute which products are considered class products. (*Id.* at ¶ 9.)   Defendant has stated it will not produce documents relating to package sizes of the RTD Products that were not specifically mentioned in paragraphs 17-21 of the Complaint. (*Id.*)   Plaintiffs argue the products referred to in paragraph 52 of the Complaint are the class products. (*Id.* at ¶ 10.)

Paragraph 52 of the Complaint alleges the following:

Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 for the following Class of persons:

**Nationwide Class:** All persons in the United States who, within four (4) years of the filing of this Complaint, purchased:

1.   the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

2.   the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.   the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

**California Sub-Class**: All persons residing in California who, within four (4) years of the filing of this Complaint, purchased:

1.   the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

9

2.    the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.    the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

**Florida Sub-Class:** All persons residing in Florida who, within four (4) years of the filing of this Complaint, purchased:

1.    the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

2.    the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.    the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

**Michigan Sub-Class:** All individuals residing in Michigan who, within six (6) years of the filing of this Complaint, purchased:

1.    the Muscle Milk RTD Products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake;

2.     the Muscle Milk Powder Products: Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein

Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer: High Protein Gainer Powder Drink Mix; and Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and

3.   the Lean Muscle Milk Products: Defendant's Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.

(ECF No. 1 at ¶ 52.)  Defendant filed a Motion to Dismiss in March 2015 in which it argued, in part, that the class products should be limited to those listed in paragraphs 17-21 of the Complaint.  (ECF No. 24-1.)  In denying Defendant's Motion to Dismiss in August 2015, Judge Lorenz expressly declined to limit the products at issue to those listed in paragraphs 17-21.  (*See e.g.*, ECF No. 53 at p. 7, n. 1.)  Accordingly, the Court finds all products listed in the class definition, found at paragraph 52 in the Complaint, to be relevant at this stage.  As listed above, the products listed in paragraph 52 are not designated by size or flavor, but rather by type.  For purposes of discovery, the Court therefore finds all sizes and flavors of the designated types to be relevant to Plaintiffs' claims.  *See* Fed. R. Civ. P. 26(b)(1).  Thus, the Court overrules any objection by Defendant based on the assertion that the only products presently at issue in this case are those listed in paragraphs 17-21 of the Complaint.

Plaintiffs further argue that Defendant has not produced responsive documents for all relevant time periods.  During the telephonic Discovery Conference, Plaintiffs clarified this dispute.  Plaintiffs argue that the statute of limitations is two years longer for the Michigan Sub-Class and, therefore, they seek production of documents dating back an additional two years.  To date, Defendant has only produced documents related to the products purchased by the named Plaintiff in Michigan.  (*See* ECF No. 1 at ¶ 13.)  The Court finds that the requested documents for all products, including all variations in size

and flavor, listed in paragraph 52 under the sub-heading "Michigan Sub-Class," dating back six years from the filing of the Complaint, to be relevant at this stage.  In its Motion to Dismiss, Defendant argued that Plaintiffs do not have standing to bring claims related to the products they did not purchase.  (ECF No. 24-1 at pp. 18-19.)  In the order on the Motion to Dismiss, in addressing the argument, Judge Lorenz found that "[i]n light of the alleged similarity of ingredients, labels, and misrepresentations at issue in this case, . . . the Court refuses to dismiss the class claims for lack of standing."  (ECF No. 53 at p. 12, lines 21-23.)  The Court further stated that it will "revisit this issue at the class certification stage in determining whether a class can be certified."  (*Id.* at p. 12, lines 17-19.)  Accordingly, for purposes of class discovery, the Court finds production of these years to be relevant.

Thus, to the extent Defendant has not produced the recipes for each of the products listed in paragraph 52 of the Complaint, including all variations in size and flavor,[4] for the entire class period, the Court grants Plaintiffs' request to compel production of these documents.[5]

Plaintiffs further argue that Defendant produced an incomplete list of changes made to the class products over the class period.  Defendant argues that it created the existing lists for purposes of this litigation and contends that it need not create any additional lists because the information is readily available to Plaintiffs.  The Court agrees that Defendant need not create additional lists or spreadsheets reflecting any changes, so long as all underlying documentation has been produced which enables Plaintiffs to determine *if* and *when* any protein and L-Glutamine ingredients were added, removed, or substituted in the class products, and *if* and *when* any modifications were made to the recipe, formula, or method of manufacture used to create the class products that could affect the protein or L-

---

[4]    If the parties wish to enter a stipulation regarding the production and/or relevance of flavor variations, the parties may still do so after the issuance of this Order.

[5]    As Defendant represents these recipes are maintained in a presently existing electronic database, the Court does not find this production to be overly burdensome.

Glutamine content.  *See Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012) ("A party . . . is not required to create a document where none exists."); *see also Price v. Cunningham*, No. 08-cv-00425-AWI-BAM PC, 2012 WL 5308337, at *4 (E.D. Cal. Oct. 29, 2012) (citing *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2000)); *Columbia Pictures Indus. v. Bunnell*, No. CV 06-1093FMCJCX, 2007 WL 2080419, at *6 (C.D. Cal. May 29, 2007).  If Defendant has not produced documents enabling Plaintiffs to make this determination for all class products, including any size and flavor variation, during the entire class period, it must do so.

### 2.   Interrogatories Nos. 25 and 26

In Interrogatory No. 25, Plaintiffs ask Defendant to identify the Universal Product Codes (UPCs) for the class products distributed during the relevant time period.  (Marino Decl. at Exh. B, p. 5.)  In Interrogatory No. 26, Plaintiffs ask Defendant to identify all labels used on each of the class products distributed during the relevant time period, including: (1) the name and size/volume of the product on which the label appeared; (2) the dates during which the label was used; and (3) the Bates number of the label, if the label has already been produced, or the name of the custodian of the document and its location.  (*Id.*).

Defendant responded to Interrogatory No. 25 by referring Plaintiffs to the Powder Class Product labels, produced as CYTOSPORT_CLAY_028659-028891, which show the UPCs for those products.  (*Id.*)   It further referred Plaintiffs to a list of the UPCs for the RTD Class Products, produced as CYTOSPORT_CLAY_035353.  (*Id.*)  Defendant also agreed to produce a summary chart of labels that will, among other things, identify the UPC for each label.  (*Id.*).

In response to Interrogatory No. 26, Defendant referred Plaintiffs to the labels produced at CYTOSPORT_CLAY_028659-028891 and Defendant's response to Document Request No. 1, which are all of the versions of the labels for the class products during the relevant time period.  (*Id.* at pp. 5-6.)  Defendant added the following:

[Defendant] further responds that determining the exact dates that any particular label was in use is not feasible because the dates that that label were used on a product may have been staggered, depending on where the product was manufactured. [Defendant] will produce a summary chart of labels that will include the information requested about name and size/volume of the product on which the label appeared. [Defendant] does not track the "use" dates but will make a good-faith effort to identify either the known or the estimated effective date for each label. [Defendant] will provide the summary within 14 days of this Answer.

(*Id*.)

Plaintiffs argue that Defendant improperly referred to documents in its responses, without a written explanation stating why the documents listed are relevant to the interrogatory posed. (ECF No. 95 at pp. 8-9.) Plaintiffs further contend the summaries Defendant did produce are not complete because they do not include all relevant iterations of the class products, and do not fully identify the time period during which the labels were distributed and do not cover the entire class period. (*Id*. at pp. 4-5, 9.) Defendant responds that Plaintiffs have had the UPCs since January 2016, when Defendant produced the labels for the class products, which contain the UPCs. (*Id*. at p. 19; Kain Decl. at ¶ 10.) Defendant also states that it created a list of UPCs specifically in response to Interrogatory No. 25. (*Id*.; Kain Decl. at ¶ 9.) Defendant further argues that the only products at issue are those listed in paragraphs 17-21 of the Complaint. (*Id*. at pp. 19-21.)

As discussed above, the Court finds all sizes and flavors of the products listed in paragraph 52 of the Complaint, for the entire class period, to be relevant at this stage. Therefore, Plaintiffs' motion to compel further responses related to these products is granted. Defendant must provide full and complete responses to Interrogatories Nos. 25 and 26, identifying the UPCs and labels for all of these products, and all additional information requested in Interrogatory No. 26. If Defendant refers to produced business records, its responses must comply with Federal Rule of Civil Procedure 33(d).[6]

---

[6] To the extent Defendant does not manufacture a certain product line, or information is unavailable after a "reasonable inquiry" is conducted, Defendant must

**B.     Discovery Dispute (ECF No. 96)**[7]

Plaintiffs move to compel responses to (1) Requests for Production Nos. 29 and 30 in Plaintiffs' Amended Notice of Deposition Pursuant to Federal Rules of Civil Procedure 30(b)(6), 30(b)(2) and 34, and (2) Requests Nos. 38 and 40-45 in their Fourth Set of Requests to Produce Documents.  (ECF No. 96.)  With respect to Requests Nos. 29 and 30 in the Amended Deposition Notice, Plaintiffs state these documents were eventually produced on July 11, 2016, but not as to the 8.25 oz. and 11 oz. RTD class products.  (*Id.* at pp. 4-5; ECF No. 96-2 at ¶ 11, n. 2.)

Request No. 38 seeks a copy of the Protein Quality Report from Defendant's Genesis database for each version of the recipes used to produce the class products.  (ECF No. 96-2 at Exh. C, p. 6.)  Requests Nos. 40-43 seek manuals, guides, and instructions for Defendant's (1) Genesis R&R software and database, (2) Sage 500 software, (3) O2 Processing module for the Sage 500 software, and (4) Redzone Continuous Improvement System software.  (*Id.* at pp. 6-7.)  Request No. 44 seeks all standard operating procedures related to the production or formulation of the class products.  (*Id.* at p. 7.)  Lastly, Request No. 45 seeks all documents and data related to the acceptable variances for protein and

---

respond accordingly.  *See Rogers*, 288 F.R.D. at 485 ("A party must make a reasonable inquiry to determine whether responsive documents exist, and if they do not, the party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence." (citation and internal quotations omitted)); *Louen v. Twedt*, 236 F.R.D. 502, 504 (E.D. Cal. 2006) ("Even if there are no documents responsive to a request for production, the requesting party is entitled to a response pursuant to Fed. R. Civ. P. 34(b).").

[7]     Plaintiffs filed a Motion to File Documents Under Seal in connection with this discovery dispute.  (ECF No. 97.)  Plaintiffs seek to seal two exhibits attached to the Declaration of Trenton R. Kashima.  (ECF No. 96-2 at Exhs. E & G.)  These exhibits are deposition transcripts which Defendant has deemed Highly Confidential pursuant to the Protective Order issued in this case because they contain sensitive business information that could pose a risk to Defendant if discovered by a competitor.  (ECF No. 97 at pp. 1-2.)  Good cause appearing, this motion is **GRANTED**.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006).

other nutrients in the class products for the relevant time period.  (*Id.*)  Defendant previously agreed to produce documents responsive to Request No. 38, but not as to the 8.25 oz. and 11 oz. RTD products.  (ECF No. 96 at p. 4.)  Defendant also refused to produce any documents responsive to Requests Nos. 40-45.  (*Id.* at pp. 4-5; *see also* ECF No. 96-2 at Exh. D.)

As to Request Nos. 29, 30, 38, 44, and 45, the Court grants Plaintiffs' motion to compel further responses as to all sizes and flavors for the entire class period, for the reasons set forth above.  For Requests Nos. 40-43, during the Court's telephonic discovery conference, the parties agreed that these requests relate only to the merits and not to class certification.  Accordingly, as discussed during the conference, Plaintiffs' motion to compel further responses to these requests is denied as moot at this time.  To the extent Plaintiffs still require production of these documents, if and when this case reaches the merits stage, the parties shall re-brief the issues addressing the relevance of these requests to the merits of the case.

### C. Attorney's Fees

Plaintiffs seek attorney's fees in bringing these motions pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure.  (ECF No. 95 at pp. 12-13; ECF No. 96 at pp. 10-11.)  Rule 37(a)(5) provides, in relevant part:

> If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(5)(C).  Although the Court is concerned with Defendant's apparent attempt to re-litigate its Motion to Dismiss, the Court declines, in its discretion, to apportion reasonable expenses incurred in bringing these motions.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the parties' Joint Motion on Parties' Stipulation Regarding Certain Discovery and Class Certification (ECF No. 104), and **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motions to Compel.  (ECF

15-cv-00165-L (DHB)

Nos. 95, 96.)  Defendant must supplement its responses, as laid out above, within **fifteen (15) days** of the date of this Order.  The Court also **GRANTS** Plaintiffs' Motion to File Documents Under Seal. (ECF No. 97.)  Accordingly, the Clerk of Court shall file under seal the documents lodged at ECF Nos. 98 and 99.

IT IS SO ORDERED.

Dated:  October 18, 2016

For DAVID H. BARTICK
United States Magistrate Judge

17