UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYLA CLAY *et al.*,<br><br>            Plaintiffs,<br>v.<br>CYTOSPORT, INC.,<br><br>            Defendant. | Case No: 3:15-cv-00165-L- AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court in this putative consumer class action is Defendant's motion for partial summary judgment. Plaintiffs filed an opposition, and Defendant replied. This matter is submitted on the briefs pursuant to Civil Local Rule 7.1.d.1. For the reasons which follow, Defendant's motion is granted in part and denied in part.

**I.    BACKGROUND**

Plaintiffs are consumers who purchased Defendant's protein shake and/or protein powder. They allege that (1) the Nutrition Facts panel and packaging of some of Defendant's ready-to-drink protein shake products overstated the amount of protein content; (2) the Ingredients section on the labels of their Muscle Milk protein powder products included amino acid L-glutamine, it was also listed as an

- 1 -

ingredient of the "Precision Protein Blend" elsewhere on the labels, and an L-glutamine molecule was also shown in a chart of the amino acids profile for some of the products, implying that L-glutamine was included in its unbonded form, when none was included; and (3) prominently displaying on its Muscle Milk protein powder packaging that the product was "lean" or contained a special blend of "Lean Lipids," when the products contained oils and were no leaner than other protein powders on the market which were not marketed as lean.

Plaintiffs contend that Defendant's product labeling is false and misleading in violation of the federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*, other federal laws, as well as California, Florida and Michigan state consumer protection laws. In the operative first amended complaint (doc. no. 156), they allege causes of action for violation of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("FAL"); violation of California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 ("CLRA"); violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"); violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"); violation of Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 *et seq.* ("MCPA"); breach of express warranty under California, Florida and Michigan state laws; and violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§2301 *et seq.* ("Magnuson-Moss" or "Act") for breach of written warranty. On behalf of themselves and a putative nationwide class with California, Florida and Michigan subclasses, Plaintiffs seek, among other remedies, injunctive relief, damages, restitution and/or disgorgement of Defendant's profits.

Defendant filed a motion for partial summary judgment, arguing that the FAL, CLRA and UCL claims fail for lack of statutory standing, the MCPA claim fails for lack of reliance, the Michigan and Florida express warranty claims fail for lack of notice, the California express warranty claim fails for lack of reliance, and

the Magnuson-Moss claim fails for lack of a written warranty. Plaintiff opposes these arguments.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Summary judgment or partial summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine dispute as to any material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23.

If the moving party fails to discharge its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

/ / / / /

- 3 -

Case No. 3:15-cv-00165-L-AGS

**A.  False Advertising, Unfair Competition and CLRA Claims**

Defendant moves for summary adjudication of the first through fifth causes of action for FAL, CLRA and UCL violations[1] for lack of statutory standing. Only a "person who has suffered injury in fact and has lost money or property as a result of" a FAL or UCL violation may bring an action for violation. Cal. Bus. & Prof. Code §§ 17204 (UCL), 17535 (FAL). For purposes of these statutes, the phrase "as a result of" means "caused by" and "requires a showing of a causal connection or reliance on the alleged misrepresentation," as "reliance is the causal mechanism of fraud." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 326 (2011) (internal quotation marks and citations omitted).

CLRA, which contains the same language, is interpreted in a similar way. *Kwikset*, 51 Cal.4th at 326. An action for a CLRA violation can be brought only by a "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful" under the CLRA. Cal. Civ. Code § 1780. To meet this requirement, "not only must a consumer be exposed to an unlawful practice, but some kind of damage must result." *Meyer v. Spring Spectrum L.P.*, 45 Cal.4th 634, 641 (2009). In this context, the damage requirement is broadly construed to include "such transaction costs" as "expending time and money threatening [the defendant] with a lawsuit . . . to avoid the consequences of a deceptive practice," even if such transaction costs are not cognizable as "actual damages." *Id.* at 642-43. With respect to reliance, insofar as the statutory claim is based on a fraudulent representation, a plaintiff

> must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions. Consequently, a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct. However, a plaintiff is not required to allege that the challenged

---

[1] Plaintiff alleges UCL violations in the third, fourth and fifth causes of action.

- 4 -

misrepresentations were the sole or even the decisive cause of the injury-producing conduct.

*Kwikset*, 51 Cal.4th at 326-27 (internal quotation marks, brackets, ellipses, citations and footnote omitted).

Defendant argues that it is entitled to summary adjudication on these claims[2] because none of the named Plaintiffs relied on the alleged misrepresentations in their respective decisions to purchase Defendant's products. Deposition testimony does not unequivocally support Defendant's position.

Logan Reichert purchased Defendant's protein powder products. (*See* Transcript of the Testimony of Logan Reichert ("Reichert Depo.") at 41.)[3] Defendant argues that he did not rely on any of the disputed statements on Defendant's product labels. (*See* doc. no. 170-1 at 7-8 & 14.) Plaintiffs dispute this only with respect to the statements regarding L-glutamine. (Doc. no. 185 at 35.) Reichert testified that he started using Defendant's products as a wrestler in high school. He knew that amino acids were important "for your body and your muscles," and was reassured when he saw that the protein powder included them. (*Id.* at 32, 61-64.) Although Reichert testified that he did not know individual amino acids by their names, and did not look for L-glutamine content when he first purchased Defendant's protein powder (*see id.* at 63-64), Defendant's argument that this testimony establishes Reichert's admission of no reliance is not based on a fair reading. The testimony lends itself to Plaintiffs' and Defendant's proffered interpretations. On summary judgment, the court must draw all inferences from

---

[2] Reichert and Ehrlich are not making any claims under the CLRA. (*See* doc. no. 156 at 26 (claim asserted solely on behalf of the putative California sub-class).) Except for the deposition transcripts, all page references in citations to docketed documents are to the page numbers assigned by the ECF system.

[3] Excerpts from the Reichert Depo. were filed as doc. no. 170-6 at 95-115 and doc. no. 185-11. Throughout this Order, page references to deposition testimony are to the page numbers in the transcript.

- 5 -

the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. Reichert's testimony lends itself to the inference that he looked for L-glutamine on the label at some point, and continued to purchase the protein powder because he was reassured that it had it.

Erica Ehrlichman purchased Defendant's protein powder and shakes. (*See* Deposition of Erica Ehrlichman ("Ehrlichman Depo.") at 9, 25.)[4] Defendant contends that she did not rely on the "lean" representations on the labels. Ehrlichman testified that she did not rely on the phrase "Lean Lipids" or the word "lean." (*Id.* at 116-17, 119, 128.) However, she also testified that she saw the phrase "lean muscle protein powder" on the package, and thought this was desirable because she wanted "lean muscles" and thought that the product "ha[d] a lower fat content because you can't get lean muscles if you're eating something fattening." (*Id.* at 112-13.) Ehrlichman's testimony therefore does not preclude reliance on the word "lean" as used in the phrase "lean muscle protein powder."

Chayla Clay purchased Defendant's protein powder and shakes. (Deposition of Chayla Clay ("Clay Depo.") at 16-23.)[5] Defendant contends that she did not rely on the statements regarding protein and L-glutamine. Plaintiff opposes only with respect to her reliance on statements about protein. (Doc. no. 185 at 33.) Defendant bases its position on Clay's testimony that when she first bought the products as a teenager, she did not read the label. (*See id.* at 127, 130.) Defendant does not establish that the only relevant reliance is for the initial purchase of the

---

[4] Excerpts from the Ehrlichman Depo. were filed as doc. no. 170-6 at 116-54 and doc. no. 185-9.

[5] Excerpts from the Clay Depo. were filed as doc. no. 170-6 at 155-88, and doc. no. 185-10.

- 6 -

Case No. 3:15-cv-00165-L-AGS

product. Clay testified that she purchased Defendant's products over a period of some 15 years (*see id.* at 15-16, 23-24, 40-42, 156), and that she used them because she thought they were high in protein (*id.* at 130, 160). Her testimony is sufficient for a reasonable jury to conclude that Clay relied on the protein content at least for some of her purchases.

Christopher Roman used Defendant's protein powder and sometimes shakes. (Deposition of Christopher Roman ("Roman Depo.") at 66, 70-77, 134-37.)[6] Defendant claims that Roman did not rely on the protein content representations on the shakes. Roman was a professional mixed martial arts fighter, who was on a strict high protein intake diet when he was training. (*Id.* at 37-38, 40, 43-45; *see also* doc. no. 185-5 (exhibits).) He used primarily Defendant's protein powder and drank shakes only rarely when he did not have access to another protein product. (*Id.* at 134-37.) Defendant focuses on his testimony that he was usually in a hurry when he purchased a shake, did not look at the label carefully, and not until after he had already made the purchase. (*Id.*) However, Roman also testified that whenever he changed his protein product, he had a habit of carefully scrutinizing supplement labels for the nutrients he was looking for, including protein, and that he did the same with Defendant's protein powders. (*Id.* at 62-64.) When he purchased shakes, he did check the label for protein content before drinking the shake. (*Id.* at 134-37.) He chose Muscle Milk shakes because he was already familiar with the brand and assumed that the powder and shake products were similar. (*Id.* at 134-37.) Based on the foregoing, the testimony is sufficient to raise a genuine issue of material fact regarding reliance on the protein amount statement on Defendant's protein shake products.

/ / / / /

---

[6] Excerpts from the Roman Depo. were filed as doc. no. 170-6 at 189-221, doc. no. 185-8, and doc. no. 185-5 (exhibits).

- 7 -

Case No. 3:15-cv-00165-L-AGS

Based on the foregoing, Defendant is entitled to summary adjudication with respect to some of the claims asserted by Clay and Reichert. Clay lacks standing to assert FAL, CLRA and UCL claims with respect to Defendant's representations regarding L-glutamine in protein powder products, and Reichert lacks standing to assert FAL and UCL claims with respect to Defendant's statements about protein content of its shakes and "lean" statements about protein powders.

### B. Michigan Consumer Protection Claim

Defendant seeks summary adjudication of the seventh cause of action for MCPA violation. The sole argument in this regard is that Ehrlichman did not rely on the "lean" statements on Defendant's protein powders. As discussed above, Ehrlichman's testimony allows for a reasonable inference that she relied on the word "lean" as used in the phrase "lean muscle protein powder." Nevertheless, Plaintiffs' state in their reply that the only claim they seek to litigate is the claim arising under M.C.L. § 445.903(1)(c). (Doc. no. 185 at 42.) Defendant is not contesting this claim to the extent it is based solely on subsection (c). (Doc. no. 191 at 14 n.3.) Accordingly, Defendant's motion is granted with respect to any claim Plaintiffs asserted pursuant to M.C.L. § 445.903(1)(a). (e), (s) and (cc). (*See* doc. no. 156 at 36.)

### C. Breach of Express Warranty

Defendant next maintains it is entitled to summary adjudication of the eighth cause of action for breach of state law express warranty because Ehrlichman and Reichert failed to give pre-suit notice of breach as required by Michigan and Florida law, respectively. They also contend that summary adjudication is appropriate under California law to the extent Plaintiffs did not rely on Defendant's product labels.

Plaintiffs do not dispute that Michigan and Florida law require pre-suit notice of breach. (*See* doc. no. 185 at 41.) It is also undisputed that Plaintiffs sent

Defendant a demand letter on January 23, 2015. (*See* doc. no. 191 at 16; *see also* doc. no. 184-1 (Decl. of Amy L. Marino); doc. no. 185-4 (Exh. B to Decl. of Amy L. Marino).) The letter attached the complaint, which included all pertinent claims, and was filed the same day. (Doc. no. 185-4.)

Section 440.2607(3)(a) of Michigan's Compiled Laws requires reasonable notice of breach of warranty. *Gorman v. Am. Honda Motor Co.,* 839 N.W.2d 223, 229 (Mich. App. 2013); *Am. Bumper & Mfg Co. v. TransTech. Corp.*, 652 N.W.2d 252, 255 (Mich. App. 2002). Two of the purposes of notice requirement are "to prevent surprise and . . . to allow the seller the fair opportunity to investigate and prepare for litigation." *Am. Bumper,* 652 N.W.2d at 256. If the notice does not serve the purposes for the notice requirement, it is not reasonable and the buyer has not complied. *Id.* Commencing a lawsuit is not reasonable notice. *See Gorman,* 839 N.W.2d at 230, 231. Here, Plaintiffs simultaneously sent the letter to Defendant and filed this action. (Doc. no. 185-4.) Although Plaintiffs did more than just serve the complaint, notice was not sufficient to comply with Michigan state law requirements. A plaintiff who does not comply, is "barred from any remedy." Mich. Comp. Laws § 440.2607(3)(a); *Gorman,* 839 N.W.2d at 232; *Am. Bumper,* 652 N.W.2d at 256. To the extent Defendant moves for summary adjudication of the claim for breach of express warranty under Michigan law, the motion is granted.

Florida's notice statute is the same as Michigan's. Fla. Stat. § 672.607(3)(a); *cf.* Mich. Comp. Laws § 440.2607(3)(a). Like Michigan, Florida courts evaluate compliance with the notice requirement in light of the underlying reasons. *See General Matters, Inc. v. Paramount Canning Co.,* 382 So.2d 1262, 1264 (Ct. App. Fla. 1980). "There are several important reasons for the notice requirement[.]" *Id.* For example, it "enables the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and

- 9 -

Case No. 3:15-cv-00165-L-AGS

reducing the seller's liability to the buyer." *Id.* (internal quotation marks omitted). A notice sent at the same time as the lawsuit is filed does not provide sufficient time to accomplish these purposes. Accordingly, Plaintiffs' notice did not comply with Florida law. To the extent Defendant moves for summary adjudication of the claim for breach of express warranty under Florida law, the motion is granted.

With respect to Plaintiffs' express warranty claim under California law, Defendant argues that it is entitled to summary adjudication because there is no privity of contact between Plaintiffs and Defendants, and Plaintiffs did not rely on the representations on Defendants' product labels. Plaintiffs dispute that privity or reliance is required.[7]

California law requires neither privity nor reliance to prevail on a claim for breach of express warranty. "Privity is not required for an action based upon an express warranty." Jud. Council of Cal. Civ. Jury Instr. ("CACI") no. 1230, cmt (2017) (quoting *Hauter v. Zogarts,* 14 Cal.3d 104, 114 n.8 (1975)). Furthermore, "[w]hereas plaintiffs in the past have had to prove their reliance upon specific promises made by the seller . . ., the Uniform Commercial Code requires no such proof." CACI no. 1230, cmt (quoting *Hauter,* 14 Cal.3d at 115); *see also* Cal. Comm. Code § 2313(1) & Cal. Code Cmt. 2 (reliance no longer required). To the extent Defendant seeks summary adjudication of the express warranty claim under California law, the motion is denied.

### D. Magnuson-Moss Claim

Defendant contends it is entitled to summary adjudication of Plaintiffs' ninth cause of action for breach of written warranty under the Magnuson-Moss Warranty

---

[7] The entirety of Plaintiffs' argument in this regard is included in an incomplete choice-of-law chart filed as Exhibit UU to the Declaration of Trenton R. Kashima. (*See* doc. no. 185 at 42-43.) The chart consists of five (page one is missing) single-spaced pages of legal argument. (Doc. no. 157-72.) This is a blatant run around the page limits, which already were extended pursuant to Plaintiffs' request. (*See* doc. no. 148 (Order Granting Plaintiffs' *Ex parte* Application for Over Length Brief).) Failure to comply with orders of the Court is grounds for sanctions. Civ. Loc. Rule 83.1.

Act because the representations on product labeling are not written warranties for purposes of the Act. The Act defines the term "written warranty" in pertinent part as follows:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time . . ..

15 U.S.C. § 2301(6)(A).

Plaintiffs concede that a product description alone is insufficient to constitute a warranty. (Doc. no. 185 at 40.) The parties disagree whether the product labels include a promise that the product is "defect free or will meet a specified level of performance over a specified period of time," as required by the Act. Neither side cites any binding case law in support of its respective arguments.[8]

Plaintiffs argue that the protein and L-glutamine statements on the product labels are more than product descriptions. With respect to the protein representations on the protein shake products, they point to the prominently and repeatedly displayed representations regarding protein content. (*See, e.g.,* doc. no. 157 Exh. S at 1 (non-electronically filed); *see also id.* App'x C.) With respect to the L-glutamine content of their powdered products, they point to the list of ingredients included in the "protein blend" (*id.* App'x B at 2) , and a detailed chart under the heading "TYPICAL AMINO ACID PROFILE per 2 scoops 70g (32g Protein)" which shows pictures of amino acid molecules, including "L-glutamine and Precursors" and lists the quantity. (*See, e.g., id.* Exh. K a 6 (non-electronically filed) (all caps in orig.); *see also id.* App'x B.) Plaintiffs argue that these

---

[8] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Green,* 563 U.S. 692 n.7 (2011).

ingredient and quantity representations, together with "multiple statements of efficacy and scientific validity made elsewhere on the package, and the expiration date, . . . promise a specific level of performance over a specific time period." (Doc. no. 185 at 40).

To constitute a written warranty under the Act, the statement must include a "written affirmation of fact or a written promise of a specified level of performance [which] *must relate to a specified period of time*. A product information disclosure without a specified time period to which the disclosure relates is therefore not a written warranty." 16 C.F.R. § 700.3(a) (emphasis added). Although Plaintiffs allude to an expiration date, none of the evidence they cite discloses an expiration date. (*See* doc. no. 157 Exhs. K & S (non-electronically filed) & App'x B & C.) Furthermore, Plaintiffs cite no binding legal authority for the proposition that an expiration date is sufficient for purposes of a written warranty under the Act.

Because Plaintiffs did not carry their burden in opposing Defendant's summary judgment motion, the motion is granted with respect to the ninth cause of action for breach of written warranty under the Act.

## III. CONCLUSION

Defendant's motion for partial summary judgment is granted in part and denied in part as follows:

1. Defendant is entitled to summary adjudication with respect to some of the claims asserted by Plaintiffs Clay and Reichert. Clay lacks standing to assert claims under California False Advertising Law ("FAL"), California Consumer Legal Remedies Act ("CLRA"), and California Unfair Competition Law ("UCL") with respect to Defendant's representations regarding L-glutamine in protein powder products. Reichert lacks standing to assert FAL and UCL claims with respect to Defendant's statements about protein content of its shakes, and "lean"

/ / / / /

statements about protein powders. All other claims asserted for FAL, CLRA and UCL violations survive Defendant's motion.

2. Defendant's motion is granted with respect to any claim Plaintiffs assert for violation of Michigan Consumer Protection Act, Mich. Comp. L. § 445.903(1)(a), (e), (s) and (cc). Plaintiffs' claim for violation of Michigan Comp. L. § 445.903(1)(c) survives Defendant's motion.

3. Defendant's motion for summary adjudication of the express warranty claim alleged under Michigan and Florida state law is granted. The motion is denied with respect to the express warranty claim under California law.

4. Defendant's motion for summary adjudication of the claim for breach of written warranty under the Magnuson-Moss Warranty Act, is granted.

**IT IS SO ORDERED.**

Dated: July 31, 2018

Hon. M. James Lorenz
United States District Judge