FINKELSTEIN & KRINSK LLP
Jeffrey R. Krinsk, Esq. (SBN 109234)
jrk@classactionlaw.com
Trenton R. Kashima, Esq. (SBN 291405)
trk@classactionlaw.com
550 West C St., Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile:  (619) 238-5425

BARBAT, MANSOUR & SUCIU PLLC
Nick Suciu III, Esq. (*Pro Hac Vice*)
nicksuciu@bmslawyers.com
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Telephone: (313) 303-3472

SOMMERS SCHWARTZ P.C.
Jason J. Thompson (*Pro Hoc Vice*)
JThompson@sommerspc.com
One Towne Square, 17th Floor
Southfield, MI 48076

*Attorneys for Plaintiffs*
*and the Classes*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYLA CLAY, ERICA EHRLICHMAN, and LOGAN REICHERT, and CHRIS ROMAN, individually and on behalf of all others similarly situated , <br><br>               Plaintiffs, <br> v. <br><br> CYTOSPORT, INC., a California corporation, <br><br>               Defendant. | Case No: 3:15-cv-00165-L-DHB <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF  UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT** <br><br> Hearing date:  June 10, 2019 <br> Time:        10:30 am <br> Judge:      Hon. M. James Lorenz <br><br> [No Oral Argument Unless Ordered by the Court] |

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

I.      INTRODUCTION ............................................................................. 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................... 2

        A.      The Factual Allegations and Causes of Action ........................ 2

                1.      The Lean Claims .......................................................... 2

                2.      The Protein Claims ...................................................... 3

        B.      Procedural History ........................................................... 3

                1.      Defendant's Motion to Dismiss ...................................... 3

                2.      Plaintiffs' Motion for Judgment on the Pleadings ............ 4

                3.      Plaintiffs' Motion for Class Certification and Defendant's Motion for Partial Summary Judgment and to Exclude Certain Opinions of Dr. Howlett ........................................................... 4

                4.      Defendant's Appeal ....................................................... 6

        C.      The Parties' Discovery Efforts ............................................. 6

        D.      Settlement Negotiations ..................................................... 7

III.    SUMMARY OF THE PROPOSED SETTLEMENT ...................................... 8

                1.      The Monetary Settlement Benefit ................................... 8

                2.      The Release of Claims by the Class ............................... 9

                3.      Proposed Notice and Class Members' Right to Opt Out or Object 10

                4.      Plaintiffs' Incentive Awards and Class Counsel's Attorneys' Fees and Costs ................................................................. 11

IV.     THE CLASS DEFINITION SHOULD BE CONDITIONALLY CERTIFIED AS AMENDED BY THE SETTLEMENT ................................................ 11

V.      THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........... 13

        A.      The Settlement Provides Fair, and Immediate Relief to the Class ......... 14

                1.      The Settlement Benefits Achieved are Excellent ............ 14

                2.      The Settlement is Fair for All Class Members ................ 16

        3.      The Settlement Utilizes a Simple Claims Process and Ensures that the Class Retains the Entirety of the Settlement Fund .................. 16

   B.     The Risk of Further Litigation Favors Settlement ................................... 17

   C.     Complexity, Expense, and Likely Duration of Further Litigation .......... 19

   D.     The Class Representatives and Class Counsel Adequately Represented the Class Through Contentious and Informed Settlement Negotiations .. 20

   E.     The Proposed Fee and Incentive Awards are not Extraordinary ............. 21

VI.   THE PROPOSED NOTICE WILL ADEQUATELY APPRISE THE CLASS OF THEIR RIGHTS UNDER THE SETTLEMENT ....................................... 23

   A.     Notice is Reasonably Calculated to Reach the Settlement Class ............ 23

   B.     The Notice Allows Settlement Class Members to Make an Informed Decision ................................................................................................... 24

VII.  CONCLUSION ............................................................................................. 25

Case No: 3:15-cv-00165-L-DHB

**Cases**

*Ades v. Omni Hotels Mgmt. Corp.*,
No. 13-2468, 2015 U.S.Dist.LEXIS 126121 (C.D. Cal. Sept. 21, 2015) .............. 11

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................13, 23

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ........................................................................ 11

*Arnold v. Fitflop USA, LLC*,
No. 11-CV-0973, 2014 WL 1670133 (S.D. Cal. Apr. 28, 2014) .......................... 24

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245, 267 (N.D. Cal. 2015) ............................................................. 22

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ................................................................. 20

*Brown v. Hain Celestial Grp., Inc.*,
No. 3:11-CV-03082, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016)........................ 17

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
No. 6:12–1609, 2015 WL 965696 (W.D. La. Mar. 3, 2015) ................................ 15

*Czuchaj v. Conair Corp.*,
No. 3:13-cv-1901, 2016 WL 4272374 (S.D. Cal. Aug. 15, 2016) ....................11, 18

*Edwards v. Nat'l Milk Producers Fed'n*,
No. 11-CV-04766, 2017 WL 3616638 (N.D. Cal. June 26, 2017) ........................ 16

*Gregorio v. Premier Nutrition Corporation*,
1:17-cv-05987 (S.D.N.Y Jan. 17, 2019)........................................................... 16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................... 21

*Hester v. Vision Airlines*, Inc.,
No. 2:09-CV-00117, 2017 WL 4227928 (D. Nev. Sept. 22, 2017) ...................... 17

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................... 22

*In re California Micro Devices Sec. Litig.*,
168 F.R.D. 257 (N.D. Cal. 1996)..................................................................... 20

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................... 20

*In re Magsafe Apple Power Adapter Litig.*,
No. 5:09-CV-01911, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ........................ 17

Case No: 3:15-cv-00165-L-DHB

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................................. 22

*In re Newbridge Networks Sec. Litig.*,
   No. CIV. A. 94–1678, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ........................ 19

*In re Nvidia Derivs. Litig.*,
   No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................... 19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 16

*In re Pacific Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................ 21

*In re Quantum Health Res., Inc.*,
   962 F. Supp. 1254 (C.D. Cal. 1997)..................................................................... 22

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................................ 13

*Keepseagle v. Vilsack*,
   118 F. Supp. 3d 98 (D.D.C. 2015) ....................................................................... 17

*Lerma v. Schiff Nutrition Int'l, Inc.*,
   No. 11CV1056, 2015 WL 11216701 (S.D. Cal. Nov. 3, 2015) ........................... 14

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ............................................................... 21

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
   834 F.2d 677 (7th Cir. 1987) ............................................................................... 20

*McDonald v. Bass Pro Outdoor World, LLC*,
   No. 13–cv–889, 2014 WL 3867522 (S.D. Cal. Aug. 5, 2014)............................. 13

*Misra v. Decision One Mortg. Co.*,
   No. SACV070994, 2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ....................... 18

*Nat'l Rural Telecomms. Coop v. DirecTV*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................... 13

*Pappas v. Naked Juice Co of Glendora, Inc.*,
   No. CV1108276, 2014 WL 12382279 (C.D. Cal. Jan. 2, 2014) ......................... 24

*Phillips Petrol. Co. v. Shutts*,
   472 U.S. 812 (1985) ............................................................................................ 25

*Rangel v. PLS Check Cashers of California, Inc.*,
   899 F.3d 1106 (9th Cir. 2018) ............................................................................ 10

*Rebney v. Wells Fargo Bank,*
220 Cal. App. 3d 1117 (1990) .............................................................. 19

*Rodriguez v. W. Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ............................................................... 18

*Saavedra v. Eli Lilly & Co.,*
No. 2:12–cv–9366, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ........................ 18

*Silber v. Mabon,*
18 F.3d 1449 (9th Cir. 1994) ............................................................... 23

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ....................................................... 15, 21, 22

*Van Vranken v. Atl. Richfield,*
901 F. Supp. 294 (N.D. Cal. Aug. 16, 1995) .............................................. 22

*Werdebaugh v. Blue Diamond Growers,*
No. 12–CV–02724, 2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ...................... 18

*Wilson v. Airborne, Inc.,*
No. CV 07-770, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) ........................... 24

**Statutes**

15 U.S.C. § 2301 ............................................................................ 3

28 U.S.C. § 1715 ........................................................................... 10

Cal. Bus. & Prof. Code § 17200 ......................................................... 3

Cal. Bus. & Prof. Code § 17500 ......................................................... 3

Cal. Civ. Code § 1700 .................................................................... 3

Cal. Health & Safety Code § 110100 ................................................... 3

Fl.St. § 500.11 ............................................................................ 3

Fl.St. § 501.201 .......................................................................... 3

M.C.L. § 445.901 ......................................................................... 3

M.C.L. 289.8101 .......................................................................... 3

**Regulations**

21 C.F.R. § 101.62 ......................................................................... 2

21 C.F.R. § 101.9 .......................................................................... 3

**Rules**

Fed. R. Civ. P. 23 .................................................................... passim

- v -

**Other Authorities**

*Newberg on Class Actions* § 12:28 (5th ed. 2015)...................................................... 17

The Federal Judicial Center, Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide ...................................................... 24

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Chayla Clay, Erica Ehrlichman, Logan Reichert, and Chris Roman move this Court for preliminary approval of the Settlement with Defendant Cytosport Inc., the terms of which are set forth in the Settlement Agreement attached as Exhibit A to the Declaration of Trenton R. Kashima ("Kashima Decl. II"), filed herewith.[1]

## I.    **INTRODUCTION**

After a hard-fought litigation including multiple rounds of written discovery, depositions, expert discovery, extensive motion practice, and two rounds of mediations, Plaintiffs and Defendant reached a Settlement. In this case, Plaintiffs alleged that Defendant illegally and misleadingly advertised the fat, L-Glutamine and protein content of its various protein supplements; claims that Defendant vigorously denies. The Settlement addresses these allegations and provides the Class with $12 million dollars of relief, in addition to requiring Defendant to pay for the administration of the Settlement and Notice to the Class. Compared to Plaintiffs' initial estimates, the individual recovery offered under this Settlement exceeds the amount of recovery that the Class could reasonably expect at trial. Accordingly, this Settlement provides a significant and immediate benefit to the Settlement Class.

The proposed Settlement is the result of lengthy negotiations conducted with the assistance of an experienced mediator, David Rotman, Esq. It was negotiated after the Court ruled on Plaintiffs' Motion for Class Certification and Defendant's Motion for Summary Judgment, and the Ninth Circuit had accepted Defendant's petition for review under Rule 23(f), and, accordingly, there is no possibility of collusion. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious and costly litigation. Plaintiffs request that the Court preliminarily approve the Settlement, order that Class Notice be

---

[1] All capitalized terms used herein have the same definitions as those defined in the Settlement Agreement.

1  disseminated, and schedule a final approval hearing.

2  **II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

3      **A.  The Factual Allegations and Causes of Action**

4         Plaintiff filed this class action on January 23, 2015.  *See generally* First

5  Amended Complaint ("FAC") [Dkt. No. 156].  Defendant manufactures and markets

6  the popular Muscle Milk protein supplements.  *Id.* at ¶ 1.  There are two product

7  types involved in this case: the "Powder Products" and the ready-to-drink "Shake

8  Products."  *Id.* at ¶¶ 2-3.  The Powder Products are protein drink powders that

9  consumers typically mix with water or milk.  The Shake Products come in a

10  premixed liquid form and are sold as individual serving sized containers.

11         1.  The Lean Claims

12         During the Class Period, Defendant labeled its Powder Products with a

13  number of "Lean" claims, including: (1) the front labels stated that they contain

14  "[XX] g LEAN PROTEIN"; (2) the Products identified as "LEAN MUSCLE

15  PROTEIN," "LEAN MUSCLE PROTEIN SUPPLEMENT," "LEAN MUSCLE

16  PROTEIN POWDER," or "NEW LEANER FORMULA"; and (3) the vast majority

17  of the products also advertise they contain "Lean Lipids."  *See* Declaration of

18  Trenton Kashima ("Kashima Decl. I") [Dkt. No. 157-21], ¶¶ 7-9, App. A.

19         Plaintiffs contend that the "Lean" claims are both misleading and illegal under

20  federal law.  FAC, ¶¶ 46-52.  The Powder Products are fortified with oils and fats.

21  Kashima Decl. I, ¶ 27.  Plaintiffs, thus, argue that use of the term lean to describe

22  these Products was misleading.[2]  Further, pursuant to the Food, Drug, and Cosmetic

23  Act ("FDCA"), federal regulations prohibit the use of the word "lean" unless the food

24  meets the requirements of 21 C.F.R. § 101.62(e).  *See* 21 C.F.R. § 101.62(a).  Plaintiffs

25

26         [2] The lean claims involve the following products: Muscle Milk: Lean Muscle
Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk
27  Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Pro Series 50: Lean
Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement.
28

assert that each "Lean" Muscle Milk Product fails to satisfy 21 C.F.R. § 101.62(e) and is a *per se* violation of the FDCA.[3]

### 2. The Protein Claims

Plaintiffs further alleges that Defendant's Shake Products do not contain the advertised quantity a protein. *Id.*, ¶¶ 16-30. Shake Products state that they contain a specific amount of protein per container. Kashima Decl., I ¶¶ 18-20, App. C; *see also id.*, Exs. S & T.[4] Plaintiffs assert the stated protein content of the Products is deficient. 21 C.F.R. § 101.9(g)(4)(i).

Based on these assertions, Plaintiffs alleged—on behalf of a National Class— that Defendant had violated ("UCL"), CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, and the California False Advertising Law ("FAL") a CAL. BUS. & PROF. CODE §§ 17500 *et seq.* FAC, ¶¶ 61-69, 83-104. Plaintiffs also claim, on behalf of classes of purchasers of Shake and Powder Products in California, Michigan, and Florida, that the advertisements of the Class Products violate their respective state's consumer protection statutes[5], warranty laws, and the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* FAC, ¶¶ 61-146.[6]

### B. Procedural History

#### 1. Defendant's Motion to Dismiss

On March 30, 2015, Defendant moved to dismiss Plaintiffs' claims. *See generally* Defendant's Motion to Dismiss [Dkt. No. 24-1]. It was argued that

---

[3] California, Florida and Michigan have each expressly adopted the requirements of FDCA into their own state statutory regimes. *See* CAL. HEALTH & SAFETY CODE § 110100; FL.ST. § 500.11; M.C.L. § 289.8101.

[4] The protein claims involve the following products: Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake.

[5] For the California Subclass, the UCL, FAL, and Consumer Legal Remedies Act, CAL. CIV. CODE §§ 1700 *et seq.* For the Michigan Subclass, the Michigan Consumer Protection Act, M.C.L. §§ 445.901 *et seq.* For the Florida Subclass, the Florida Deceptive and Unfair Trade Practices Act, FL.ST. §§ 501.201 *et seq.*

[6] Plaintiffs also challenged the L-Glutamine claims made on Defendant's Powder Products. FAC, ¶¶ 31-45. These claims were not certified, and are no longer being pursued.

- 3 -

Plaintiffs' allegations were preempted by the FDCA, were subject to the Primary Jurisdiction Doctrine, Plaintiffs lacked standing to bring their claims, and Plaintiff's allegations were insufficient to satisfy the elements of their underlying causes of action. *See generally id.*

The Court denied Defendant's Motion to Dismiss in its entirety. Order Denying Motion to Dismiss [Dkt. No. 53]. In doing so, the Court clarified the correct protein testing methodology applicable under Federal law and that Plaintiffs would have to prove their case under these standards. *Id.* at pp. 5:20-6:4 & 7:3-23.

### 2. Plaintiffs' Motion for Judgment on the Pleadings

After Defendant answered the Complaint, Plaintiffs filed a Motion for Judgment on the Pleadings to contest the validity of Defendant's twenty-seven affirmative defenses. Dkt. No. 68-1. The Court granted Plaintiffs' Motion as to all but seven of Defendant's affirmative defenses. Order Granting in Part and Denying in Part Plaintiffs' Motion [Dkt. No. 163]. Between Defendant's Motion to Dismiss and Plaintiffs' Motion for Judgment on the Pleading, the parties had defined the scope of the dispute.

### 3. Plaintiffs' Motion for Class Certification and Defendant's Motion for Partial Summary Judgment and to Exclude Certain Opinions of Dr. Howlett

On September 9, 2016, Plaintiffs moved to certify national and three separate state classes. *See* Dkt. No. 109. Defendant, however, moved for an extension of time to file its response to Plaintiffs' Motion for Class Certification, arguing that Defendant needed additional time to conduct expert discovery. Defendant's *Ex Parte* Motion for Extension of Time [Dkt. No. 121]. Accordingly, the Court referred the discovery dispute to the Magistrate Judge and denied Plaintiffs' Motion for Class Certification without prejudice. *See* Order Granting in Part Defendant's *Ex Parte* Application [Dkt. No. 124].

In turn, Judge Porter decided on the parties' discovery dispute and entered an order resetting the class certification deadline to March 3, 2017. Order Granting in

- 4 -

Part and Denying in Part Joint Motion for a Status Conference and Briefing Schedule [Dkt. No. 133]. But, before Plaintiff filed the Motion for Class Certification, Defendant filed a Motion for Partial Summary Judgment and to Exclude Certain Opinions of Dr. Howlett (Plaintiffs' Damages Expert). *See* Order Regarding Briefing Plaintiffs' Motion for Class Certification [Dkt. No. 154]. The Court denied Defendant's Motion for Summary Judgment without prejudice and ordered that Defendant refile its Motion with its opposition to Plaintiffs' Motion for Class Certification. This would allow the concurrent briefing of both parties' Motions for a single hearing, if necessary. Order Regarding Briefing Plaintiffs' Motion for Class Certification [Dkt. No. 154].

The parties' arguments on these matters proved extensive. Kashima Decl. II, at ¶ 20. In total, the parties submitted 135 pages of briefing and seventeen declarations (including five expert declarations) with over 4,000 pages of evidence in support of their respective class certification and summary judgment motions. *Id.*; *See* Dkt. Nos. 157-1, 170-1, 185 & 191. The Court ultimately granted in part, and denied in part, both Plaintiffs' Motion for Class Certification and Defendant's Motion for Summary Judgment. The Court granted summary judgment as to Plaintiffs' Michigan Consumer Protection Act (sections 445.903(1)(a), (e), (s) and (cc); but not 445.903(1)(c)), express warranty and MMWA claims (Order Regarding Motion for Summary Judgment [Dkt. No. 209]), while certifying the following classes:

> (1) the nationwide classes as to the UCL and FAL claims to the extent they are based on statements of protein content on protein shake labels and "lean" statements on protein powder labels; (2) the California subclasses as to the UCL, FAL and CLRA claims to the extent they are based on statements of protein content on protein shake labels; and UCL and FAL claims to the extent they are based on "lean" statements on protein powder labels; (3) the Florida subclasses as to the FDUTPA violation based on the protein content statements on protein shakes and "lean" statements on protein powders; and (4) the Michigan subclass as to the MCPA violation based on the protein content statements on protein shakes."

Order Regarding Class Certification [Dkt. No. 210], at p. 38.

Case No: 3:15-cv-00165-L-DHB

### 4. Defendant's Appeal

Following the Court's ruling, Defendant filed a Petition for Permission to Appeal the decision on class certification pursuant to Rule 23(f). *See* Dkt. No. 218. Defendant sought review of the Court's certification of a national class under the UCL and FAL, as well as the sufficiency of Plaintiffs' proposed damages model. *See Chayla Clay et al. v. Cytosport, Inc.*, Case No. 18-80123 [Dkt. No. 1-2]. In a rare decision by the Ninth Circuit on December 21, 2018, the Petition was granted, but briefing was subsequently stayed at the parties' request to permit the parties' attempt to mediate a settlement. *Id.*, at Dkt. No. 11; Kashima Decl. II, at ¶ 24.

### C. The Parties' Discovery Efforts

The parties have engaged in extensive discovery to prosecute this case. Plaintiffs propounded fifty-six document requests, thirty-two interrogatories, sixteen requests for admissions, and a number of subpoenas. *Id.* at ¶ 25. As a result, Plaintiffs have received and reviewed over 47,000 pages of documents, plus voluminous amounts of product sales data. *Id.* at ¶ 26. Plaintiffs deposed several of Defendants' key employees, including Defendant's Chief Marketing Officer, Senior Vice President of Innovation and Business Development, and Compliance Manager. *Id.*, ¶ 27. In total, Plaintiffs took six depositions over seven days. *Id.*

The parties further relied on expert witnesses. Plaintiffs offered the declaration of Dr. William Campbell regarding the effects of L-glutamine on the human body, as well as the declarations of Dr. Jeffrey Harris and Dr. Elizabeth Howlett in support of Plaintiffs' proposed class damages model. *See* Dkt. Nos. 157-6, 157-7 & 157-8. Defendant offered the declarations of Professor Ravi Dhar and Dr. Keith R. Ugone to challenge Plaintiffs' damages model. *See* Dkt. Nos. 170-7 & 170-22. This discovery offered considerable insight into the likelihood Plaintiffs' prevailing on their claims and, consequently, the value of the case.[7]

---

[7] Defendant has also issued multiple document requests and interrogatories to

The parties' discovery efforts have not only been extensive, but contentious. Significant effort was expended by the parties conferring on their various discovery requests. *Id.*, ¶ 35. These discovery disputes required judicial intervention on three occasions. *See* Joint Motion for Determination of Discovery Dispute [Dkt. No. 89], Joint Motion for Determination of Discovery Dispute [Dkt. No. 95], Joint Motion for Determination of Discovery Dispute [Dkt. No. 125].

Plaintiffs' discovery efforts would have continued had the Settlement not been negotiated. Kashima Decl. II, ¶ 33. The parties agreed to bifurcate discovery and had not yet fully explored the merits of their claims, including, likely, additional product testing. *Id.*

### D. Settlement Negotiations

The parties had periodically discussed settlement of this case. On October 26, 2015, the parties attended an Early Neutral Evaluation Conference before Magistrate Judge David Bartick. *See* Dkt. No. 65. While Judge Bartick and the parties made an sincere effort, the case did not settle. Kashima Decl. II, ¶ 36.

The parties later agreed to meet for settlement discussion on March 1, 2016 in Walnut Creek, California. *Id.*, ¶ 37. Again, while the parties elaborated as to their respective settlement positions, no significant progress was achieved. *Id.* Both parties accordingly focused on litigating this action. *Id.*

It was only following the Court's decision on Motions for Summary Judgment and Class Certification that settlement discussions began in earnest. *Id.*, ¶ 38. Because the parties had, by this point, engaged in extensive discovery, including expert discovery regarding damages, and had the benefit of the Court's decision on key disputes, the parties were fully informed of the strengths and weakness of their respective claims. This allowed frank and meaningful settlement discussions.

---

Plaintiffs, all of which had been answered. Kashima Decl. II, ¶ 29. Defendant deposed each of the named Plaintiffs, and subpoenaed several retailers for the records of Plaintiffs' purchases. *Id.*, ¶¶ 29-30.

This time, the parties agreed to mediate before the well-respected mediator, David Rotman. The first mediation session with Mr. Rotman took place at his office in California on November 5, 2018. *Id.*, ¶ 39. The parties discussed the structure of potential settlements and made some headway, but were unable to reach an agreement. *Id.*, ¶ 48. The parties, nonetheless, continued their settlement discussions. *Id.*, ¶ 49.

The parties met with Mr. Rotman, again, on March 7, 2019, and eventually were able to come to an agreement on the material terms of the Settlement. *Id.*, ¶ 50. The Settlement Agreement was signed on May 12, 2019. *Id.*, ¶ 51.

## III. <u>SUMMARY OF THE PROPOSED SETTLEMENT</u>

### 1. <u>The Monetary Settlement Benefit</u>

Defendant will contribute $12 million to a non-reversionary common fund (the "Settlement Fund") which will be paid out to Class members after payment of counsel's attorneys' fees and costs and the requested incentive awards. Agreement at ¶¶ 2.31, 4.01, 10.01. Defendant agreed to separately pay the costs of notice and claims administration, which likely will amount to another approximately half million. *Id.* at ¶ 2.31; Kashima Decl. II, at ¶ 57.

The Settlement Fund will be distributed to the Settlement Class on a claims-made basis, according to the number of Shake and Powder Products purchased during the Class Period:

- For Shake Products, Class Members with proof of purchase may submit claims for $1 per purchased shake, with no limit on the number of shakes that may be claimed. Class Members with no proof of purchase may submit claims for $1 per purchased shake, capped at $25.

- For the Powder Products, Class Members with proof of purchase may submit claims for $3 for each purchase of a product weighing 2 ¾ lbs or less and $5 for each purchase of each product weighing more than 2 ¾ lbs, with no limit on the number of purchases that may be claimed. Class Members with no proof of purchase may submit claims for $3 for each purchase of a product weighing 2 ¾ lbs or less and $5 for each purchase of each product weighing more than 2 ¾ lbs, capped at $25.

*Id.*, at ¶¶ 4.01-4.04.

If the amount of money claimed by the Class exceeds the net amount provided by the Settlement Fund, each Class Member will receive a reduced *pro rata* share of the Fund. *Id.* at ¶ 4.05. However, if the funds claimed is less than the net amount in the Settlement Fund, each Class Member will receive a *pro rata* share of any remaining money. *Id.*

To receive a cash payment, Class Members must file a timely and valid Claim Form. *Id.* at ¶¶ 4.02, 9.01. The Claim Form may be completed either online or by mail and must provide: (i) the number and type of Class Product(s) purchased, and (ii) that the purchase or purchases were made within the applicable Class Period. *Id.* The Settlement Administrator will be responsible for reviewing all claims to determine their validity. *Id.* at ¶ 9.02.

In additional to the monetary benefit, Defendant has removed the challenged "lean" references from the Powder Product's labels. Agreement, at ¶ 4.01. Defendant has also agreed to review its manufacturing processes and protocols to minimize variability of the protein content contained in its Shake Products. *Id.*

## 2. The Release of Claims by the Class

In exchange for the Settlement benefits, Settlement Class members will release Defendant and related entities from:

> any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, that arise out of or relate in any way to the claims asserted or the factual allegations made in the Amended Complaint in this Action, including without limitation the marketing, advertising, promotion, or distribution of the Class Products and the purchase of any of the Class Products at any time during the Class Period.

*Id.* at ¶ 14.01. The Released Claims also include those which could have been asserted in this Action or are based on the factual predicates upon which the Class's claims are based. *Id.*; *see also* FAC. "Settlements of this breadth are common and

- 9 -

1  unobjectionable." *Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106,
2  1110–11 (9th Cir. 2018) (affirming dismissal of released claims that were or "could
3  have been pled based on the factual allegations" in settled class action).

4          3.      Proposed Notice and Class Members' Right to Opt Out or Object
5          The parties have agreed to disseminate the Class Notice through an aggressive
6  advertisement campaign:

> The notice program features a robust media campaign consisting of state-
> of-the-art targeted internet banner notice, print publication notice in
> widely-read consumer magazines, sponsored notice on two leading class
> action-related websites, and two advanced custom social media campaigns.
> The notice program also includes a dedicated website and toll-free
> telephone line where Class Members can learn more about their rights and
> responsibilities in the litigation.

11  Declaration of Steven Weisbrot ("Weisbrot Decl."), filed herewith, at ¶ 9.

12         The advertisements will direct Settlement Class Members to a website, created
13  by the Settlement Administrator, that will advise Class Members of the pendency of
14  the Action, including the nature of the Action, the Settlement's essential terms, the
15  Class Members' right to submit a claim, object to the Settlement, or request
16  exclusion from the Class within 75 days of the distribution of the Class Notice; the
17  Class Members' right to appear before the Court at the Final Approval Hearing; and
18  the time and place of the Final Approval Hearing. *Agreement,* at ¶¶ 8.01-8.04, Ex.
19  B. The Notices will also contain information regarding the allocation of the
20  Settlement Fund. *Id.* The notice will provide the necessary information for Class
21  Members to make an informed decision regarding the Settlement. *Id.*

22         In addition, the Settlement Administrator will (1) maintain a toll-free number
23  that Class Members can use to request a copy of the Settlement Agreement, a claims
24  form, and obtain any other information concerning the Settlement; (2) process and
25  record timely requests to be excluded from the Settlement; and (3) serve notice of the
26  Settlement on the appropriate state and federal officials pursuant to the Class Action
27  Fairness Act, 28 U.S.C. § 1715. *Id.,* at ¶¶ 8.04-8.05, 11.02-11.04.

28

Case No: 3:15-cv-00165-L-DHB

4.    Plaintiffs' Incentive Awards and Class Counsel's Attorneys' Fees and Costs

As is customary in common fund cases, Plaintiffs intend to seek reimbursed of their costs and attorneys' fees in an amount no to exceed 33 1/3 percent of the total Settlement Benefit (or approximately $4,149,585). *Id.* at ¶ 5.01; Kashima Decl. II, p. 18 n.1. Finally, Plaintiffs' counsel intend to seek incentive awards of $10,000 for each of the named Plaintiffs, for their assistance in helping to prosecute the case and for participating in discovery and multiple mediations. *Id.* at ¶ 5.02.

## IV.    THE CLASS DEFINITION SHOULD BE CONDITIONALLY CERTIFIED AS AMENDED BY THE SETTLEMENT

While several classes were certified in this case, the parties' Settlement contemplates a slightly different class definition for settlement purposes.[8] "An order that grants or denies class certification may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C); *Armstrong v. Davis,* 275 F.3d 849, 871 n. 28 (9th Cir. 2001) ("[w]here appropriate, the district court may redefine the class"). Modifying the class definition is particularly appropriate where the motion is unopposed. *Ades v. Omni Hotels Mgmt. Corp*., No. 13-2468, 2015 U.S.Dist.LEXIS 126121, *5 (C.D. Cal.  Sept. 21, 2015).  "In considering the appropriateness of [modifying a class], the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Czuchaj v. Conair Corp.*, No. 3:13-cv-1901, 2016 WL 4272374, at *2 (S.D. Cal. Aug. 15, 2016).

The proposed Settlement Class is as follows:

The Shake Class definition includes: all persons in the United States (including its states, districts or territories) who purchased a Shake Settlement Class Product [from January 23, 2011 to the date of the entry of the Preliminary Approval Order] or, for members of the Michigan subclass only, [from January 23, 2009 to the date of the entry of the Preliminary

---

[8] While Defendant does not oppose amendment of the class for settlement purposes; Defendant does not waive its right to challenge the propriety of the Court's September 7, 2018 Order.  Should the Settlement not be finalized or finally approved, certification of the Settlement Classes will be void, the parties will return to the position occupied before the Settlement. Agreement at ¶ 3.01.

Approval Order].

> The Powder Class definition includes: all persons in the United States (including its states, districts or territories) who purchased a Powder Settlement Class Product that had the phrase "lean lipids," "lean protein," "lean muscle protein," or "new leaner formula" on the label [from January 23, 2011 to December 31, 2018].

Agreement at ¶¶ 2.09, 2.29. Streamlining the Settlement Class definition will help in the administration of the Settlement and make it less confusing for Class members to determine which Class and products they are eligible for (as well limiting the scope of the release to the relevant time periods).[9] *Compare* Order Regarding Class Certification [Dkt. No. 210] *with* Agreement at ¶ 2.29.

Beyond the slightly different wording of the Settlement Class definition, the legal reasoning and the evidentiary support for certifying the Class are the same as those previously asserted in Plaintiffs' Motion for Class Certification.[10] And the Court's reasoning to certify the action as a class action applies equally Settlement Class. *See* Order Regarding Class Certification [Dkt. No. 210].

Indeed, the Settlement Class still encompasses millions of individuals; an amount so numerous that joinder of all members is impracticable. *Id.,* at pp. 5-6. The case still involves the same common contentions of law and fact, which predominate, making class-wide resolution of the case superior to individual litigation. The parties stipulated that the formulation and amount of protein did not vary materially between different batches of the same product during the class period. *See id.,* at pp. 20-21. Thus, is should not be difficult to decide Plaintiffs' state law consumer protection claims, which are determined using an objective "reasonable person" standard, on a classwide basis. *See id.,* at pp. 11-19, 25-26. While this class action also remains manageable at trial (*see id.,* at pp. 36-28); this is

---

[9] The lean claims were removed from the Powder Products' labels by December 31, 2016. Kashima Decl. II, ¶ 5.

[10] Plaintiff incorporates the arguments from its Motion for Class Certification and Reply in support thereof into this Motion as fully asserted herein. *See* Dkt. No. 157 & 185.

Case No: 3:15-cv-00165-L-DHB

less of a concern in settlement context. *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems.")

Finally, the identity of the Class Representatives has not changed. Nor has the identity of their Counsel. Therefore, Plaintiffs are still adequate and their claims are still typical of the Settlement Class. *See* Order Regarding Class Certification [Dkt. No. 210], at pp. 34-36. Thus, the proposed Settlement Class should be conditionally certified as amended.

## V.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Settlements of class actions are favored. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."). When the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, preliminary approval is appropriate. *McDonald v. Bass Pro Outdoor World, LLC*, No. 13–cv–889, 2014 WL 3867522, *6 (S.D. Cal. Aug. 5, 2014); FED. R. CIV. P. 23(e)(2).

The Court may examine a number of factors when determining preliminary approval, including: (1) whether the relief provided to the class is commensurate with "the costs, risks, and delay" of anticipated trial and appeal; (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" and (3) "the terms of any proposed award of attorney's fees, including timing of payment." FED. R. CIV. P. 23(e)(2)(C). Additionally, the Court should consider "the proposal was negotiated at arm's length," "whether the proposal treats class members equitably relative to each other,"

and whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A), (B) & (D). The proposed Settlement warrants approval under these standards.

### A. The Settlement Provides Fair, and Immediate Relief to the Class

#### 1. The Settlement Benefits Achieved are Excellent

The Settlement provides the *very* remedies that the Plaintiffs sought in the First Amended Complaint: monetary relief for the alleged misrepresentations. Each participating Settlement Class Member will receive $1 per purchased Shake Product, $3 for each purchase of a Powder Product weighing 2 ¾ lbs or less, and $5 for each purchase of a Powder Product weighing more than 2 ¾ lbs. Agreement, at ¶¶ 4.01-4.04. When the amount of individual recovery under the Settlement is compared to the amount that could have been recovered at trial, it represents considerable value. *See Lerma v. Schiff Nutrition Int'l, Inc*., No. 11CV1056, 2015 WL 11216701, at *5 (S.D. Cal. Nov. 3, 2015) ("[R]estitutionary disgorgement, which is the price paid minus the value actually received—not nonrestitutionary disgorgement of profits—is the proper measure of damages on the unfair competition and false advertising claims.").

Based on information assembled from the parties' discovery, Plaintiffs' damages expert was able to estimate that each gram of protein missing from the Shake Products would be worth *approximately $0.06 per gram*. Declaration of Dr. Jeffrey Harris [Dkt. No. 157-7] at ¶¶ 18, 23. Plaintiffs further alleged that Defendant's Shake Products contained *between three and eleven less grams of protein per bottle then advertised*. FAC at ¶¶ 18-21. Consequently, the expected individual recovery at trial for the protein claims was between *$0.24 and $0.66 per bottle—less than the amount agreed to under the Settlement*. Kashima Decl. II, ¶ 46.

The individual recovery for the Powder Products is similarly favorable. Class Counsel initially estimated that damages associated with the "lean" claims would be approximately 4-5% of the retail price of the Powder Products. *Id.* at ¶ 44. Based on

- 14 -

this assumption, the Settlement benefit will likely exceed the expected recovery at trial. For example, Defendant's most popular product during the Class Period was the Genuine Muscle Milk Powder. *Id.* The average retail price of the Genuine Muscle Milk Powder was approximately $25.00 for a 2.47 lbs. package and $49.00 for a 4.94 lbs. package. *Id.* Thus, Plaintiffs anticipated a possible recovery at trial of between *$1.00 and $2.45 per package; less than the $3 to $5 dollars proposed under the Settlement*. *Id.*

Nonetheless, recovery under the Settlement is not only a function of the number of Class Products purchased, but the number of Claims submitted. Given to the *pro rata* distribution under the Settlement, Plaintiffs estimate that the average individual Class Member recovery will be approximately *$52.07*, also a meaningful amount. *Id.*, at ¶ 56.

When viewed in the aggregate, the Settlement still provides significant value. Based on information from the parties' initial discovery, Plaintiffs were able to estimate that the total liability would be between $41 million and $139 million, under the most optimistic circumstances. *Id.* at ¶ 47. Here, the Settlement provides for at least $12.45 million in relief to the Settlement Class, or *approximately 9-30% of the total outstanding liability*.[11] This is well within the bounds of reasonableness in a consumer class action (*See City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, No. 6:12–1609, 2015 WL 965696, at *7-8 (W.D. La. Mar. 3, 2015) (finding that a "7.4%–10.3% [recovery] of estimated provable damages" amounts to "a high degree of success" because "[t]he typical recovery in most class actions generally is three-

---

[11] The total benefit to the Class is measured as the value of the Settlement Fund ($12 million) and the cost of administration of the Settlement (estimated to be between $446,944 and $654,989) or, at least, $12,446,944. *See* Kashima Decl. II, ¶ 56; *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003) ("constructing a hypothetical fund' by adding together the amount of money Boeing would pay in damages, the amount of fees provided to various counsel, the cost of the class action notices paid for by Boeing, and a gross amount of money ascribed to all the injunctive relief contained in the agreement")

Case No: 3:15-cv-00165-L-DHB

to-six cents on the dollar.")) and is more favorable than a recently approved settlement in a similar protein supplement case. *See Gregorio v. Premier Nutrition Corporation*, 1:17-cv-05987, ECF No. 101 (S.D.N.Y Jan. 17, 2019) (unpublished) (approving a $9 million class settlement regarding allegations that a popular protein drink did not contain the amount of protein advertised.).

## 2. The Settlement is Fair for All Class Members

Moreover, the Settlement does not improperly discriminate between any segments of the Settlement Class. FED. R. CIV. P. 23(e)(2)(C). Each Settlement Class Member is entitled to the same relief calculated from the same formula. Settlement Agreement at ¶¶ 4.01-4.04. Indeed, the only variation between Class Members' recovery is a function of the type and number of qualifying products purchased during the Class Period. *Id.* Given that both restitution and damages accrued by Settlement Class Member would be logically proportional to the number of products purchased and the price of those products, the payment formula forwarded in the Settlement Agreement is both rationally based and directly related to the claims asserted. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits."). There is no preferential treatment of any portion of the Class.

## 3. The Settlement Utilizes a Simple Claims Process and Ensures that the Class Retains the Entirety of the Settlement Fund

"Approving a plan for the allocation of a class settlement fund is governed by the same legal standard that applies to the approval of the settlement terms: the distribution plan must be 'fair, reasonable and adequate.'" *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-CV-04766, 2017 WL 3616638, at *4 (N.D. Cal. June 26, 2017). Settlement Class Members may participate in the Settlement *via* a clear and uncomplicated claims process. Individuals are only required to submit a simple claims form stating the number and type of products purchased (as well as provide

proof of purchase, if available) to participate. Agreement, ¶ 9.01 (only requiring a Class Member to confirm the number and type of Class Product(s) purchased within the applicable Class Period). This information can be submitted to the Settlement Administrator either online or by mailed. *Id.* Settlement Class Members are provided 75 days to submit their claims. *Id.* at ¶ 2.04.[12] In return, Class Members with valid claims are provided a check. This process is common to class settlements, and has been approved in other consumer class actions. *See, e.g., Brown v. Hain Celestial Grp., Inc.,* No. 3:11-CV-03082, 2016 WL 631880, at *3, 11 (N.D. Cal. Feb. 17, 2016) (approving a similar claims process); *In re Magsafe Apple Power Adapter Litig.,* No. 5:09-CV-01911, 2015 WL 428105, at *9 (N.D. Cal. Jan. 30, 2015) (approving a similar claims process, even absent the ability to submit claims online).

Moreover, the Settlement envisions a *pro rata* distribution of any unallocated funds to the participating Settlement Class Members and a secondary distribution of any unclaimed funds after the initial payment. Agreement, at ¶¶ 4.05-.06. This "redistribution of unclaimed class action funds to existing class members is proper and preferred" because it "ensures that 100% of the [settlement] funds remain in the hands of class members." *Hester v. Vision Airlines,* Inc., No. 2:09-CV-00117, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017); *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) *citing Newberg on Class Actions* § 12:28 (5th ed. 2015) ("as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'").

**B.  The Risk of Further Litigation Favors Settlement**

When evaluating the Settlement benefits, the Settlement should be weighed against the uncertainty of protracted litigation, and, in this case, at least one appeal. "It can be difficult to ascertain with precision the likelihood of success at trial. The

---

[12] The Claims Deadline may be extended for another 15 days (90 total), upon recommendation of the Class Administrator and approval by the parties. Agreement, at ¶ 2.04.

Court cannot and need not determine the merits of the contested facts and legal issues at this stage, [Citation], and to the extent courts assess this factor, it is to 'determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinary strong case.'" *Misra v. Decision One Mortg. Co*., No. SACV070994, 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009).

Plaintiffs remain confident regarding their claims and the Court's class certification ruling, but concede success is not guaranteed. While Plaintiffs were able to certify a Class, such orders are not immutable. "A district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 966 (9th Cir. 2009); *see also* FED. R. CIV. P. 23(c)(1)(C). Plaintiffs would have to maintain the class through trial, which has proven difficult in national consumer class actions. *See, e.g., Czuchaj*, 2016 WL 1240391 (decertifying a national class due to differences in state law). Indeed, Defendant's Petition for Appeal Pursuant to Rule 23(f) has been accepted and, absent this Settlement, the parties will argue the propriety of class certification before the Ninth Circuit.

Even if Plaintiffs could maintain the class, their ability to prove the merits of the case present a further risk. Plaintiffs recognize that their damages analysis has encountered difficulties in other courts. *See, e.g., Saavedra v. Eli Lilly & Co*., No. 2:12–cv–9366, 2014 WL 7338930, at *6 (C.D. Cal. Dec. 18, 2014) (rejecting damages model where expert had not yet collected any data from which to determine class-wide damages); *Werdebaugh v. Blue Diamond Growers*, No. 12–CV–02724, 2014 WL 7148923, at *12-13 (N.D. Cal. Dec. 15, 2014) (rejecting damages model that failed to control for other critical factors affecting price). Moreover, litigating a complex case through trial is inherently perilous regardless of the strength of the claims:

> [N]othing is assured when litigating against commercial giants with vast litigative resources, particular in such complex litigation as this, which would strain the cognitive capacities of any jury. Defense judgments were hardly beyond the realm of possibility. Accordingly, this factor weighs in favor of preliminary approval.

*Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1140 (1990). "The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation." *In re Nvidia Derivs. Litig.*, No. C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).

For these reasons, this Settlement, like all settlements, is a product of compromise. Nonetheless, Class Members are provided the opportunity to obtain more than 100% of the damages asserted. This Settlement is inherently reasonable when compared to the relief ordinarily obtained in other similar cases. *In re Newbridge Networks Sec. Litig.*, No. CIV. A. 94–1678, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness.").

### C. Complexity, Expense, and Likely Duration of Further Litigation

Continuing to litigate this action would incur additional expenses, coupled with considerable time to proceed through trial and post-trial motions. This case has already been pending for four years. Now that Defendant's Rule 23(f) Petition has been granted by the Ninth Circuit, the appellate review of this case would likely extend this case at least another two years before trial preparations could begin.

But even if Plaintiffs secured a favorable judgment, it would not end the dispute. Any judgment can be appealed, which will take another few years. Kashima Decl. II, at ¶ 63. Defendant has demonstrated that it is willing to seek appellate review; nothing indicates that Defendant's tactics will change. *Id.* at ¶ 64. "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

**D.     The Class Representatives and Class Counsel Adequately Represented the Class Through Contentious and Informed Settlement Negotiations**

"A critical factor in determining whether a settlement is worthy of court approval under FRCP 23(e) is whether the class has been 'fairly and adequately' represented by the class representative during settlement negotiations." *In re California Micro Devices Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996); *see also* FED. R. CIV. P. 23(e)(2)(A). "A presumption of correctness is said to 'attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.'" *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005); *see also* FED. R. CIV. P. 23(e)(2)(B). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995). Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979).

In this case, the Class was represented by individuals who had previously been subject to judicial scrutiny. The undersigned counsel and the named Plaintiffs were deemed adequate and appointed to represent the certified Class prior to negotiating the Settlement. Order Regarding Class Certification [Dkt. No. 210]; Kashima Decl. II, ¶ 38. Thus, this Settlement does not engender the same concerns associated with cases where class certification is delayed until a class settlement has been reached. *See, e.g., Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681-82 (7th Cir. 1987) (noting the criticisms and practical concerns with negotiating a class settlement before class certification) (J, Posner).

Additionally, Class Counsel and the Class Representatives faithfully represented the Class and vigorously litigated this case on their behalf. The Settlement was only reached after the parties had weighty amount of discovery. Class Counsel have reviewed thousands of pages of written evidence, took several

key depositions, and conducted expert discovery. Kashima Decl. II, ¶¶ 25-32. The parties had also litigated key legal theories, so the proffered bargain was made with the benefit of "adversarial investigation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ("Our… adequacy inquiry is directed to the vigor with which the named representatives and their counsel will pursue the common claims.")

It is likely for these reasons that the parties' settlement discussions were so contentious. The parties' settlement discussions lasted several months and the dispute was only resolved in their second mediation session with Mr. Rotman. *Id.*, ¶¶ 48-51. "Where a 'case is near trial, and the parties have conducted extensive discovery' and thoroughly litigated the issues, the extent of discovery and the stage of the proceedings weigh in favor of the proposed settlement." *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1302 (S.D. Cal. 2017).[13]

**E.  The Proposed Fee and Incentive Awards are not Extraordinary**

In discharging its duty to determine the fairness of attorneys' fees awarded in a class action settlement, the Court's primary concern is to ensure that the process of negotiation leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." *Staton*, 327 F.3d at 977; *see also* FED. R. CIV. P. 23(e)(2)(C)(iii). The amount of attorneys' fees and costs that Class Counsel intends to request is approximately 33 1/3 percent of the benefits to be received by the Settlement Class, demonstrating that the fee and cost award to be requested will not be extraordinary. Kashima Decl. II, at p. 18 n.1; *see also, e.g., In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund); *In re Activision*

---

[13]  Nothing suggests that Class Counsel's or the Class Representatives' recommendation of this Settlement is unreasonable. Plaintiffs' counsel has extensive class action experience and Plaintiffs have no conflict with the Class. Kashima Decl. II, ¶ 57, Ex. B; Declaration of Jason Thompson, concurrently filed herewith, at Ex. A; Declaration of Nick Suciu III, concurrently filed herewith, Ex. 1; *Hanlon*, 150 F.3d at 1020 (adequacy looks to the competence of class counsel and the named plaintiffs and their counsel have any conflicts of interest with other class members).

*Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding 32.8% of $3.5 million common fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (affirming award of 33.3% of $1.725 million). In fact, attorneys representing a class "routinely recover attorneys' fees in the range of 20 to 40 percent of the common fund." *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1258 (C.D. Cal. 1997). At the time of the Final Approval Hearing, Class Counsel will request that the Court award fees based upon the value of the benefits achieved in the proposed Settlement and will present their time and expense declarations to allow for a cross-check under the lodestar/multiplier method.

It is also well established that courts have discretion to approve incentive awards for class representatives as compensation for their expenditure of time and effort for the benefit of others and for having undertaken the risks inherent in serving as a named plaintiff. *See, e.g., Staton*, 327 F.3d at 977; *Van Vranken v. Atl. Richfield*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). The Incentive Awards that Defendant has agreed to pay to each Plaintiff ($10,000) are likewise well within the customary range of awards in cases of this magnitude and not extraordinary. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000") (collecting cases). Nevertheless, at the Final Approval Hearing, Plaintiffs will supply declarations establishing that Plaintiffs contributed value to the resolution of the case and that the requested Incentive Awards are reasonable.

The Settlement is not conditioned on the Court's approval of either Class Counsel's fee request or Plaintiffs' incentive award. Agreement at ¶ 5.03. Any payment of any attorney's fees or incentive awards will only occur upon the payment of funds to the Settlement Administrator for distribution to the Class. Here, any payment to Class Counsel and Plaintiffs are aligned with that of the Class.

The Settlement was a product of extensive arm's length negotiations, and involved counsel experienced in class litigation. It provides the Settlement Class

- 22 -

meaningful relief, likely more than that which could have been achieved at trial. The Settlement does not suffer any obvious deficiencies. It is for these reasons that Plaintiffs request that the Settlement be preliminarily approved.

## VI.   THE PROPOSED NOTICE WILL ADEQUATELY APPRISE THE CLASS OF THEIR RIGHTS UNDER THE SETTLEMENT

Should the Court grant preliminary approval, due process requires the best notice practicable, reasonably calculated under the circumstances to apprise a class member of the settlement and to give that class member a chance to be heard. *Silber v. Mabon,* 18 F.3d 1449, 1453–54 (9th Cir. 1994); FED. R. CIV. P. 23(e)(1)(B). The parties have agreed to retain an experienced class notice and claims administrator, Angeion Group. *See* Weisbrot Decl. at ¶¶ 1-7. The proposed Notice plan provides for *targeted* publication notice and the content of the notice allows the Class to make an educated decision regarding this Settlement.

### A.   Notice is Reasonably Calculated to Reach the Settlement Class

Preliminary approval permits notice to be given to class members of the settlement and the right to be heard. Rule 23 provides that the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also Amchem Prods. Inc.,* 521 U.S. at 617.

Notice of this Settlement will be provided *via* a multifaceted advertisement campaign which is designed to specifically reach purchasers of the Class Products. *See* Weisbrot Decl. at ¶¶ 13-17. Based on review of class definition, the Class Administrator determined the potential audience size is estimated at 2,998,000 individuals. *Id.* at ¶ 14. The Angeion Group will service notice through online advertisements (including on social media platforms such as Twitter and Facebook) using "advanced targeting, machine learning, and a known and verifiable target audience profile." *Id.* at ¶¶ 18-23. Essentially, the Class Administrator will monitor information regarding those individuals who click on the banner advertisements and

- 23 -

change the reach of the notice campaign to better target the appropriate online audiences. *Id.* The online portion of the notice program is designed to provide approximately 5,217,000 impressions (*i.e.* incidents where an individual interacted with the advertisement). *Id.* at ¶ 22.

This online notice will be supplemented by advertisements in print media to reach potential Class Members. *Id.* at ¶¶ 23-26. Specifically, People (with a circulation of 3,510,533) and Sports Illustrated (with a circulation of 2,700,000) were chosen for the notice program due to its strong reach among the target audience. *Id.* at ¶ 25. Notice will be further distributed and promoted on two leading class action settlement websites, www.topclassactions.com and www.classaction.org. *Id.* at ¶ 26. Collectively, the notice regime is predicted to directly reach 70.14% reach with an average frequency of 2.93 views per person. *Id.* at ¶ 34.

The notice distribution plan is based on a similar regime that was approved in other consumer cases. *See, e.g., Wilson v. Airborne, Inc.,* No. CV 07-770, 2008 WL 3854963, at *4 (C.D. Cal. Aug. 13, 2008); *Arnold v. Fitflop USA, LLC*, No. 11-CV-0973, 2014 WL 1670133, at *4 (S.D. Cal. Apr. 28, 2014); *Pappas v. Naked Juice Co of Glendora, Inc*., No. CV1108276, 2014 WL 12382279, at *5 (C.D. Cal. Jan. 2, 2014); *see also* The Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (noting that it is reasonable to reach between 70–95% of the class). And a similar result should follow here.

## B. The Notice Allows Settlement Class Members to Make an Informed Decision

Additionally, Class Notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on

members." FED. R. CIV. P. § 23 (c)(2)(B).  The purpose of these requirements is to ensure that Class Members are fully informed of their rights under the Settlement.

Class Notice will direct individuals to the Settlement Website (www.lean proteinsettlement.com).   The Settlement Website will include the Class Notice, which is written in an easy-to-understand and clear language and provides Class Members with (1) more extensive information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can exercise their right to object to or opt-out of the Settlement; (4) an explanation that any claims against Defendant that could have been litigated in this action will be released; (5) the names of counsel for the Class and information concerning attorney's fees and incentive awards; and (6) the date and time of the fairness hearing.  Agreement, Ex. B.  The Settlement Website will also contain relevant court documents and information regarding the claims process. *Id.* at ¶ 8.03.

The proposed Notice, combined with the right to exclude themselves from the Settlement, ensures that absent Class Members' due process rights are protected.  *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 812 (1985) (due process requires that class members be given an opportunity to opt out).  The Class Members have seventy-five (75) days in which to exercise their right to exclude themselves from or object to the Settlement.  Agreement, at ¶¶ 2.15, 2.22.  The Court should accordingly approve the notice plan because it satisfies the notice requirements of Rule 23 and due process.

## VII.  CONCLUSION

Plaintiffs request that the Court enter the proposed Preliminary Approval Order submitted concurrently herewith and set a hearing for final approval on the first date convenient to the Court.

/ / /

/ / /

/ / /

- 25 -

Dated: May 13, 2019

Respectfully submitted,

FINKELSTEIN & KRINSK LLP

/s/ Trenton R. Kashima

Trenton R. Kashima (291405)
Jeffrey R. Krinsk (109234)
550 West C St., Suite 1760
San Diego, California 92101
Telephone: (619) 238-1333
Facsimile: (619) 238-5425

BARBAT, MANSOUR & SUCIU PLLC
Nick Suciu III, Esq. (*Pro Hac Vice*)
nicksuciu@bmslawyers.com
1644 Bracken Rd.
Bloomfield Hills, MI 48302
Telephone: (313) 303-3472

SOMMERS SCHWARTZ P.C.
Jason J. Thompson (*Pro Hoc Vice*)
JThompson@sommerspc.com
One Towne Square, 17th Floor
Southfield, MI 48076
Telephone: (248) 355-0300

*Attorneys for Plaintiffs and the Classes*

- 26 -