SOMMERS SCHWARTZ P.C.
Jason J. Thompson (*Pro Hoc Vice*)
JThompson@sommerspc.com
One Towne Square, 17th Floor
Southfield, MI 48076
Phone: (248) 785-3797
Fax: (248) 436-8453

*Attorneys for Plaintiffs
and the Classes*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYLA CLAY, ERICA EHRLICHMAN, and LOGAN REICHERT and CHRIS ROMAN, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>CYTOSPORT, INC., a California corporation,<br><br>             Defendant. | Case No: 3:15-cv-00165-L-DHB<br><br>**DECLARATION OF JASON J. THOMPSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing date:    June 10, 2019<br>Time:           10:30 am<br>Judge:         Hon. M. James Lorenz<br><br>[No Oral Argument Unless Ordered by the Court] |

# <u>DECLARATION OF JASON J. THOMPSON</u>

In accordance with 28 U.S.C. § 1746, I, Jason J. Thompson, first being duly sworn, deposes and states as follows:

1.     I have been involved in this case from the beginning and I have personal knowledge of the events and facts described herein.  I am over the age of 21, and could, if called to testify, attest to the events and facts described below.

2.     This Declaration is filed to support Plaintiffs' Motion for Preliminary Approval of Settlement and representations and facts submitted to the Court as to: the complexities of this litigation and the events leading up to the settlement; the difficulties and risks that this case entailed; the benefits of the settlement; that the Settlement Agreement and Exhibits are fair, reasonable, and adequate to the class and should be approved under Rule 23; that the form of the notice of settlement and the method of disseminating the notice to the Class, as described in the Settlement Agreement and Exhibits thereto, and accomplished by the parties, fully satisfy the requirements of Rule 23 and the requirements of due process; the ongoing efforts of plaintiffs' counsel to effectuate the settlement; the adequacy of the class representatives and appropriateness of the requested plaintiff class representative incentive awards; and other related matter, all in support of Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement; Approval Of Class Notice; And Setting Final Approval Hearing Date ("Plaintiffs' Motion").

## <u>Experience and Background</u>

3.     I have been employed by the law firm of Sommers Schwartz, P.C. since 2008. I am currently a senior partner with the firm and chair of its Complex Litigation Department.

4.     Sommers Schwartz, P.C. is a firm that primarily represents plaintiffs in complex employment, business, and personal injury litigation.  Since 1992, I have represented numerous companies and individuals in matters involving federal litigation.  My primary practice is in class action and MDL litigation.

5.      I am licensed to practice in the State of Michigan and have been so since 1992.  I have been admitted *pro hac vice* or became a member of a particular federal district court in multiple federal courts around the country.

6.      My bio and our firm's Complex Litigation Department bio are attached hereto as **Exhibit 1**.

7.      I am experienced in the obligations of serving as class counsel and the legal requirements of Rule 23.  My experience includes first and foremost serving as lead class counsel and other various leadership positions as outlined in my bio. In addition, I have taught class actions at Michigan State University Law School as an adjunct professor. (*Id.*)

8.      I have also been recognized as a leader in my field, including: serving as chairperson on professional committees; speaking at or moderating professional CLE courses; selected as a top lawyer by professional groups on multiple occasions; and awarded professional recognition by legal publications over my career. (*Id.*)

### The Litigation

9.      Sommers Schwartz, P.C. was among the original law firms to investigate and obtain testing of Defendant's protein supplements and investigate the label claims. This required interviewing and hiring competent testing laboratories; contemplating the proper testing methodologies and obtaining scientifically defendable test results. We also consulted with experts on the label claims and eventually decided to plead the violations of labeling claims that were supported under the law and science.

10.      Once testing results and label claims were investigated and prepared, we initiated the current lawsuit in early 2015.  Since then I have been responsible for both performing and coordinating the legal work conducted by Sommers Schwartz, P.C. with my two Co-counsel in connection with this lawsuit.

11.      My co-counsel Mr. Kashima has outlined the history and important details of the litigation – which were extensive and complicated – in his declaration. I have reviewed it and can attest to its accuracy.

## The Mediations

12.    I attended both mediations and the earlier settlement meeting and discussions with defendant, but held without a third party mediator.

13.    The protein claims were hotly contested in this case. Defendant produced test results indicating the products actually contained **more** protein than indicated on the label.  They advanced arguments on the regulatory aspects of this case – including a 20% safe-harbor provision and alternative testing methodologies for testing the protein, which produced different mathematical conclusions than plaintiffs' methods.

14.    The class certification of any class, let alone a nationwide class under California law was hotly contested, eventually leading to an application of appeal under Rule 23(f) which was granted.

15.    In early settlement discussions, the overall position of both parties were explored.  This was helpful in laying the groundwork for the contested issues, upcoming discovery, and eventually the structure of a class settlement.  Due to many differences and incomplete nature of the record, no settlement was reached.

16.    After several years of discovery and motion practice, mediation was agreed to by the parties. During the mediations, Defendant was vigorously arguing the many defenses to the case, on the science, merits, law and procedural hurdles. While the parties had not completed all expert modeling, the parties were also vastly divided on the level of monetary damages that could exist if the many claims were proven and survived appeal, ranging from zero to approximately $139,000,000.

17.    I can further attest to the level of effort, expertise, dedication and creativeness of both plaintiffs and defense counsel in making sure that the current settlement was fair, reasonable and adequate to both sides.  Had those efforts not occurred, and the hurdles and obstacles overcome, the settlement would never have been reached.

18. During both days of third party mediations, the process was painful and slow. Both sides worked very hard on their respective arguments and analysis of the other side's arguments and positions. Both sides had multiple people assisting them, including clients and outside consultants. Work was done in between the first and second mediation – particularly on the issues of protein testing and details relating to class notice. Through the assistance of Mr. Rotman, progress was made and eventually the current settlement was reached.

## Reasonableness of Settlement, Fee Requests, Expense Reimbursement and Incentive Awards

19. I was also one of the negotiators of the settlement. I will personally attend the hearing for approval of the settlement and fees and costs and I can explain all aspects of the claims, aspects of the case, the details behind the settlement, and answer any questions that might arise.

20. The settlement meets all the requirements of Rule 23 for fairness and reasonableness.

21. The settlement recognizes the two groups of consumers – powder and the RTD (ready to drink) liquid – who were represented in this case. The settlement benefits fairly compensate the two groups based on the viability and strength of their respective claims and damages.

22. The total amount of the settlement is also reasonable. First, it is the largest protein supplement class settlement on record. Second, the approximate $12.5 million settlement value represents a fair compromise of the damage range of zero to $139,000,000 when considering the defenses on the merits and class certification, expert issues and opinions, and delay based on a Rule 23(f) appeal and an appeal on a judgment in favor of the class.

23. The per-consumer recovery is also fair and reasonable. The recovery of $25 represents multiple purchases of the subject products. There is no coupon or voucher aspect of the settlement benefit. And class members with receipts will be

compensated better than those without receipts, which reflects their stronger claims if presented to a jury.

24.    The class notice is state of the art and is designed to produce a large number of claims using digital and social media platforms.  At the same time, the costs of notice have been minimized, leaving more money for the class fund as negotiated by the parties.

25.    The class representatives were actively engaged during the many years of litigation, and even deposed. They were also engaged during the mediations and have all approved the settlement and request that it be approved by the court on behalf of the class. The request for $10,000 is in line with other cases and awards and deserved in this instance.

26.    The request for fees is also in line with other cases and fair, as is the request for expenses.  The various factors underlying the fee and expense request will be outlined in more detail on the motion for fees and expenses to be filed at a later date upon entry of the preliminary approval order.

27.    I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 13, 2019

_____
Jason J. Thompson