# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAYLA CLAY, ERICA EHRLICHMAN, LOGAN REICHERT, and CHRIS ROMAN individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br>CYTOSPORT, INC., a California corporation,<br><br>Defendant. | Case No: 3:15-cv-00165-L-DHB<br><br>**DECLARATION OF STEVEN WEISBROT IS SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# DECLARATION OF STEVEN WEISBROT

I, Steven Weisbrot, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a partner at the class action notice and settlement administration firm Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2. I have been responsible in whole or in part for the design and implementation of hundreds of class action administration plans and have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Class Action Notice Programs, as well as Class Action Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Class Action Claims Administration, and Notice Design in publications such as *Bloomberg*, *BNA Class Action Litigation Report*, *Law360*, the ABA *Class Action and Derivative Section Newsletter*.

3. I am a certified professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23*.

4. I have given public comment and written testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, digital media and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the amendments to Rule 23 and suggest educational programs for the judiciary concerning class action notice procedures.

5. Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced class action notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

6. My notice work comprises a wide range of class actions that include product defect, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases. I have been active in infusing digital media, as well as big data and advanced targeting, into class action notice programs. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328:

> The Court welcomes the inclusion of web-based forms of communication in the plan…. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a) On February 24, 2017, The Honorable Ronald B. Rubin in *James Roy et al. v. Titeflex Corporation et al.*, No. 384003V (Md. Cir. Ct.), noted when granting preliminary approval to the settlement:

> What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make a decision. To me that is a key piece of this deal. ***I think the notice provisions are exquisite.*** (Emphasis added).

(b) Likewise, on May 12, 2016, in his Order granting preliminary approval of the settlement in *In Re Whirlpool Corporation Front Loading Washer Products Liability Litigation*, MDL No. 2001 (N.D. Ohio), The Honorable Christopher A. Boyko ruled:

> The Court, having reviewed the proposed Summary Notices, the proposed FAQ, the proposed Publication Notice, the proposed Claim Form, and the proposed plan for distributing and disseminating each of them, finds and concludes that the proposed plan for distributing and disseminating each of them will provide the best notice practicable under the circumstances and satisfies all requirements of federal and state laws and due process.

(c) In *In Re LG Front Load Washing Machine Class Action Litigation*, Civil Action No. 08-51 (MCA) (LDW) (D.N.J.), the Honorable Madeline Cox Arleo ruled:

> This Court further approves the proposed methods for giving notice of the Settlement to the Members of the Settlement Class, as reflected in the Settlement Agreement and the joint motion for preliminary approval. The Court has reviewed the notices attached as exhibits to the Settlement, the plan for distributing the Summary Notices to the Settlement Class, and the plan for the Publication Notice's publication in print periodicals and on the internet, and finds that the Members of the Settlement Class will receive the best notice practicable under the circumstances.

7. By way of background, Angeion is a class action notice and claims administration company formed by an experienced team of executives that have had extensive tenures at five other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members. The executive profiles as well as the company overview are available at http://www.angeiongroup.com/our_team.htm.

8. This declaration will describe the notice program that Angeion has proposed to use in this Litigation, including certain considerations that informed the development of the notice program, and why it will provide due process of law to the Settlement Class.

## SUMMARY OF NOTICE PROGRAM

9. The notice program is the best notice that is practicable under the circumstances and fully comports with due process and Rule 23 of the Federal Rules of Civil Procedure. The notice program features a robust media campaign consisting of state-of-the-art targeted internet banner notice, print publication notice in widely-read consumer magazines, sponsored notice on two leading class action-related websites, , and two advanced custom social media campaigns. The notice program also includes a dedicated website and toll-free telephone line where Class Members can learn more about their rights and responsibilities in the litigation.

10. The notice program is designed to deliver an approximate 70.14% reach with an average frequency of 2.93 times. In practice, this means that 70.14% of our target audience will see an advertisement concerning the Settlement an average 2.93 times each. The 70.14% reach is separate and apart from the sponsored listings on the class action websites, and the informational website and toll-free line, all of which are difficult to measure in terms of reach percentage but will nonetheless significantly aid in informing the class of their rights and responsibilities under the Settlement.

11. The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm". Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges", at 27 (3d Ed. 2010).

## CLASS DEFINITION

12. The Class Action Settlement Agreement and Release defines two "Settlement Classes"

- A "Shake Class" composed of all persons in the United States (including its states, districts or territories) who purchased Cytosport Whey Isolate Protein Drink; Monster Milk: Protein

4
DECLARATION OF STEVEN WEISBROT ISO OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

CASE NO. 3-15-CV-00165-L-DHB

Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake from January 23, 2011 to the date of an order preliminarily approving the settlement. For members of the Michigan subclass only, the starting date of the class period will be January 23, 2009. Excluded from the Settlement Class are Defendant and any affiliate or subsidiary of Defendant, and any entities in which Defendant has a controlling interest, as well as all persons who validly exclude themselves from the Settlement Class.

- A "Powder Class" composed of all persons in the United States (including its states, districts, or territories) who purchased Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer; High Protein Gainer Powder Drink Mix; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement that had the phrase "lean lipids," "lean protein," "lean muscle protein," or "new leaner formula" on the label from January 23, 2011 to December 31, 2018. Excluded from the Settlement Class are Defendant and any affiliate or subsidiary of Defendant, and any entities in which Defendant has a controlling interest, as well as all persons who validly exclude themselves from the Settlement Class.

## MEDIA NOTICE TARGET AUDIENCE

13. This matter contemplates a nationwide settlement class as defined in the Class Definition section found *supra* in paragraph 12. To create the media notice program and verify its effectiveness, our media team analyzed Data from the syndicated data source, 2018 comSCORE//GfK MRI Media + Fusion. This brand is a measured entity in MRI; as a result, the following target definition was used to profile class members:

- Meal/Dietary/Weight Loss Supplements Brands Total Users Last 6 Months [Muscle Milk] or
- Meal/Dietary/Weight Loss Supplements Sole/Primary Brands Last 6 Months [Muscle Milk] or
- Meal/Dietary/Weight Loss Supplements Secondary Brands Last 6 Months [Muscle Milk]

14. Based on the target definition, the potential audience size is estimated at 2,998,000. This target audience, based on objective syndicated data, will allow the parties to report the reach and frequency to the court, with the confidence that the reach within the target audience and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs.

15. Understanding the socio-economic characteristics, interests and practices of a target group aids in the proper selection of media to reach that target. Here, the target audience has the following characteristics:

- Adults ages 18-54 with an average age of 39
- 46.86% are married
- 41.20% have a college degree
- 49.30% live in households with total income over $75K
- 73.55% are employed, with 61.24% working full time

16. To identify the best vehicles to deliver messaging to the Target Audience, the traditional media quintiles were reviewed, which measure the degree to which an audience uses a particular form of media relative to the general population. Here, objective syndicated data demonstrates that members of the target audience are heavy internet users, who surf the internet an average of 25 hours per week (compared to the national average if 19 hours per week); the target audience also read an above-average seven (7) magazines per month.

17. Given the strength of the Target Audience's internet use as well as the target audience's heavy magazine use, Angeion recommends utilizing print publication combined with a robust internet advertising campaign, to reach potential Settlement Class Members. This media schedule

6
DECLARATION OF STEVEN WEISBROT ISO OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

CASE NO. 3-15-CV-00165-L-DHB

will allow us to deliver an effective reach level for notice messaging while maximizing efficiencies.

### ONLINE NOTICE

18. Angeion utilizes advanced targeting, machine learning, and a known and verifiable target audience profile, to ensure that members of the target audience are reached online. Through this "programmatic" approach, Angeion will be able to focus solely on reaching the prototypical individual Settlement Class Member. Purchasing display and mobile inventory programmatically provides the highest reach, allows for numerous advanced targeting layers, and offers the most cost-efficient rates to reach potential Settlement Class Members.

19. Multiple targeting layers will be implemented into the programmatic buy to help ensure delivery to the most appropriate users, inclusive of search targeting, category contextual targeting, keyword contextual targeting, and site retargeting. Inventory will run on desktop and mobile devices to reach the most qualified audience. Search terms will be relevant to Muscle Milk protein shakes and powders. Targeting users who are currently browsing or have recently browsed content in categories such as Muscle Milk products, fitness supplements, and protein shakes will also help qualify impressions to ensure messaging is served to the most relevant audience. Where available, actual purchase data will be utilized to further qualify the audience.

20. Angeion also employs Lotame, a demand management platform ("DMP"), as well as Integral Ad Science ("IAS"), an online ad verification and security provider, to provide a greater quality of service to ad performance. Lotame allows Angeion to learn more about the online audiences that are being reached. Through pixels attached behind the scenes, Angeion can and will collect data on users who are served impressions, who click on the banner, and who file a claim. From this data, demographic profiles can be developed and leveraged for changes in targeting

strategies to increase the overall performance of the digital campaign. These insights help Angeion to understand the type of user profile that is most valuable to campaign success.

21. Angeion also utilizes IAS, the leading ad verification company to recognize and foil fraudulent internet activity. IAS has received the Media Rating Council "MRC" accreditation for Sophisticated Invalid Traffic ("SIVT") detection for desktop and mobile web traffic, which adds a critical level of safety to the notice program.

22. The internet banner notice portion of the notice program will be implemented using a 4-week desktop and mobile campaign, utilizing banner ads in standard IAB sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50). A 3x frequency cap will be imposed to maximize reach. The banner notice portion of the notice program is designed to result in serving approximately 5,217,000 impressions.

23. Angeion will also cause the settlement to be promoted on Twitter and Facebook. Our methodology includes an "active listening" component wherein we monitor Twitter traffic for discussion of the settlement, and actively provide notice, and/or answers to frequently asked question via Twitter as appropriate. We also use an interest-based approach to Facebook ad targeting to confirm that recipients of the ads are likely class members. This service is not measurable in terms of reach and frequency but provides an invaluable service to those class members seeking information about the settlement via Twitter.

## **PUBLICATION NOTICE**

24. In addition to the internet banner notice campaign described above, the notice program utilizes print media to reach potential Class Members.

25. To identify the best print vehicle for delivering the message to the target audience, MRI was used to analyze and filter publications to determine the titles with the highest reach against our

target audience. People and Sports Illustrated were chosen as the best titles for this notice program due to their strong reaches towards the target audience. One ½ page B&W insertion is recommended in these titles and will be distributed on a national level.

| Publication | Circulation | Target Audience |
|---|---|---|
| People | 3,510,533 | 368,000 |
| Sports Illustrated | 2,700,000 | 568,000 |

**PURCHASED AND EARNED MEDIA**

26. Angeion will cause the Settlement to be listed and promoted through two leading class action settlement websites, www.topclassactions.com and www.classaction.org. These sites are known to create awareness of pending settlements among consumers and while not measured in terms of the reported reach percentage, will be instrumental in seeding and disbursing news of the underlying settlement.

27. The promotion via the class action settlement websites are capable of precise reach calculations and are thus not included in the reach and frequency figures presented to the Court. Nonetheless, these mechanisms will serve an important function in that they will help stimulate interest in the Settlement and drive Class Members to the dedicated settlement website to read and understand their rights under the Settlement.

**RESPONSE MECHANISMS**

28. The notice program will create a case-specific Settlement Website, www.LeanProteinSettlement.com, where Class Members can easily view general information about this class action, review relevant Court documents and view important dates and deadlines pertinent to the Settlement. The chosen URL was designed to be simple and easy to remember.

29. The Settlement Website will be designed to be user-friendly and make it easy for Class Members to find information about the Settlement or file a claim. The website will also have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address.

30. Importantly, Class Members will be able to submit their Claim Forms and supporting documentation online via the Settlement Website.

31. A toll-free hotline devoted to this case will be implemented to further apprise Class Members of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## **REACH AND FREQUENCY**

32. This declaration provides the reach and frequency evidence which courts systematically rely upon in reviewing class action publication notice programs for adequacy. It further provides the objective syndicated data source, from which the percentages are derived. The reach percentage and the number of exposure opportunities, meet or exceed the guidelines as set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

33. Specifically, the notice program is designed to deliver a 70.14% reach with an average frequency of 2.93. The sponsored listings on two class action settlement websites, Settlement Website and toll-free hotline are not calculable in the reach percentage but will nonetheless aid in informing the Class Members of their rights and options under the Settlement.

10
DECLARATION OF STEVEN WEISBROT ISO OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

CASE NO. 3-15-CV-00165-L-DHB

## **CONCLUSION**

34. In my opinion, the Notice Plan will provide full and proper notice to Settlement Class Members before any claims, opt-out and objection deadlines.

35. It is my opinion that the Notice Program provides Class Members Due Process of Law and is the best notice that is practicable under the circumstances and is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

36. After effectuating the notice plan, Angeion will provide a final report verifying its effective implementation.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: May 10, 2019

STEVEN WEISBROT