1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| CHAYLA CLAY, ERICA EHRLICHMAN, LOGAN REICHERT, and CHRIS ROMAN, individually and on behalf of all others similarly situated, | Case No.: 3:15-cv-00165-L-DHB |
| | **ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS; AND (3) FINAL ORDER OF DISMISSAL** |
| Plaintiffs, | |
| v. | |
| CYTOSPORT, INC., a California corporation, | |
| Defendant. | **[Docs. No. 239, 240]** |

18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11

Pending before the Court are Plaintiffs' Motion for Final Approval of Class Action Settlement (doc. no. 240) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Award (doc. no. 239).  The Court has received no opposition or objection to the motions.  The motions were heard at the Final Approval Hearing on October 29, 2020, notice of the Final Approval Hearing having been duly given in accordance with the Order Granting Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement (doc. no. 235, "Preliminary Approval Order").  Having considered all matters submitted at the Final Approval Hearing and otherwise, based on the findings and conclusions in the Preliminary Approval Order, which are incorporated by reference herein, and for the reasons stated below, the motions are granted.

12

**Factual and Procedural Background**

13
14
15
16
17
18
19
20
21

Defendant manufactures and markets the Muscle Milk branded protein shakes sold in powder and liquid forms ("Powder Products" and "Shake Products"). During the class period, Defendant labeled its Powder Products with a number of claims, including claims that they contained a specific amount of "lean protein" and that they contained "lean lipids."  Plaintiffs alleged that the "lean" claims were misleading and illegal under federal law and that the products contained less protein than stated on the product labels.  Plaintiffs also challenged L-Glutamine statements on product labels; however, this claim was not certified for class treatment and Plaintiffs are no longer pursuing it.

22
23
24
25
26

On behalf of a national class, Plaintiffs asserted causes of action for violation of California Unfair Competition Law and False Advertising Law. Plaintiffs also claimed, on behalf of classes of purchasers in California, Michigan, and Florida, that the advertisements violated their respective state's consumer protection statutes, warranty laws, and the Magnuson–Moss Warranty Act.

27

/ / / / /

28

The case was heavily contested. Defendants moved to dismiss and filed a motion for judgment on the pleadings.  The motion to dismiss was denied and the motion for judgment on the pleadings was granted in part.

The parties engaged in extensive discovery, including voluminous document discovery, discovery of Defendant's sales data, several depositions, including depositions of each Plaintiff, and expert discovery.

Defendant moved for summary judgment, and Plaintiffs moved for class certification.  Defendant's opposition to class certification included *Daubert* challenges to Plaintiffs' experts.  Both motions were granted in part and denied in part.  The summary judgment motion was granted with respect to Plaintiffs' claims alleging breach of express warranty, violation of the Magnuson–Moss Warranty Act, and violation of some provisions of the Michigan Consumer Protection Act.  The Court certified a nationwide class for violations of California Unfair Competition and False Advertising laws as to certain products, as well as California, Florida and Michigan subclasses for violations of their respective consumer protections laws.

Defendant petitioned the Ninth Circuit for interlocutory appeal of the class certification order under Rule 23(f).  The petition was granted and the parties were preparing to brief the appeal when they settled the case.

The summary judgment and class certification rulings spurred further settlement discussions.  The parties had previously tried at least twice, but were unsuccessful in settling.  After the motion rulings, they engaged a private mediator and, over time, agreed on a settlement.  The settlement was reached after nearly four years of litigation.

**Proposed Settlement Terms**

Defendant will contribute $12 million to a non-reversionary Settlement Fund to be paid to Class Members after payment of Class Counsel's attorneys' fees, costs, litigation expenses, and class representatives' incentive awards. The net Settlement Fund available for distribution will be, approximately, at least $7.8 mil. In addition,

Defendant will separately pay the costs of notice and claims administration, which is estimated to cost approximately $500,000.  The monetary benefit of the settlement is approximately 9-30% of the total estimated damages if Plaintiffs prevailed at trial.

The Settlement Fund is to be distributed to the Settlement Class by check on a claims-made basis, according to the number of Shake and Powder Products purchased during the Class Period.  To receive a cash payment, Class Members must file a timely claim.  For Shake Products, Class Members with proof of purchase may submit claims for $1 per purchased shake, with no limit on the number of shakes that may be claimed. For Powder Products, Class Members with proof of purchase may submit claims for $3 or $5 for each purchase, depending on the product size.  In either instance, Class Members with no proof of purchase may submit claims capped at $25.  If the funds claimed are less than the net Settlement Fund, each Class Member receives a pro rata share of any remaining funds.

In addition to the cash payment, Defendant has removed the challenged "lean" references from Powder Product labels, and has agreed to review its manufacturing to minimize variability of the protein content in their Shake Products.

Preliminary approval of the settlement was initially denied because Plaintiffs amended the class definitions after the class certification order.  As amended, the classes could potentially include businesses in addition to consumers, which would exceed the scope of the class certification order.  The Class Members' release of claims was too broadly stated.  There was an inadequate explanation of the class notice program.  The procedures for objections and exclusions as described in the proposed notice were too onerous.

The parties amended the settlement agreement to address these issues.  The Court approved the amended settlement agreement on a preliminary basis.

**Class Notice**

The class notice was disseminated through targeted online ads, in print (Sports Illustrated and People), press releases, and sponsored notice on two class action

websites.  The Claim Administrator created a dedicated website with a toll-free line where class members could access the full-length notice, other information about the case, as well as the claim and exclusion forms.  Class members were able to file their claims and requests for exclusion on the website.  Collectively, the notice program is estimated to have reached approximately 79% of the class of approximately 3 million members with an average frequency of approximately 3.4 views per person.

**Claims and Exclusions**

167,394 claims were filed, which constitutes a response rate of approximately 5.6% of the class.  It is not unusual to see a low participation rate in a consumer class action.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1130 (9th Cir. 2017).  Because the total claims do not exhaust the net Settlement Fund, the class members will receive an additional pro-rata distribution increasing their individual claims by approximately 40%.  This will result in an average individual class member payment of approximately $47, which is more than expected recovery if Plaintiffs prevailed at trial.  No objections to the settlement were received.  227  members (approx. 0.0076% of the class) requested exclusion.

**Conclusions and Order**

1.     The Amended Settlement Agreement and Release dated January 28, 2020, including the definitions of words and terms contained therein and exhibits attached thereto (doc. no. 232-8, the "Settlement Agreement"), and the terms of the Preliminary Approval Order are incorporated herein by reference.

2.     This Court has jurisdiction over the subject matter of the Litigation and over the Parties, including all members of the following Settlement Classes certified for settlement purposes in this Court's Preliminary Approval Order:

**The Shake Class:** All consumers in the United States (including its states, districts or territories) who purchased Cytosport Whey Isolate Protein Drink; Monster Milk: Protein Power Shake; Genuine Muscle Milk: Protein Nutrition Shake; and Muscle Milk Pro Series 40: Mega Protein Shake from January 23, 2011 to the date of

entry of the Preliminary Approval Order. For members of the Michigan subclass only, the starting date of the class period will be January 23, 2009. Excluded from the Settlement Class are Defendant and any affiliate or subsidiary of Defendant, and any entities in which Defendant has a controlling interest, as well as all persons who validly exclude themselves from the Settlement Class.

**The Powder Class:** All consumers in the United States (including its states, districts, or territories) who purchased Muscle Milk: Lean Muscle Protein Powder; Muscle Milk Light: Lean Muscle Protein Powder; Muscle Milk Naturals: Nature's Ultimate Lean Muscle Protein; Muscle Milk Gainer; High Protein Gainer Powder Drink Mix; Muscle Milk Pro Series 50: Lean Muscle Mega Protein Powder; and Monster Milk: Lean Muscle Protein Supplement that had the phrase "lean lipids," "lean protein," "lean muscle protein," or "new leaner formula" on the label from January 23, 2011 to December 31, 2018. Excluded from the Settlement Class are Defendant and any affiliate or subsidiary of Defendant, and any entities in which Defendant has a controlling interest, as well as all persons who validly exclude themselves from the Settlement Class.

3.     The Court hereby finds that the Class Representatives and Class Counsel have adequately represented the Settlement Classes. *See* Fed. R. Civ. P. 23(e)(2)(A).

4.     The Court hereby finds that the Settlement Agreement is the product of arm's-length settlement negotiations between the Plaintiffs and Class Counsel, and Defendant and its counsel. *See* Fed. R. Civ. P. 23(e)(2)(B).

5.     The Court hereby finds and concludes that Class Notice was disseminated to the Settlement Class Members in accordance with the terms set forth in Section 8 of the Settlement Agreement, and that Class Notice and its dissemination were in compliance with the Preliminary Approval Order.

6.     The Court further finds and concludes that the Class Notice and claims submission procedures as reported to the Court in the Declaration of Steven Weisbrot, Claims Administrator and attached exhibits (docs. no. 240-3 through 15) satisfy Rule

23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. *See* Fed. R. Civ. P. 24 23(e)(2)(C)(ii).

7.     This Court finds and concludes that the notice provided by the Claims Administrator to the appropriate State and federal officials pursuant to 28 U.S.C. § 1715 satisfied the requirements of that statute.

8.     A total of 227 Settlement Class Members submitted timely and proper Requests for Exclusion, as reported in the declaration of the Claims Administrator (docs. no. 240-3 through 5). The Court orders that each of the individuals listed by the Claims Administrator as having submitted a valid Request for Exclusion is excluded from the Settlement Classes. Those individuals will not be bound by the Settlement Agreement, and neither will they be entitled to any of its benefits.

9.     No Settlement Class Members submitted timely and proper Objections to the Settlement Agreement. Plaintiffs faced serious risks both on the merits of their claims and on the ability to try this matter on a class basis. The relief provided to the Settlement Classes pursuant to the Settlement Agreement is adequate, given the costs, risks, and delay of trial and appeal, and taking into consideration the attorney's fees awarded below. *See* Fed. R. Civ. P. 23(e)(2)(C)(i), (iii).

10.     Class Counsel request attorneys' fees in the sum of $3,883,682.34, costs and litigation expenses in the sum of $265,902.66, and Class Representatives' incentive awards totaling $40,000.

The request for attorneys' fees represents 31.14% of the Settlement benefit to the Settlement Classes and exceeds the 25% benchmark for reasonable attorneys' fees in common fund settlements such as this. *See In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 942-43 (9th Cir. 2011). The benchmark may be adjusted for

special circumstances such as, for example, the results achieved, litigation risk, the skill required and quality of the work, the risk of nonpayment of fees in contingency cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). For the reasons stated in Class Counsel's brief, which reasons this Court adopts herein, Class Counsel made a sufficient showing to support an upward adjustment of the benchmark percentage. (*See* doc. no. 239-1 at 6-15.)

The Court also looks to the lodestar method to cross check the reasonableness of requested fees. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017). Class Counsel spent 5,532.6 hours on this case, which the Court finds reasonable in light of the procedural history, including extensive discovery, expert discovery, opposition to a motions to dismiss, for judgment on the pleadings and summary judgment, defense against *Daubert* challenges to their experts, motion for class certification, interlocutory appeal, and extensive settlement negotiations. In light of the complexity of this action, the Court also finds reasonable the average hourly rate of $502.67. Based on the foregoing, the lodestar is $2,781,066. Class Counsel's request applies a 1.4 multiplier to the lodestar. As with the benchmark percentage, the lodestar can be adjusted based on the circumstances of each case in light of the *Kerr* factors. *See Bluetooth,* 654 F.3d at 942 n.7 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.3d 67, 70 (9th Cir. 1975)). Because "[m]any of these factors are subsumed within the calculation of hours reasonably expended at a reasonable rate[, . . .] the *Kerr* factors only warrant a departure from the lodestar in rare and exceptional cases." *Id.* (internal quotation marks and citations omitted). Other *Kerr* factors track considerations for departure from the benchmark, such as difficulty of the issues, requisite skill, "undesirability" of the case, experience, reputation and ability of counsel, and results achieved for the class. *Cf. Bluetooth,* 654 F.3d at 942 n.7 & *Vizcaino,* 290 F.3d at 1048-50. Foremost among them are the results achieved for the class. *Bluetooth,* 654 F.3d at 942. For the reasons stated with regard to the adjustment of the benchmark and for excellent results achieved for the Settlement

1   Classes, the Court finds that the request for $3,883,682.34 in attorneys' fees is

2   reasonable under the circumstances of this case.

3          Class Counsel also request $265,902.66 for costs and litigation expenses,

4   including expert fees.  Upon review of the itemized summary (*see* doc. no. 239-2), the

5   Court finds the request reasonable.

6          Class Representatives request incentive awards of $10,000 each.  Incentive

7   awards "are discretionary and are intended to compensate class representatives for

8   work done on behalf of the class, [and] to make up for financial or reputational risk

9   undertaken in bringing the action . . .."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

10  958-59 (9th Cir. 2009).  The amount of the award should be related to the actual

11  service or value the class representative provides to the class.  *See id.* at 960.

12  Although incentive awards are "fairly typical in class actions," id. at 958, they "should

13  not become routine practice," lest the representatives be "tempted to accept

14  suboptimal settlements at the expense of the class members whose interests they are

15  appointed to guard." *Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157,

16  1163 (9th Cir. 2013) (internal quotation marks and citations omitted).  Although the

17  requested awards are on the "high end" (doc. no. 239-1 at 24), the Court finds them

18  appropriate in this case.  All Class Representatives were deposed in connection with

19  the summary judgment and class certification motions, some of them in a particularly

20  intrusive and contentious manner.  Class Representatives also responded to written

21  discovery and were otherwise actively involved in the prosecution of this case for the

22  last five years.

23         For the foregoing reasons, the Court approves Class Counsel's application for

24  $3,883,682.34 in attorneys' fees, $265,902.66 in costs and litigation expenses, and a

25  $10,000 incentive award to each Settlement Class Representative.

26         11.    The Court finally approves the Settlement and finds it fair, reasonable,

27  and adequate as to all Settlement Class Members in accordance with Rule 23 of the

28  / / / / /

Federal Rules of Civil Procedure and directs its consummation pursuant to the terms and conditions of the Settlement Agreement.

12.     This Court dismisses, with prejudice, without costs to any party, except as expressly provided for in the Settlement Agreement, the Litigation, as defined in the Settlement Agreement.

13.     Upon Final Approval (including, without limitation, the exhaustion of any judicial review, or requests for judicial review, from this Order), the Plaintiffs and each and every one of the Settlement Class Members unconditionally, fully, and finally releases and forever discharges the Released Parties from the Released Claims as provided in the Settlement Agreement.

14.     Each and every Settlement Class Member, and any person actually or purportedly acting on behalf of any Settlement Class Member(s), is hereby permanently barred and enjoined from commencing, instituting, continuing, pursuing, maintaining, prosecuting, or enforcing any Released Claims (including, without limitation, in any individual, class or putative class, representative or other action or proceeding), directly or indirectly, in any judicial, administrative, arbitral, or other forum, against the Released Parties. This permanent bar and injunction are necessary to protect and effectuate the Settlement Agreement, this Order, and this Court's authority to effectuate the Settlement Agreement, and is ordered in aid of this Court's jurisdiction and to protect its judgments.

15.     The Settlement Agreement (including, without limitation, its exhibits), and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation or principle of common law or equity, of any liability or wrongdoing, by Defendant, or of the truth of any of the claims asserted by Plaintiffs in the Litigation, and evidence relating to the Settlement Agreement shall not be discoverable or used, directly or indirectly, in any way, whether in the Litigation or in any other action or proceeding, except for purposes of enforcing the terms and

conditions of the Settlement Agreement, the Preliminary Approval Order, or this Order.

16.     If for any reason the Settlement terminates or Final Approval, as defined in the Settlement Agreement, does not occur, then certification of the Settlement Classes shall be deemed vacated. In such an event, the certification of the Settlement Classes for settlement purposes shall not be considered as a factor in connection with any subsequent class certification issues, and the Parties shall return to the status quo ante in the Litigation, without prejudice to the right of any of the Parties to assert any right or position that could have been asserted if the Settlement had never been reached or proposed to the Court.

17.     The parties agree that in the event that any provision of the Settlement or this Order is asserted by Defendant as a defense in whole or in part to any Claim, or otherwise asserted (including, without limitation, as a basis for a stay) in any other suit, action, or proceeding brought by a Settlement Class Member or any person actually or purportedly acting on behalf of any Settlement Class Member(s), that suit, action or other proceeding shall be immediately stayed and enjoined until this Court or the court or tribunal in which the claim is pending has determined any issues related to such defense or assertion. Solely for purposes of such suit, action, or other proceeding, to the fullest extent they may effectively do so under applicable law, the Parties irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection to the jurisdiction of the Court, or that the Court is, in any way, an improper venue or an inconvenient forum. These provisions are necessary to protect the Settlement Agreement, this Order and this Court's authority to effectuate the Settlement and are ordered in aid of this Court's jurisdiction and to protect its judgment.

/ / / / /

18. By incorporating by reference the terms of the Settlement Agreement (doc. no. 232-8) herein, the Court determines that this Order complies with Federal Rule of Civil Procedure 65(d)(1).

**IT IS SO ORDERED**.

Dated: October 29, 2020

Hon. M. James Lorenz
United States District Judge